51243

7/16 ✓

Billingsley

APPELLATE NO.   CR-02-1017

IN THE COURT OF CRIMINAL APPEALS

JOHNNY C. GRACE, JR.,

    APPELLANT,

      vs.

STATE OF ALABAMA,

    APPELLEE

ON APPEAL FROM HENRY COUNTY CIRCUIT COURT

CASE NOS. CC-2002-205 and CC-2002-206

BRIEF OF THE APPELLANT

GREGORY A. DeGIAN
ATTORNEY FOR APPELLANT
406 DOTHAN RD., STE. B
ABBEVILLE, ALABAMA  36310
TELEPHONE: (334) 585-1394
FACSIMILE: (334) 585-1395

ORAL ARGUMENT REQUESTED

EXHIBIT
1B
PENGAD 800-631-6989

## STATEMENT REGARDING ORAL ARGUMENT

Defendant respectfully request oral argument.  To borrow a sports metaphor, Defendant did not receive a fair trial or sentencing conducted on a "level playing field".  Plaintiff was allowed to "run downhill" from start to finish at trial and at sentencing while Defendant was forced to "run uphill" from start to finish at trial and at sentencing.  Defendant respectfully request oral argument to this Honorable Court to adequately convey the before-mentioned over and above his submitted written brief.

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT...........................................i

TABLE OF CONTENTS...................................................................ii

TABLE OF AUTHORITIES...........................................................iv

STATEMENT OF THE CASE...........................................................1

STATEMENT OF THE ISSUES.........................................................6

STATEMENT OF THE FACTS.........................................................7

STATEMENT OF THE STANDARD OF REVIEW.....................................28

SUMMARY OF THE ARGUMENT.......................................................29

ARGUMENT I..........................................................................31

ARGUMENT II.........................................................................36

ARGUMENT III........................................................................39

ARGUMENT IV.........................................................................42

ARGUMENT V..........................................................................45

ARGUMENT VI.........................................................................50

ARGUMENT VII........................................................................56

ARGUMENT VIII.......................................................................58

ARGUMENT IX.........................................................................60

ARGUMENT X..........................................................................62

ARGUMENT XI.........................................................................65

ARGUMENT XII........................................................................68

CONCLUSION..........................................................................69

CERTIFICATE OF SERVICE............................................................70

STATEMENT CONCERNING FONT AND TYPE STYLE...............................71

LIST OF ADVERSE RULINGS.......................................................72

APPENDIX..........................................................................73

## TABLE OF AUTHORITIES

**CASES**:

Anderson v. State,
    455 So.2d 957 (Ala.Crim.App. 1984)...................................65

Batson v. Kentucky,
    476 U.S. 79 (1986)...........................................................31

Benton v. Maryland,
    395 U.S. 784 (1969).........................................................39

Blockburger v. United States,
    284 U.S. 299 (1932).........................................................39

Burns v. State,
    155 So.2d 561 (1934).......................................................56

Caldwell v. State,
    418 So.2d 168 (Ala.Crim.App. 1981)..................................50

Coon v. State,
    494 So.2d 184 (Ala.Crim.App. 1986)..................................56

Craig v. State,
    376 So.2d 803 (Ala.Crim.App. 1979)..................................51

Jimmy Charles Dake V.State,
    675 So.2d 1365 (Ala.Crim.App. 1995)................................41

Darden v. Wainwright,
    477 U.S. 168 (1986).........................................................59

Davis v. Alaska,
    415 U.S. 308 (1974).........................................................58

Ex parte Bird,
    594 So.2d 676 (Ala. 1991)..........................................32, 35

Ex parte Branch,
    526 So.2d 609 (Ala. 1987)..........................................31, 32

Ex parte Chavers,
    361 So.2d 1106 (Ala. 1978)............................................56

Ex parte Willie C. Dobyne,
    805 So.2d 763 (Ala. 2001)...................................................38

Ex parte Ledbetter,
    404 So.2d 731 (Ala. 1981)...................................................37

Ex parte Maddox,
    502 So.2d 786 (Ala. 1986)...................................................66

Ex parte O'Leary,
    438 So.2d 1372 (Ala. 1983);
    417 So.2d 232 (Ala. 1982)...................................................36

Hall v. State,
    720 So.2d 1043 (Ala.Crim.App. 1998)................................42

Harmelin v. Michigan,
    501 U.S. 957 (1991)............................................................66

Huntley v. State,
    627 So.2d 1013 (Ala. 1992)..................................................31

Huntley v. State,
    18 So.2d 285 (1944)............................................................31

Lench v. State,
    18 So.2d 285 (1944)............................................................37

Massey v.State,
    497 So.2d 590 (Ala.Crim.App. 1986)..........................50, 57

McKinney v. State,
    511 So.2d 220 (Ala. 1987)...................................................40

Miller v. State,
    275 So.2d 675 (1973)..........................................................50

Perry v. Brakefield,
    534 So.2d 602 (Ala. 1988)...................................................46

Smith v. State,
    795 So.2d 788 (Ala.Crim.App. 2000)..................................61

Solem v.Helm,
    463 U.S. 277 (1983)......................................................65, 66

Sorrell v. State,
    31 So.2d 82 (1947)...........................................51, 57


State v. Freemen,
    605 So.2d 1258 (Ala.Crim.App. 1992)......................36

Staton v. State,
    397 So.2d 227 (Ala.Crim.App. 1981)...............51, 52

Stout v. State,
    547 So.2d 894 (Ala.Crim.App. 1988)......................56

United States v. Benz,
    282 U.S. 304 (1931).............................................39

Williams v. State,
    548 So.2d 501 (Ala.Crim.App. 1988)......................31

Wilson v. State,
    [Ms. CR-97-1494, August 31, 2001]
    ___ So.2d ___ (Ala.Crim.App. 2001).....................66

**CONSTITUTIONAL AMENDMENTS:**

U.S. Const. amend. V...........................................26, 39

U.S. Const. amend VI.....................................36, 45, 59

U.S. Const. amend VIII.......................................26, 65

**LAW REVIEW ARTICLES:**

R. Owens, Alabama's Minority Status:  A Single Criminal
    Act Injuring Multiple Persons Constitutes Only A
    Single Offense, 16 Cum.L.Rev. 85 (1985-86)......................40

**PATTERN JURY INSTRUCTIONS:**

Pattern Jury Instructions-Criminal (Third Edition, 1994).......60

**RULES:**

Rule 21.2, Ala.R.Crim.P. .............................................60

Rule 26.8, Ala.R.Crim.P. ....................................24, 26, 62, 64

Rule 26.9(b)(1), Ala.R.Crim.P. ...............................26, 64

Rule 401, Ala.R.Evid. .......................................45

Rule 404(b), Ala.R.Evid. ....................................3

Rule 611(b), Ala.R.Evid. ....................................45

Rule 611(b), Ala.R.Evid., Advisory Committee's Notes. ...........45

**STATUTES:**

Ala. Code 1975, Sec. 12-21-137.....................................45

Ala. Code 1975, Sec. 12-21-222...........21, 22, 50, 52, 54, 57, 68

Ala. Code 1975, Sec. 12-21-227.....................................42

Ala. Code 1975, Sec. 13A-8-41(a)(1)..............................40, 60, 68

Ala. Code 1975, Sec. 13A-8-41(b).....................................23, 60, 61

Ala. Code 1975, Sec. 13A-8-43.......................................40

vii

## STATEMENT OF THE CASE

On December 16, 2001 at approximately 9:10 p.m. Mr. and Mrs. Jack Murphy were robbed in their home in rural Henry County by four young black males who had their faces partially or fully covered. C201-202, R279. The robbers took from the Murphy residence and premises a floor safe, United States currency and a cell phone and left the Murphys physically unharmed but restrained by packing tape in straight back chairs. R260. The Henry County Sheriff's Department responded to the Murphy residence at approximately 10:00 p.m. on December 16, 2001 and investigated this crime with the assistance of the Barbour County Sheriff's Department and the Barbour County District Attorney's Office. R278-279, C201-202, C1, C3.

On January 15 , 2002 Investigator Clyde Hornsby with the Henry County Sheriff's Department signed two complaints in Case Nos. DC-02-053 and 054 in the District Court of Henry County against Defendant alleging two counts of robbery in the first degree. C6, C8. On January 23, 2002 Defendant was arrested and placed in the Henry County Jail. C7, C9. Defendant had his initial appearance on January 25, 2002 and his bond was set at $250,000.00 in each case. C11. Defendant applied for and was granted court appointed counsel on January

30, 2002.  C14.  After hearing on February 1, 2002 Defendant's bond was reduced to $100,000.00 in each case.  C20-21. Defendant was still unable to post bond and he remained incarcerated in the Henry County Jail through his trial date.

A discovery order was entered February 6, 2002 and Defendant's cases were set for preliminary hearing on March 5, 2002.  C25.  In exchange for promised "open file" discovery by Plaintiff, Defendant waived preliminary hearing.  C24.

The March Term 2002 Henry County Grand Jury issued two indictments against Defendant alleging two counts of robbery in the first degree.  C26-27.  Defendant's cases were assigned to Judge Denny Holloway for trial.  Prior to arraignment Defendant filed a Motion For Speedy Trial which was granted on May 3, 2002 and Motions To Dismiss Or Preclude Multiple Convictions Or Punishments which was initially denied without opportunity for hearing and then deferred for hearing immediately prior to trial.  C30-33, C169.  Defendant was arraigned and entered pleas of not guilty on April 26, 2002. C175.

Defendant filed a Motion To Compel "open file" discovery on August 2, 2002 which was granted on August 9, 2002.  C34-36, 39.  Defendant's cases were set for trial on Septemebr 23, 2002 and Plaintiff sought a continuance of said trial which Defendant opposed.  C40-42.  On September 13, 2002 Judge

2

Holloway ordered that Defendant's trial be set first on Judge Lawson Little's trial docket on October 15, 2002.  C170, 176.

On October 9, 2002 Defendant requested written notice in advance of trial of the general nature of any character evidence Plaintiff intended to introduce at trial and for what purposes pursuant to Alabama Rule of Evidence 404(b).  C43. Plaintiff provided written notice to Defendant in response thereto on October 11, 2002.  C55.

On October 9, 2002 Defendant filed Motions To Suppress concerning the numerous recorded statements made by Defendant to agents of Plaintiff.  C44-46.  On October 10, 2002 Defendant filed a Motion In Limine To Suppress Inadmissable And/Or Prejudicial Matters.  C47-50.  On October 11, 220 Defendant filed Motions To Suppress Physical Evidence.  C51-53.  On October 11, 2002 Plaintiff gave Defendant Notice Of State's Intent To Enforce Sec. 13A-5-6 Of The Code Of Alabama concerning the commission of a felony in which a firearm or deadly weapon was used or attempted to be used.  C54.

On October 15, 2002 Defendant's cases were called to trial and a jury was qualified and seated and then excused until October 16, 2002 at 9:00 a.m. while the Court heard pre-trial motions by Defendant.  R5-36.  On October 16, 2002 at 9:00 a.m. the trial of Defendant started and at 3:30 p.m. Plaintiff and Defendant gave closing arguments.  R327.  After

closing arguments the jury was excused for the day and told to report back the next morning at 9:00 a.m.  R331.  On October 17, 2002 at 9:00 a.m. the jury was charged and began deliberations.  R359.  After deliberating approximately two hours the jury returned guilty verdicts of robbery in the first degree in both cases.  R363.  The jury was polled.  R363.  Defendant filed a Motion For Presentence Report and the Court set a sentencing hearing on November 22, 2002 at 9:00 a.m.  C119, 178, R364.  Plaintiff sought and received a continuance of the sentencing hearing to January 23, 2003.  C173.

After sentencing hearing on January 23, 2003 the Court sentenced Defendant to ninety-nine years, a $5,000.00 fine and a $1,500.00 victims compensation fund assessment in each case and specifically provided said periods of incarceration to run consecutively.  January 23, 2003 R13-14.  A written pre-sentence investigation and report was available for the Court's consideration at the sentencing hearing.  C135-143.

Plaintiff had filed a Motin For Restitution on October 24, 2002 which it later amended a number of times.  C120, C124-125, C146-147.  Defendant filed a Request For Restitution Hearing on December 3, 2002 and specifically requested a restitution hearing at the sentencing hearing on January 23,

4

2003.    C130-131;  January  23,  2003  R7-8.     No   restitution

hearing was ever held in Defendant's cases.

On   February   19,   2003   Defendant   filed   a   Motion   To

Reconsider Sentences Imposed, a Motion In Arrest of Judgment,

a Motion For Judgment of Acquittal, a Motion For New Trial and

A  Notice  Of  Appeal.   C148-157.   On March 3, 2003 Defendant's

trial  counsel  received  notice  of  appointment  as  appellate

counsel for Defendant and that all pending post-trial motions

were set for hearing on March 7, 2003 at 9:00 a.m.   C173.

On March 4, 2003 Defendant filed Form ARAP-IC and Form ARAP-26

with  the  trial  clerk.    C161-165.    Defendant's  appeal  was

docketed in this Honorable Court as Criminal Appeal No.   CR-

02-1017.  All of Defendant's post-trial motions were denied by

the  trial  court  on  March  7,  2003.   C174.   The  Reporter's

Transcript of proceedings through jury verdicts on October 17,

2002 was filed with the trial clerk on May 16, 2003.   R364-

365.    The  Reporter's  Transcript  of  the  January  23,  2003

sentencing  hearing  and  the  March  7,  2003  post-trial  motion

hearing  was  filed  with  the  trial  clerk  on  May  22,  2003.

January 23, 2003 R1-19; March 7, 2003 R1-12.  The trial court

clerk completed Form ARAP-14, Certificate of Completion And

Transmittal  Of  Record  On  Appeal  By  Trial  Clerk  on  May  22,

2003.  C207.  Thus this appeal.

## STATEMENT OF THE ISSUES

I.    WHETHER THE COURT ERRED TO REVERSAL IN DENYING
      DEFENDANT'S BATSON CHALLENGE TO PLAINTIFF'S
      PURPOSEFUL RACIAL DISCRIMINATION DURING JURY SELECTION?

II.   WHETHER JUROR MISCONDUCT AND/OR THE COURT'S SUA SPONTE
      RULING RELATED TO SAME ACTED TO DENY DEFENDANT HIS
      CONSTITUTIONAL RIGHT TO TRIAL BY IMPARTIAL JURY?

III.  WHETHER THE MULTIPLE CASES AND/OR CONVICTIONS VIOLATE
      DOUBLE JEOPARDY?

IV.   WHETHER THE COURT ERRED TO REVERSAL IN ITS RULING THAT
      DEFENDANT'S WIFE COULD BE COMPELLED TO TESTIFY AGAINST
      DEFENDANT AGAINST HER WILL?

V.    WHETHER THE COURT ERRED TO REVERSAL IN LIMITING
      DEFENDANT'S CROSS EXAMINATION OF A KEY PROSECUTION
      WITNESS?

VI.   WHETHER THE COURT ERRED TO REVERSAL IN ITS RULING THAT
      THE UNCORROBORATED TESTIMONY OF ACCOMPLICE NICHOLAS
      McKINNON WOULD NOT BE EXCLUDED AND WOULD BE SUBMITTED TO
      THE JURY?

VII.  WHETHER THE COURT ERRED TO REVERSAL IN REFUSING TO GIVE
      DEFENDANT'S REQUESTED JURY INSTRUCTIONS REGARDING
      CORROBORATION OF ACCOMPLICE TESTIMONY NECESSARY TO
      CONVICT?

VIII. WHETHER THE DEFENDANT WAS DENIED DUE PROCESS BY IMPROPER
      ARGUMENT TO THE JURY BY PLAINTIFF?

IX.   WHETHER THE COURT ERRED TO REVERSAL IN GIVING PLAINTIFF'S
      ADDITIONAL JURY INSTRUCTIONS?

X.    WHETHER THE COURT ABUSED ITS DISCRETION IN SENTENCING
      DEFENDANT?

XI.   WHETHER THE SENTENCES AS IMPOSED ARE UNCONSTITUTIONAL?

XII.  WHETHER THE COURT ERRED TO REVERSAL IN DENYING
      DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR
      MOTION FOR NEW TRIAL?

## STATEMENT OF THE FACTS

On December 16, 2001 at approximately 9:10 p.m. Mr. and Mrs. Jack Murphy, a well-known and well-liked white, married couple (forty year marriage) in their early to mid 60s, were robbed in their home in rural Henry County by four young black males who had their faces partially or fully covered. C201-202; R229, 231, 279. The four robbers did not act like they knew the Murphys. R216. Mrs. Murphy had just finished watching a television program that ended at 9:00 p.m. and was sitting in the den in a reclining chair writing in a book when she heard a commotion outside. R176, 192. Mr. Murphy had previously gone out the back door of their home to get a box to wrap Christmas presents when four young black males accosted him demanding money. C201-202; R229, 231, 279. Two of the males held in their hands what appeared to be pistols. R231. Mr. Murphy initially grabbed one of the pistols and it did not feel real to him. R254. The pistol grabbed by Mr. Murphy "felt light, very light" to Mr. Murphy. R255. Mr. Murphy never touched the other pistol, which was silver in color like the one he had grabbed, and both pistols looked basically the same to him. R255. Both pistols were chrome. C201, R 279. During the robbery Mr. Murphy worried that he and his wife might be shot if the young black males had real

guns.   R267.   During the course of the robbery, which lasted approximately forty-five minutes, Mrs. Murphy asked Mr. Murphy if he thought the pistols were real.   R211, 245, 267.   And during the course of the robbery, Mrs. Murphy noticed that the color of the pistols or something about the pistols did not seem exactly right and it flashed through her mind that at least one of the pistols was not real.   R211.   Mrs. Murphy cannot say for sure if either or both of the pistols used were toys or were real.   R211.   Immediately after the robbery Mr. Murphy went to his barn looking for the four robbers.   R248.

The   four   robbers   forced   themselves   into   the   Murphy residence with Mr. Murphy through the open back door to the house that Mr. Murphy had gone out of to get the box.   C202; R231, 233, 279.   One of the robbers went into the den area and approached Mrs. Murphy demanding money.   R176.   Mrs. Murphy was brought into the kitchen area along with Mr. Murphy where she asked Mr. Murphy where his wallet was.   R178, 234.   Mrs. Murphy retrieved Mr. Murphy's wallet from their bedroom and gave it to the robbers.   R178, 234; March 7, 2003 R9.

The robbers began looking throughout the house for money. R180.   After approximately twenty minutes of searching throughout the house opening drawers and the like one of the robbers found a floor safe that had been located since 1975 in a closet under the only stair well in the house.   R256.   One

of the robbers then took Mrs. Murphy outside to her car to get the combination to the safe that was in her billfold in her car. R184. One of the robbers got Mrs. Murphy's billfold out of her car and then took Mrs. Murphy back into the house where the other robbers had used packing tape to tape Mr. Murphy's hands and tape him to a straight back chair in the kitchen. R187. Mrs. Murphy was similarly taped to a straight back chair in the kitchen. R187. Mrs. Murphy requested that she not be taped too tightly and that no tape be placed on Mr. Murphy's mouth so that his breathing would not be hindered and the robbers complied with her request. R187-188. No tape was placed over the mouth or on the faces of Mr. or Mrs. Murphy and they both were taped loosely to the straight back chairs in the kitchen. R187-188, 260. Although the robbers threatened the Murphy's with bodily harm, the robbers did not physically harm Mr. Murphy or Mrs. Murphy. R260. Shortly after the robbers left their home the Murphys were able to free themselves from the tape and call E-911. R198. Deputy John Gilmer and Investigator Clyde Hornsby with the Henry County Sheriff's Department responded to the E-911 call at the Murphy residence and completed an Alabama Uniform Incident/Offense Report at 10:30 p.m. that night. C201-202, R279.

Three of the four robbers had bandanas over their faces below the eyes and one of the robbers had a see through hood over his entire face. R178. All of their hands were covered. R178. They were all young. R204. One of the robbers was about 5'3" in height and skinny in build. R205-206. The robber who took Mrs. Murphy outside to her car to get the combination to the safe out of her billfold spoke to her a number of times and was the heaviest of the four (approximately 190 pounds) and was taller than the shortest robber but not as tall as the other two robbers who were tall and skinny (approximately 140 pounds each). R184-185, 205-206. Mrs. Murphy is positive that there were only four robbers in her house during the robbery. R212. When Defendant was arrested on January 23, 2002 his date of birth was listed as February 7, 1976, his race was listed as black, his height was listed as 5'10", his weight was listed as 205 pounds, and no alias names were listed. C7, 9.

Defendant was a former worker for the Murphys and had last worked for them around their house and farm according to Mrs. Murphy "several months" prior to the robbery and according to Mr. Murphy two and one half months prior to the robbery. R213, 253. Defendant has a distinctive real deep, deep voice and Mr. Murphy did not hear that voice during the robbery even though all four robbers jabbered back and forth

amongst themselves during the robbery. R235, 264. Mrs. Murphy had known the Defendant for many years prior to the robbery (she had been the school nurse at the school that Defendant attended) and when looking and listening to the four robbers during the course of the robbery over a forty-five minute period Mrs. Murphy did not think of Defendant. R172, 212-213. Prior to December 16, 2001 Mrs. Murphy's opinion of Defendant was that he was a very nice person, that he did good work and that he was very mannerly. R212. Mrs. Murphy testified that no one other than Defendant had worked for the Murphys in the two years prior to the robbery on December 16, 2001. R213. Mr. Murphy testified that a number of "school boys" had worked for him in the year prior to the robbery on December 16, 2001. R254. Mrs. Murphy claims to have heard the words "Boogy or Baty" and "Rock" used during the robbery even though within twelve hours of this crime at 9:37 a.m. on December 17, 2001 in a taped statement to Investigator Hornsby at the Henry County Sheriff's Department Mrs. Murphy stated the only name she heard and remembered was "Rock". R204, 214-215. Mrs. Murphy claims that her December 17, 2001 taped statement to Investigator Hornsby "was true then." R214-215. Mr. Murphy claims, although he is not sure, to have heard the work "Rock" and the name "Johnny" mentioned by the robbers during the robbery. R251-252. Mr. Murphy spoke with Deputy

John Gilmer and Investigator Clyde Hornsby at his home immediately after this robbery on December 16, 2001 and the Incident/Offense Report completed by Deputy Gilmer and co-signed by Investigator Hornsby states that the robbers were not known to Mr. Murphy and that there was no prior relationship (i.e. former worker, etc.) known to Mr. Murphy concerning the robbers. C2, 201-202; R278-279. Deputy Gilmer tragically died of natural causes before Defendant's case came to trial on October 15, 2002 and he was a dedicated and well-respected law enforcement officer throughout the area. R290-291.

During the robbery the robbers beat on the safe with various objects and knocked the dial and handle off the safe. R242-242. Mr. Murphy then told the robbers to drag the safe out the front door. R216, 243. One robber ran outside and then came back in after a short time and the four robbers drug the safe out the front door and left. R216, 269. The Murphys did not hear a car or anything when the robbers were leaving with the safe. R216, 270. The robbers escaped with the unopened safe, a cell phone and United States currency taken from: (1) a dresser drawer in their bedroom, (2) from Mrs. Murphy's billfold taken by a robber out of her car that was parked outside the residence and (3) from Mr. Murphy's wallet that Mrs. Murphy retrieved from their bedroom and gave to the

robbers.    R178, 184-185, 192-193, 234.    Mrs. Murphy is the only person who gave United States currency (from Mr. Murphy's wallet) to the robbers.    R178, 234; March 7, 2003 R9.

Shortly after the robbers left the Murphys were able to get un-taped and go to their nearby son's residence to call E-911 for help.    R246-248.    Then Mr. Murphy went to his barn looking for the robbers.    R248.    Mr. Murphy then went back to his house and met with Deputy Gilmer and Investigator Hornsby. R249, C2.    Mr. Murphy spoke with both of his sons immediately after the robbery on December 16, 2001 and "they went hunting" for the robbers but they were not "hunting" for Defendant. R241, 256-257.    On cross examination Mr. Murphy reversed field and denied speaking to his sons immediately after the robbery on December 16, 2001.    R257.    The Murphys stayed in their home on December 16, 2001 and thereafter after the robbery.    R199-200.

The Henry County Sheriff's Department arrested six individuals in connection with this crime, including Defendant, Kevin McKinnon, Nicholas McKinnon, Travis McKinnon, Todd Blackmon and Christopher Lindsey.    C1. Another individual named Larry Bill Warren, Jr. (aka June Rock) was investigated as a suspect and interrogated (and his mother Margie Warren was interviewed) in this crime but was not formally charged. R80.    Co-defendant Nicholas McKinnon was the chief witness for

Plaintiff at Defendant's trial on October 16, 2002 and he testified that he, Kevin McKinnon, Todd Blackmon and Christopher Lindsey entered the Murphy's residence on December 16, 2001 and robbed them and that he used a toy gun during the robbery. R143. Nicholas McKinnon is an acknowledged liar. R144. Nicholas McKinnon acknowledged that if Defendant had really taken him and the other three robbers to the Murphys to steal their safe that they would have found the safe before looking throughout the house for twenty minutes. R148-149. Nicholas McKinnon entered pleas of guilty to the robbery of the Murphys on May 17, 2002 and received youthful offender treatment, a split sentence of boot camp followed by probation on a three year base sentence, concurrent sentencing, a fine of $500 and a victims compensation fund assessment of $500 in Henry County Case Nos. CC-2002-199 and CC-2002-200. C203-204; R320. Nicholas McKinnon's sentences were amended to one-year concurrent split sentences on June 6, 2002 when the Alabama Department of Corrections advised the sentencing court that due to the seriousness of the underlying charges Nicholas McKinnon was not eligible for boot camp. C205-206; R320. On June 21, 2002 Nicholas McKinnon was ordered to pay $4,500.00 in restitution to Jack Murphy. C205; R320. Prior to being granted youthful offender, entering pleas of guilty and being sentenced on May 17, 2002, Nicholas McKinnon received a

favorable written recommendation regarding youthful offender treatment and sentencing from Alabama Probation and Parole Officer William Weber. R300, 312. Plaintiff did not notify the Murphys of Nicholas McKinnon's May 17, 2002 sentencing hearing. R92. Plaintiff denies that the district attorney's office ever made a deal with Nicholas McKinnon in exchange for his testimony against Defendant. R89-92. Plaintiff claimed that any deal between Nicholas McKinnon and the Henry County Sheriff's Department is outside his control. R91-92. Defendant advised the Court prior to trial during a pre-trial motion hearing that he had evidence that Henry County Sheriff Lawton Ed Armstrong acknowledged during a tape recorded interrogation of Co-Defendant Kevin McKinnon in March 2002, later transcribed by the Henry County Sheriff's Department, that the Sheriff recommended a split sentence and probation for Nicholas McKinnon. R91-92. Plaintiff claimed that any deal the Henry County Sheriff's Department made with Nicholas McKinnon in exchange for his testimony against Defendant was outside his control. R91-92. Sheriff Armstrong acknowledged that the District Attorney's Office makes the final decision regarding plea offers to Defendants. R291-292. The Court advised Defendant that he would be able to present evidence at trial regarding Sheriff Armstrong's March 2002 statement. R92. At trial Defendant was not allowed to use the Sheriff's

15

March 2002 statement acknowledging a split sentence recommendation for Nicholas McKinnon. R288-289. Defendant was also prevented at trial from cross examining Sheriff Armstrong about blatantly racist statements the Sheriff had made in the March 2002 statement concerning Defendant and what the Sheriff was going to do to make sure that Defendant got "it poured to him" like sticking him with "a damn cattle prod, one of them big old prods." R280-286.

Prior to Nicholas McKinnon testifying in Defendant's case on October 16, 2002 Plaintiff had him transported to the Houston County Jail in Dothan and "locked down" and Nicholas McKinnon got the message that he had to testify like Plaintiff wanted him to testify. R146-147. When Nicholas McKinnon refused to testify against Co-Defendant Kevin McKinnon at his trial in January 2003 Plaintiff subsequently filed a motion to revoke his probation and his probation was revoked in open court for chewing gum and slouching in Court during Kevin McKinnon's trial.

The Henry County Sheriff's Department and the Barbour County District Attorney's Office cooperated in the investigation of the Murphy robbery as well as other robberies in Henry and Barbour Counties. C1-3. Investigator Ronnie Dollar with the Barbour County District Attorney's Office assisted Investigator Hornsby in interrogating Defendant and

other Co-Defendant's in the investigation of the Murphy robbery and on one occasion during a taped interrogation Dollar referred directly to Defendant as a "m _ _ _ _ f _ _ _ _ _ " and said "that's what we are going to do, we are going to do some f _ _ _ _ _ " (referring to when Defendant's case came to trial) and Investigator Hornsby added "its already started Johnny."

Tyrone Lindsey of Baker Hill, Alabama (Barbour County) testified for Plaintiff at Defendant's trial on October 16, 2002 to the effect that Nicholas McKinnon (from Baker Hill), Kevin McKinnon (from Baker Hill), Christopher Lindsey (from Baker Hill), Todd Blackmon (from Baker Hill) and Defendant (from Abbeville, Henry County) showed up at his house at approximately 10:30 p.m. on December 16, 2001 and broke into a safe in his yard by beating it with an axe and that he did not know what was going on. R161. Lindsey was charged by the Barbour County District Attorney's Office with Receiving Stolen Property, First Degree and said case was reduced to a misdemeanor that he pled guilty to and he received a suspended sentence and probation. R166. Lindsey was on probation in Barbour County when he testified for Plaintiff. R162. Lindsey dealt with Investigator Ronnie Dollar with the Barbour County District Attorney's Office in arranging his plea agreement in Barbour County. R167. Lindsey is the son of

Mitchell Charles Williams who provided information to Investigator Hornsby on December 18, 2001 allegedly implicating Defendant in the Murphy robbery. C2. Mitchell Charles Williams is also the uncle of Larry Bill Warren, Jr. who was also investigated as a suspect and was interrogated on tape on December 18, 2001 and threatened with two 99-year sentences in the penitentiary by Investigator Hornsby in the Murphy robbery. R80. Larry Bill Warren, Jr. is a convicted felon with three prior felony convictions in Henry County and in exchange for his testimony against Defendant in Barbour County in a Robbery, First and Burglary, First trial in September 2002 in which Defendant was convicted Warren received a concurrent two year split sentence followed by probation on a fifteen year base sentence when the Habitual Felony Offender Act required a mandatory minimum sentence of life or life without the possibility of parole. C56, 141; January 23, 2003 R3-4, 10-11.

During the course of these proceedings fugitive from justice complaints alleging Defendant's involvement in a Blakely, Georgia robbery were signed by Investigator Hornsby in the District Court of Henry County and they were subsequently dismissed in May 2003 for failure to prosecute. C141; January 23, 2003 R4.

18

During jury selection in Defendant's case Plaintiff used his third, fourth, fifth, sixth, ninth and tenth peremptory strikes to eliminate six of the remaining eight black members on the strike list (Miriam Onadeko who was related to Defendant had been challenged for cause). C66, 71; R25-26. Plaintiff claims to have struck Juror No. 38 Shaenea Stanford for "knew the Defendant, knew members of his family, knew Chris Lindsey's uncle also." C67; R26. Plaintiff claims to have struck Juror No. 21 Annie Kinsey for "knew some of the Grace's, not sure if they are related or not" and "she also knew the Warrens." C65; R26-27. Plaintiff claims to have stuck Juror No. 22 Janie Kinsey for "she knows Pam Knight." C65; R27. Plaintiff claims to have struck Juror No. 35 Rex Jerome Rhodes "because he said that his brother is a judge in New Jersey." C67; R27. Plaintiff claims to have struck Juror No. 5 Roosevelt Beck, Jr. for "he'd been convicted of robbery in Barbour County." C61; R28. Plaintiff claims to have struck Juror No. 36 Betty Smith for "she was familiar with the defendant, had known him through school." C67; R28. Defendant intimated to the Court that Plaintiff's exercise of his peremptory strikes constituted purposeful racial discrimination and that the reasons given by Plaintiff were a sham or pretextual. R28. The Court denied Defendant's Batson challenge. R29.

The jury seated to hear Defendant's case (excluding the two white alternates) was comprised of ten whites and two blacks, the black members being Trumma Neal and Henry Lynn. C65-66, 71. After less that three hours of testimony Ms. Neal and Mr. Lynn were removed from the jury by the Court sua sponta for dozing over the objection of the Defendant. R220, 226. Consequently, an all white jury found Defendant guilty of robbing the Murphys. C61-68, 71.

Plaintiff had the Court attach Defendant's wife, Pamela Knight, to be a witness against Defendant under pain of incarceration even though Ms. Knight timely invoked her spousal testimonial privilege. R47-48, 53-54. Prior to the pre-trial hearing on October 15, 2002 Plaintiff misrepresented to the Court that he had not seen a marriage certificate for Defendant and Pamela Knight when in fact Plaintiff had procured the original marriage certificate of Defendant and Pamela Knight's marriage and had it in his possession when he represented to the Court he did not know if there was a marriage certificate and said "I haven't seen it." C200; R49, 66. Defendant had procured an abstract marriage certificate from Pamela Knight prior to the hearing that was offered at the hearing. C199; R54. Defendant and Pamela Knight were married on July 19, 1996 and had never gotten divorced and had lived as husband and wife up until his arrest in this case.

C199-200; R51-52, 54, 66.  The Court ruled that Defendant's wife could be compelled against her will to testify for Plaintiff against Defendant.  R86-88.  Defendant objected to that ruling on the record.  R87.

After Plaintiff rested its case Defendant made a motion to exclude the testimony of Co-Defendant Nicholas McKinnon as uncorroborated accomplice testimony pursuant to Ala. Code 1975, Sec. 12-21-222.  R321-322.  In response Plaintiff offered as corroboration "the testimony of Tyrone Lindsey who testified and said that he had seen the safe taken from the Murphy's when it came to his house."  R322.  No safe or other physical evidence was ever offered or admitted into evidence in this case.  R4.  Plaintiff also offered "you've also got testimony in relationship to the victims who said the name Johnny was used or the nickname was used."  R322.  Plaintiff offered no other corroboration.  R322.  The Court denied Defendant's motion.  R322.

Defendant further moved for Judgment of Acquittal on grounds that Plaintiff had not made a prima facie case for two counts of robbery in the first degree in that Plaintiff had not made prima facie cases of complicity of Defendant and had not made prima facie cases that a deadly weapon or dangerous instrument had been used in the commission of the crime.

R323-324.    The Court also denied Defendant's Motion For
Judgment of Acquittal.  R324.

At the jury instruction hearing on October 16, 2002
Plaintiff did not offer any written instructions and orally
requested an instruction only on complicity.    R324, 327.
Defendant offered ten written jury instructions at the jury
instruction hearing.   C72-86.   The Court gave defendant's
instructions one through six.  R324-326.  Defendant withdrew
numbers seven and ten.   R326-327.   Plaintiff objected to
numbers eight and nine involving corroboration of accomplice
testimony necessary to convict and the Court sustained its
objection over objection by Defendant.   R326-327.   The jury
was never instructed that a conviction of a felony cannot be
had on the testimony of an accomplice unless corroborated by
other evidence tending to connect the defendant with the
commission of the offense, and such corroborative evidence, if
it merely shoe the commission of the offense or the
circumstances thereof, is not sufficient pursuant to Ala. Code
1975, Sec. 12-21-222.

During closing argument Plaintiff was allowed, over
Defendant's objection, to argue to the jury how Nicholas
McKinnon had been granted youthful offender and the sentences
he received were confidential and sealed and should not be
considered by the jury in its deliberation.  R330.

After the Court charged the jury in accordance with the jury instruction hearing from the day prior Plaintiff orally requested two additional instructions concerning the "accountability for behavior of another" (Ala. Code 1975, Sec. 13A-2-25) and "possession then of whatever article used or fashioned in a manner to lead a person who is present reasonably to believe it's a deadly weapon or dangerous instrument, any other representation by the defendant then so armed is prima facie evidence for them to consider" (Ala. Code 1975, Sec. 13A-8-41(b)). R354-355. The Court gave said instructions over Defendant's objection that Plaintiff had not timely requested same in writing or refer to the number and title of the pattern jury instruction as required by law and that Plaintiff's explanation that what he requested was part of the pattern instruction charge for Robbery in the First Degree was not true. R354-356.

The jury deliberated for approximately two hours before returning two convictions for Robbery in the First Degree. C117-118. Defendant requested that a presentence investigation and report be completed and considered by the Court prior to sentencing Defendant. C119. A presentence report was completed and made available to the Court prior to sentencing. C135-143. On January 23, 2003 Defendant requested that the Court consider Alabama Rule of Criminal

procedure 26.8 (i.e. least restrictive sanction, evaluate crime and consequences, consider the background and record of Defendant, sentencing equality, avoid unwarranted disparities in sentencing Defendant, consider the alternatives to long term institutional incarceration). January 23, 2003 R2, 7. The Murphys did not suffer any physical injury related to this incident. January 23, 2003 R2-3. Defendant only had one prior misdemeanor conviction in 1996. January 23, 2003 R3. The Robbery, First and Burglary, First convictions in Barbour County on September 26, 2002 were secured through the accomplice testimony of Larry Bill Warren, Jr. (a three time convicted felon in Henry County) who received therein a concurrent two year split sentence and probation in exchange for his testimony rather than the mandatory minimum sentence of life or life without parole as required by the Habitual Felony Offender Act. January 23, 2003 R3-4, 10-11. The "fugitive warrant" from Blakely, Georgia referred to in the pre-sentence report was initiated by Investigator Hornsby signing three complaints in the District Court of Henry County based on his conversation with an investigator who he knew in the Blakely, Georgia area that someone there had been robbed by three black males. January 23, 2003 R4. Said complaints were dismissed in May 2003 for failure to prosecute.

Defendant is married to Pamela Knight and they have two small children ages seven and four. January 23, 2003 R5.

Co-Defendant Nicholas McKinnon, related to his involvement in the robbery of the Murphys, ultimately received youthful offender treatment, concurrent split sentences of one year on three year base sentences, two fines of $500, two victims compensation fund assessments of $500 and was ordered to pay restitution to Jack Murphy in the amount of $4,500.00. C203-206; R320; January 23, 2003 R5. Alabama Probation and Parole Officer William Weber's recommendation as to sentence for Defendant was "a medium to long period of incarceration." C143, January 23, 2003 R7. Because these two cases happened simultaneously during an approximate forty-five minute time period concurrent sentencing was requested by Defendant. January 23, 2003 R7. Defendant disputed the characterization that the Murphys had been "terrorized" by the robbers by pointing out that after the four robbers had left Mr. Murphy got into his truck and went to his barn looking for them. January 23, 2003 R13. At the sentencing hearing Plaintiff conceded that "Johnny Grace wouldn't be here, if it wouldn't have been for Nicholas McKinnon giving testimony and ratting him out." January 23, 2003 R10. The Court sentenced Defendant to ninety-nine years, a $5,000.00 fine and a $1,500.00 victims compensation fund assessment in each case to

run consecutively prior to hearing from Defendant personally. January 23, 2003 R13-14.  After he was sentenced Defendant was allowed to address the Court.  January 23, 2003 R15-16.

Defendant filed a Motion To Reconsider Sentences Imposed within thirty days of sentencing (on February 19, 2003 along with a Motion For New Trial, a Motion For Judgment of Acquittal, and a Motion In Arrest of Judgment) in which Defendant requested that his sentences be vacated and that he be resentenced by further arguing to the Court that no victim suffered any physical injury, that the sentencing principles of Alabama Rule of Criminal Procedure 26.8 were not duly considered, that the sentences as imposed are disproportionate and excessive and violate the Eighth Amendment to the U.S. Constitution, that said sentences as imposed are fundamentally unfair and violate due process of the Fourteenth Amendment to the U.S. Constitution, that said sentences as imposed violate the double jeopardy clause of the Fifth Amendment to the U.S. Constitution and/or Art. 1 Sec. 9 of the Alabama Constitution of 1901 and/or Ala. Code 1975, Sec. 15-3-8, that the sentences should be run concurrent, that the Court failed to duly consider the pre-sentence report and recommendation of Probation Officer William Weber and that the Court failed to allow Defendant his right of allocution prior to sentencing pursuant to Alabama Rule of Criminal Procedure 26.9(b)(1).

C154-156, March 7, 2003 R2-3.  The Court after acknowledging that Defendant's post trial motions (including the Motion To Reconsider Sentences Imposed) "perfectly preserved your errors for the record by doing that" denied all of Defendant's post trial motions.  March 7, 2003 R6, 10.  Plaintiff misstated the testimonial evidence from the guilt phase of the trial when he stated regarding corroboration "(T)he evidence was through Tyrone Lindsey that Mr. Grace, as well as Mr. Nicholas McKinnon, the guy that got Youthful Offender, said they went and took it and dumped it over a bridge."  March 7, 2003 R8.  Tyrone Lindsey never gave that testimony.  R157-169, 219.  In reference to the 198 year sentence and its claimed disproportion and excessiveness Plaintiff stated that "the United States Supreme Court has come out this week dealing with cases out of California where they have said 30, 40, 50 years for shoplifting or stealing two hundred or three hundred dollars worth of property is not excessive in relation to cases based on everything that took place."  March 7, 2003 R8-9.  Plaintiff either intentionally or ignorantly misled the Court in that respect as the case he cited dealt only with the constitutionality of a California habitual felony offender statute that had no application to Defendant's case.  March 7, 2003 R10.

## STATEMENT OF THE STANDARD OF REVIEW

The standard of review for **Issues I, IV, V, VII, IX, X** and **XII** is whether the trial court abused its discretion.

The standard of review for **Issue II** is whether the juror misconduct might have prejudiced the Defendant and whether the trial court abused its discretion.

The standard of review for **Issue III** is whether each provision requires proof of an additional fact that the other does not.

The standard of review for **Issue IV** is whether after setting aside the testimony of the accomplice and examining all other evidence there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense.

The standard of review for **Issue VIII** is whether the improper argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process."

The standard of review for **Issue XI** is whether the sentence is grossly disproportionate to the offense.

## SUMMARY OF THE ARGUMENT

Regarding **Issue I,** the Court erred to reversal in denying Defendant's <u>Batson</u> challenge to Plaintiff's purposeful racial discrimination in striking six of the remaining eight blacks on the strike list during jury selection. Plaintiff's explanations for its peremptory strikes of blacks were shams and pretextual.

Regarding **Issue II,** juror misconduct by the only two black members of the jury prejudiced Defendant's right to an impartial jury and the Court sua sponte abused its discretion when it discharged the jurors without warning.

Regarding **Issue III,** the two convictions arise out of the same act or transaction and violate double jeopardy.

Regarding **Issue IV,** the Court's ruling that Defendant's wife could be compelled against her will to testify denied Defendant due process.

Regarding **Issue V,** the Court erred to reversal in limiting Defendant's cross-examination of a key prosecution witness.

Regarding **Issue VI,** the Court erred to reversal when it failed to exclude uncorroborated accomplice testimony.

Regarding **Issue VII,** the Court abused its discretion when it refused to give Defendant's requested jury instructions

that were correct propositions of law regarding corroboration of accomplice testimony necessary to convict.

Regarding **Issue VIII**, Plaintiff's improper argument to the jury so infected the trial with unfairness as to make the resulting conviction a denial of due process.

Regarding **Issue IX**, the trial court abused its discretion in giving Plaintiff's additional jury instructions that had not been properly requested.

Regarding **Issue X**, the trial court abused its discretion in sentencing Defendant to 198 years without duly considering all legitimate mitigating factors.

Regarding **Issue XI**, the 198 year sentence is grossly disproportionate to the offense and constitutes cruel and unusual punishment.

Regarding **Issue XII**, the trial court erred to reversal in denying Defendant's Motion For Judgment of Acquittal and/or Motion For New Trial where accomplice testimony was not sufficiently corroborated, there was insufficient evidence regarding the use of a deadly weapon or dangerous instrument, there was insufficient evidence that Defendant procured, induced or caused the robbers to commit the offense or aided or abetted the robbers to commit the offense and there was absolutely no physical evidence offered or admitted at trial linking Defendant to the commission of the crime.

<u>I</u>

**THE COURT ERRED TO REVERSAL IN DENYING DEFENDANT'S <u>BATSON</u> CHALLENGE TO PLAINTIFF'S PURPOSEFUL RACIAL DISCRIMINATION DURING JURY SELECTION.**

Plaintiff systematically and purposely discriminated against members of the black race during jury selection by using its peremptory strikes to eliminate six out of eight remaining black venirepersons from the strike list in violation of the United States Supreme Court holding in <u>Batson v.Kentucky</u>, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d. 69 (1986). Plaintiff used his third, fourth, fifth, sixth, ninth and tenth peremptory strikes to eliminate members of the black race from Defendant's (a member of the black race) jury. C61-68, 71.

> "In a <u>Batson</u> context, it is well settled where, as in the present case, the trial court does not make an express finding that a prima facie case of discrimination has been established but nonetheless requires the challenged party to explain its peremptory strikes, the appellate courts will presume that the trial court found a prima facie case and will evaluate the explanations offered by the challenged party."

<u>Huntley v. State</u>, 627 So.2d 1013, 1016 (Ala. 1992) and <u>Williams v. State</u>, 548 So.2d 501, 504 (Ala.Crim.App. 1988), cert. denied, 489 U.S. 1028 (1989).

"Once a prima facie case has been established, a presumption is created that the peremptory challenges were used to discriminate against black jurors." <u>Ex parte Branch</u>, 526 So.2d 609, 623 (Ala. 1987). "When the trial court has

required a party to state reasons for the strikes, that party must articulate reasons that are clear, specific and legitimate, that relate to the particular case, and that are nondiscriminatory." Ex parte Bird, 594 So.2d 676, 679 (Ala. 1991).

> "The trial judge cannot merely accept the specific reasons given by the prosecutor at face value; the judge must consider whether the racially neutral explanations are contrived to avoid admitting acts of group discrimination. This evaluation by the trial judge is necessary because it is possible that an attorney, although not intentionally discriminating, may try to find reasons other than race to challenge a black juror, when race may be his primary factor in deciding to strike the juror."

Ex parte Branch, 526 So.2d 609, 624 (Ala. 1987).

"(O)ne unconstitutional peremptory strike requires reversal and a new trial." Ex parte Bird, 594 So.2d 676, 683 (Ala. 1991). While Defendant contends that Plaintiff failed to state any legitimate race-neutral reasons for any of its peremptory strikes (i.e., that all explanations given by Plaintiff were in reality shams or pretextual to cover its purposeful racial discrimination), Defendant points out that Plaintiff's explanation for striking Juror No.22 Janie Kinsey ("she knows Pam Knight") is obviously pretextual. R27. Pam Knight, Defendant's wife, was a potential witness for Plaintiff who had previously given a written statement and had provided alleged physical evidence to law enforcement and any

tendency to believe that witness due to prior acquaintance or relationship between the prospective juror and the witness would only serve to benefit Plaintiff's case, not harm it.

Defendant's explanation for striking Juror No. 35 Rex Jerome Rhodes is an obvious pretext to conceal racial discrimination.    Mr.  Rhodes  responded  to  Defendant's questioning during voir dire that his brother-in-law (not his brother as Plaintiff erroneously stated) was a judge in New Jersey but that fact would not affect his ability to be fair and impartial.  Plaintiff's explanation that "Mr. Rhodes was struck because he said his bother (sic) is a judge in New Jersey" is a sham because its claim that it also struck white venirepersons who had "ties to judges or people or the prison" is not supported by the record or anything that actually transpired at trial that is not reflected in the record.   To support its strike of Mr. Rhodes Plaintiff claimed to have struck Juror No. 14 Christy Harper, a white, because she purportedly "said she knows the probate judge" who is a "white judge" in this Circuit.   R27.   In a rural county like Henry County that has a population of approximately 16,000 one would be hard pressed to find a resident who does not "know" the Judge of Probate is Lamar Turner (who, as Plaintiff pointed out, does happen to be white for whatever difference that makes).  Ms. Harper had approached defense counsel after lunch

33

prior to jury selection and attempted to talk to him and when
this was disclosed to Plaintiff on the record Ms. Harper
stated "(M)y neighbor is Judge Lamar Turner. I didn't know if
I was supposed to mention it. I don't know him personally. I
have never met him." R24. Plaintiff failed to follow-up and
ask Ms. Harper any questions. R24. Plaintiff did not strike
Ms. Harper until his twelfth and last peremptory strike. C71.
Similarly, Plaintiff attempted to justify its strike of Mr.
Rhodes by contending that it struck Juror No. 8 Jerrod Wyatt
Bryant, a white, because he is an Alabama Correctional
Officer. R27. While it is true that Mr. Bryant responded to
Defendant's voir dire questions concerning his employment in
law enforcement, Plaintiff really used its second peremptory
strike to remove Mr. Bryant because defense counsel had
previously represented him in a divorce proceeding and Mr.
Bryant had disclosed that requested fact to Plaintiff during
its voir dire questioning. C71. Plaintiff failed to make
further inquiry of Mr. Rhodes, Ms. Harper or Mr. Bryant
regarding its alleged concern of "any ties to judges or people
or the prison" or "how the system works". R27, 29. The
Alabama Supreme Court has held that the State's failure to
engage in a meaningful voir dire examination on a subject the
State alleges it is concerned about is evidence suggesting
that the explanation is a sham and a pretext for

discrimination.    <u>Ex parte Bird</u>, 594 So.2d 676, 683 (Ala. 1991).

The Alabama Department of Public Health, Center for Health Statistics and the Center for Demographic and Cultural Research at Auburn University Montgomery concur that the black population of Henry County is 34.2%.    After Juror No. 29 Miriam Onadeko was removed for cause blacks comprised only 19% of the strike list.    C61-71.    And Plaintiff was then allowed to eliminate 75% of those blacks remaining through systematic and purposeful discrimination.    The Court's denial of Defendant's <u>Batson</u> challenge injured the substantial rights of Defendant and the venirepersons illegally removed and constitutes reversible error.

<u>II</u>

**JUROR MISCONDUCT AND/OR THE COURT'S SUA SPONTE RULING RELATED TO SAME ACTED TO DENY DEFENDANT HIS CONSTITUTIONAL RIGHT TO TRIAL BY IMPARTIAL JURY.**

The Sixth Amendment to the United States Constitution provides in pertinent part:

> "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed..."

The jury sworn to hear and decide Defendant's cases (excluding white alternates No. 14 Kristy Harper and No. 9 Sonia Bush) was comprised of ten whites and two blacks, the black members being Juror No. 28 Trumma Neal and Juror No. 24 Henry Lynn.    C65-66, 71.    After less than three hours of testimony in the morning of the first (and only) day of trial Ms. Neal and Mr. Lynn were removed by the Court sua sponte for dozing over the objections of the Defendant.    R220, 226. Consequently, an all white jury found Defendant guilty in these cases.    C61-68, 71.

> "It is fundamental to our system of impartial justice that 'parties have a right to have questions answered truthfully by prospective jurors to enable them to exercise their discretion wisely in exercising their peremptory strikes.'"

State v. Freeman, 605 So.2d 1258, 1259 (Ala.Crim.App. 1992) [quoting Ex parte O'Leary, 438 So.2d 1372, 1373 (Ala. 1983), quoting in turn Ex parte O'Leary, 417 So.2d 232, 240 (Ala. 1982)].

When Defendant asked the venire during voir dire, "Does anyone have any reason whatsoever that would prevent them from rendering a fair and impartial verdict based on the admissible evidence presented at trial in this matter?" only Juror No. 16 Martha Jezewski responded affirmatively and she was successfully challenged for cause by the Defendant.    R15-16. Ms. Neal and Mr. Lynn, who listened attentively during voir dire, did not advise Defendant that they had any problems staying awake.

> "'Where the party has examined the jurors concerning their qualifications, and they do not answer truly, it is manifest that he is deprived of his right to challenge for cause, and is deceived into foregoing his right of peremptory challenge.'"

Ex parte Ledbetter, 404 So.2d 731, 733 (Ala. 1981) [quoting Lench v. State, 31 Ala.App. 390, 18 So.2d 285, cert. denied, 245 Ala. 539, 18 So.2d 289 (1944)].

Ms. Neal and Mr. Lynn either failed to answer Defendant's questions truthfully during voir dire or their blatant disregard for the oaths they took to serve as jurors by mutually falling asleep during the beginning of Defendant's trial constituted gross misconduct on their parts which is inexcusable.    R220-223.    If they did not want or care enough to serve on Defendant's jury they should have responded to Defendant's voir dire questioning accordingly.    For obvious reasons, Defendant sought to include members of his own race on his jury and Ms. Neal and Mr. Lynn's gross misconduct acted

to deny Defendant a trial by an impartial jury. In <u>Ex parte</u> <u>Willie C. Dobyne</u>, 805 So.2d 763, 771 (Ala. 2001) the Alabama Supreme Court reemphasized that:

> "The proper standard for determining whether juror misconduct warrants a new trial, as set out by this Court's precedent, is whether the misconduct <u>might</u> have prejudiced, not whether it actually did prejudice, the defendant." (Emphasis added.)

Moreover, the Court's sua sponte removal of Ms. Neal and Mr. Lynn without first warning them acted to deny Defendant an impartial jury because the last remaining blacks from an underrepresented and discriminated group in jury selection were removed from the jury, and by replacing the only two black members of the jury with two white alternates Defendant was generally prejudiced by an all white jury deciding a case involving a black man accused of robbing a well-respected and well-liked elderly white couple and more specifically prejudiced by Juror No. 9 Sonia Bush, who Defendant had struck on information that she would tend to be pro prosecution, being designated as a deliberating juror.

Accordingly, the Court abused its discretion in removing Ms. Neal and Mr. Lynn without first attempting to warn them and further abused its discretion in denying Defendant's Motion For New Trial for juror misconduct.

38

### III

**THE MULTIPLE CASES AND/OR CONVICTIONS VIOLATE DOUBLE JEOPARDY.**

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides in pertinent part: "No person shall...be subject for the same offense to be twice put in jeopardy of life and limb..." The Double Jeopardy Clause is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784 (1969). The Supreme Court of the United States has interpreted the Double Jeopardy Clause to provide, among other things, protection against multiple punishments for the same offense. United States v. Benz, 282 U.S. 304 (1931). In Blockburger v. United States, 284 U.S. 299, 304 (1932) the Supreme Court of the United States established the test for double jeopardy as "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." (Emphasis added.) Defendant in this case was not charged or convicted with violating two different statutes, rather he was charged and convicted of two violations of the same statute (i.e., armed robbery).

39

The Alabama Supreme Court in McKinney v. State, 511 So.2d 220, 225 (Ala. 1987), quoting R. Owens, Alabama's Minority Status: A Single Criminal Act Injuring Multiple Persons Constitutes Only a Single Offense, 16 Cum.L.Rev. 85, 104-107 (1985-86), held that "legislative intent to allow multiple prosecutions for a single act that injures more than one person is determined by the description of the unit of prosecution within the substantive criminal law statutes...How, then, should the unit of prosecution be described so that an intent to allow multiple convictions is clear and unequivocal? Instead of using the word 'any' to describe the unit of prosecution, the singular words 'a' or 'another' should be used. An examination, then, should be made of the Alabama Criminal Code to see how the unit of prosecution is described. This examination will disclose whether the code allows multiple convictions... The second category contains statutes in which the unit of prosecution is described with the word 'any'; based on the above mode of statutory construction, only one conviction should be allowed." (Emphasis added.)

Defendant was convicted of two counts of Ala. Code 1975, Sec. 13A-8-41(a)(1) that incorporates as an element thereof Ala. Code 1975, Sec. 13A-8-43. The unit of prosecution of same is clearly defined as "any". This Honorable Court

recently applied the before-mentioned unit of prosecution test in vacating three of four convictions as violating the Double Jeopardy Clause where the unit of prosecution in the examined statute was defined as "any" in <u>Jimmy Charles Dake v. State</u>, 675 So.2d 1365 (Ala. Crim. App. 1995).

Moreover, the unique facts in the present case do not warrant multiple convictions of Defendant for the same act or transaction.  The safe and United States Currency taken from the Murphys were jointly owned marital property and were taken from their premises and not their persons.  The safe was taken from a closet under the stairwell in their home.   R256. United States Currency was taken from: (1) a dresser drawer in their bedroom, (2) from Mrs. Murphy's billfold that a robber retrieved out of Mrs. Murphy's car that was parked outside the residence and (3) from Mr. Murphy's wallet that was retrieved from their bedroom by Mrs. Murphy and then turned over to the robbers.   R178, 184-185, 192-193, 234.   Mrs. Murphy is the only one who personally turned over United States Currency (from Mr. Murphy's wallet after retrieving same from their bedroom) to the robbers.  R178, 234; March 7, 2003 R9.

Accordingly, Defendant respectfully requests that this Honorable Court vacate one of his convictions as violating the Double Jeopardy Clause.

## IV

**THE COURT ERRED TO REVERSAL IN ITS RULING THAT DEFENDANT'S WIFE COULD BE COMPELLED TO TESTIFY AGAINST DEFENDANT AGAINST HER WILL.**

Ala. Code 1975, Sec. 12-21-227 states clearly and authoritatively: "The husband and wife may testify either for or against each other in criminal cases, but shall not be compelled so to do." (Emphasis added.) This Honorable Court has recently reversed a conviction where the trial court incorrectly determined husband-wife privilege. Hall v. State, 720 So.2d 1043 (Ala.Crim.App. 1998).

Plaintiff had the Court attach Defendant's wife, Pamela Knight, to be a witness against Defendant under pain of incarceration even though Mrs. Knight timely invoked her spousal testimonial privilege. R47-48, 53-54. Prior to the pre-trial hearing regarding spousal privileges on October 15, 2002 Plaintiff misrepresented to the Court that he had not seen a marriage certificate for Defendant and Pamela Knight when in fact Plaintiff has somehow procured the original marriage certificate of Defendant and Pamela Knight's marriage and had it in his possession when he misrepresented to the Court that he did not know if there was a marriage certificate and said "(I) haven't seen it." C200; R49, 66. Defendant had procured an abstract of a marriage certificate issued by the

42

Henry County Judge of Probate from Pamela Knight prior to said hearing that was offered at the hearing.  C199; R54.  Since Plaintiff had in his possession the original marriage certificate he in all likelihood felt secure that he could misrepresent to the Court with impunity and deny that a marriage certificate existed and there would be no proof otherwise.  He was mistaken and his deceit and misconduct was shown.  One can only wonder what other deceit was practiced by Plaintiff in the prosecution of Defendant's case?

Defendant and Pamela Knight were married on July 19, 1996 and had never gotten divorced and had lived as husband and wife, except for a two month separation period in 1999 when they experienced marital difficulties and eventually reconciled, up until Defendant's arrest in this case on January 23, 2002.  C199-200; R51-52, 54, 66.  Despite the clear wording of the before-mentioned spousal testimonial privilege statute and the undisputed facts of Defendant's marriage to Pamela Knight the Court inexplicably ruled that Defendant's wife could be compelled to testify against her will.  R86-87.  This ruling severely prejudiced Defendant's right under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to present a defense because even though Plaintiff did not call Defendant's wife to the witness stand during its case in chief she and alleged

43

physical evidence through her were ready and available to Plaintiff in rebuttal if Defendant had presented a defense.

Accordingly, the substantial rights of the Defendant were injured and the judgments of conviction must be reversed.

<u>V</u>

**THE COURT ERRED TO REVERSAL IN LIMITING DEFENDANT'S CROSS EXAMINATION OF A KEY PROSECUTION WITNESS.**

The Sixth Amendment to the United States Constitution provides in pertinent part:  "In all criminal prosecutions, the accused shall enjoy the right to...be confronted with the witnesses against him."  Alabama Rules of Evidence 611(b) provides in pertinent part:  "The right to cross-examine a witness extends to any matter relevant to any issue and to matters affecting the credibility of the witness..."

> "Rule 611(b) continues Alabama's present position as a 'wide open rule' jurisdiction regarding matters that may be inquired about on cross-examination. Questions on cross-examination are appropriate as long as they are relevant either to credibility or to any material issue in the case.  <u>Moody v. State</u>, 267 Ala. 204, 100 So.2d 733 (1957); <u>Cooper v. State</u>, 526 So.2d 602 (Ala.Crim.App. 1986)."

Ala. R. Evid. 611(b), Advisory Committee's Notes.

<u>Ala. Code</u> 1975, Sec. 12-21-137 provides in pertinent part: "The right of cross-examination, thorough and sifting, belongs to every party as to the witnesses called against him..." Alabama Rule of Evidence 401 provides:  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

45

"In Alabama, a party is entitled to a thorough and
and sifting cross-examination of the witnesses against
him.... [T]he trial court is vested with considerable
control over the scope of cross-examination, and its
rulings thereon will not be reversed in the absence of
a gross abuse of discretion that causes substantial
injury to the objecting party....  The trial court may
not, however, limit cross-examination as to a relevant
and material matter until the examining party has
substantially exercised his right to question the witness
thereon."

Perry v. Brakefield, 534 So.2d 602, 607-08 (Ala. 1988).

Acknowledged key prosecution witness Co-Defendant
Nicholas McKinnon received a generally unheard of lenient
sentence for his part in the Murphy robbery on May 17, 2002.
C203-204; R320.   Prior to receiving said sentences Co-
Defendant McKinnon received a favorable written recommendation
regarding youthful offender treatment and sentencing from
Alabama Probation and Parole Officer William Weber.   R300,
312.   Plaintiff denies that the district attorney's office
ever made a deal with Co-Defendant McKinnon in exchange for
his testimony against Defendant.   R89-92.   Defendant advised
the Court and Plaintiff prior to trial that he had evidence
that Henry County Sheriff Lawton Ed Armstrong had acknowledged
during a tape recorded interrogation of Co-Defendant Kevin
McKinnon in March 2002, later transcribed by the Henry County
Sheriff's Department, that the Sheriff recommended a split
sentence and probation for Nicholas McKinnon.   R91-92.
Plaintiff claimed that any deal between Nicholas McKinnon and

46

the Henry County Sheriff's Department is outside his control. R91-92.  The Court advised Defendant that he would be able to present evidence at trial regarding Sheriff Armstrong's March 2002 statement.  R92.  Sheriff Armstrong acknowledged at trial that the District Attorney's Office makes the final decision regarding plea offers to Defendants.  R291-292.

On cross-examination Sheriff Armstrong answered three times that he did not hold any personal animus towards Defendant.  R280.  Defendant countered with the March 2002 prior inconsistent statement made by the Sheriff that the Sheriff recognized and acknowledged making as follows:

> "...and I'm going to tell you something else, Boogy, I'm going to be there.  It's just like a ---it's just like a damn cattle prod, one of them big old prods.  Every time the DA gets ready to do something, I'm going to be there sticking 'cause I want it poured to him."  R280.

The Court then erroneously sustained Plaintiff's objections for relevancy and hearsay and excluded the evidence over the objection of Defendant.  R285-286.

Defendant then made an offer of proof regarding Sheriff Armstrong's March 2002 statement regarding a sentencing recommendation for Co-Defendant Nicholas McKinnon.  R286-287. Sheriff Armstrong was asked about his recommendation in his March 2002 statement as follows:

> "...it's like the other day, I had one of the lawyers come up here and tell me---and was trying to work out

47

a deal with one of his clients and sat down in the chair over there.  He said, Sheriff, I see where you recommended so and so and so, and you didn't have no objection to him getting a split sentence.  I said, I don't.  He said, well, how about my client, my client was with him.  I said, I do."  R288.

The Court sustained Plaintiff's generic objection and at a bench conference where everyone was talking low so the jury could not hear ruled that Defendant could not use the March 2002 prior inconsistent statement by Sheriff Armstrong.  R288-289.  Sheriff Armstrong who was on the witness stand was standing up and leaning over the Judge's bench to listen to the results of the sidebar conference.  When Defendant then asked the Sheriff about any recommendation that he or his department made to Co-Defendant Nicholas McKinnon, without the aid of the Sheriff's prior inconsistent statement from March 2002 as the Court had ordered, Sheriff Armstrong testified, "I don't recall if we did or if we didn't" and "I can't recall that."  R289-290.

The matters excluded by the Court were highly relevant because they touched upon the material issue in the case whether Co-Defendant Nicholas McKinnon's accomplice testimony implicating Defendant was true or a lie bartered for with favorable treatment from Plaintiff or its agents and whether Sheriff Armstrong was credible in his testimony.  The Court abused its discretion in limiting Defendant's cross-

examination and the substantial rights of Defendant were injured thereby which requires that his convictions be reversed.

VI

**THE COURT ERRED TO REVERSAL IN ITS RULING THAT THE UNCORROBORATED TESTIMONY OF ACCOMPLICE NICHOLAS McKINNON WOULD NOT BE EXCLUDED AND WOULD BE SUBMITTED TO THE JURY.**

Ala. Code 1975, Sec. 12-21-222 provides:  "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, it is not sufficient."  Alabama courts have consistently adhered to the rule that an accused may not be convicted on the uncorroborated testimony of an accomplice.  Massey v. State, 497 So.2d 590 (Ala.Crim.App. 1986) citing Caldwell v. State, 418 So.2d 168 (Ala.Crim.App. 1981), and cases cited therein. The test used to determine if there is sufficient corroboration of accomplice testimony is a subtraction process in which the testimony of the accomplice is set aside and "then, if upon examination of all other evidence, there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration..."  Miller v. State, 275 So.2d 675, 677 (1973).

50

"The testimony of an accomplice 'remains in limbo as no evidence at all' until it is corroborated by other evidence tending to incriminate the accused." Staton v. State, 397 So.2d 227, 231 (Ala.Crim.App), cert. denied, 397 So.2d 232 (Ala. 1981). When testing the sufficiency of corroborating testimony, a court applies the following rules summarized in Craig v. State, 376 So.2d 803, 805-806 (Ala.Crim.App.), cert. denied, 376 So.2d 807 (Ala. 1979):

> "The corroboration of an accomplice must tend to connect the accused with the commission of the crime but need not refer to any statement or fact testified to by the accomplice. The corroborative evidence need not be strong, nor sufficient of itself to support a conviction, the criterion being that it legitimately tend to connect the accused with the offense. Corroborative evidence need not directly confirm any particular fact nor go to every material fact stated by the accomplice. Corroborative evidence need not directly connect the accused with the offense but need only tend to do so. The sufficiency of corroborating evidence is established if its probative value tends to connect the defendant with the commission of the crime. The corroboration of an accomplice may be shown by circumstantial evidence."

The foregoing rules must be considered along with the related principle set forth by the Alabama Supreme Court in Sorrell v. State, 31 So.2d 82, 83 (1947):

> "The corroboration necessary to support the testimony of an accomplice must be of some fact tending to prove the guilt of the accused. It is not sufficient if it is equivocal or uncertain in character and must be such that legitimately tends to connect the defendant with the crime. It must be of a substantive character, must be inconsistent with the innocence of the accused

and must do more than raise a suspicion of guilt."

"Evidence which merely raises a conjecture, surmise, speculation, or suspicion that (the) accused is the guilty person is not...sufficiently corroborative of the testimony of an accomplice to warrant a conviction."   23 C.J.S. Criminal Law, Sec. 812(5)(b).   Staton v. State, 397 So.2d 227, 232 (Ala.Crim.App. 1981).

After Plaintiff had rested its case Defendant made a motion to exclude the testimony of Nicholas McKinnon as uncorroborated accomplice testimony pursuant to Ala. Code 1975, Sec. 12-21-222.  R321.   In response thereto Plaintiff offered as corroboration "the testimony of Tyrone Lindsey who testified and said that he had seen the safe taken from the Murphy's when it came to his house.  I'm not saying he saw the crime occur, but he sees the safe, which Johnny Grace, as well as other defendants, including the co-defendant, are attempting to break into, items that were taken out..." R322. No safe or any other physical evidence was ever offered or admitted into evidence in this trial so Plaintiff's assertion that Tyrone Lindsey saw the safe taken from the Murphys is pure speculation and unsubstantiated conjecture by Plaintiff.

Plaintiff also offered as alleged corroboration "you've also got testimony in relationship to the victims said the name Johnny was used or the nickname was used."  R322.  Mrs.

52

Murphy at trial claimed to have heard the words "Boogy or Baty" and "Rock" used during the robbery even though within twelve hours of this crime at 9:37 a.m. on December 17, 2001 in a taped statement to Investigator Hornsby at the Henry County Sheriff's Department Mrs. Murphy stated the only name she heard and remembered was "Rock". R204, 214-215. Mrs. Murphy claims that her December 17, 2001 audio taped statement to Investigator Hornsby "was true then." R214-215. Did Mrs. Murphy suddenly know or remember something at trial that she did not know or remember within twelve hours of the crime or is it the more reasonable inference of victim bias against the accused? Defendant submits it's the latter.

Mr. Murphy claimed at trial, although he was not certain, to have heard the word "Rock" and the name "Johnny" mentioned by the robbers during the robbery. R251-252. Mr. Murphy spoke with Deputy John Gilmer and Investigator Clyde Hornsby at his home immediately after this robbery on December 16, 2001 and the Incident/Offense Report completed by Deputy Gilmer and co-signed by Investigator Hornsby at 10:30 p.m. on December 16, 2001 states that the robbers were not known to Mr. Murphy and that there was no prior relationship (i.e. former worker, etc.) known to Mr. Murphy concerning the robbers. C2, 201-202; R278-279. Deputy Gilmer tragically died of natural causes before Defendant's case came to trial

on October 15, 2002 and he therefore was unavailable to testify that Mr. Murphy did not report to him that he heard the name "Johnny" used during the robbery immediately following the robbery or that he knew any of the robbers as evidenced by his Incident/Offense Report. C201-202; R278-279. Deputy Gilmer was a dedicated and well-respected law enforcement officer throughout the area. R290-291. He certainly would have included such important facts in his report had they been reported to him by Mr. Murphy.

Mr. Murphy earnestly believes that Defendant is responsible for this crime as evidenced by his patently biased trial testimony wherein he inexplicably described Defendant, an unquestionably dark skinned African-American, as having "medium complexion" to maintain apparent consistency with his taped statement given December 17, 2001. Similarly, Mr. Murphy further claimed at trial that Defendant could have been any three of the four robbers who entered his home on December 16, 2001 in direct contradiction to previous trial description of the four robbers. R261-262, 266-267.

The Court denied Defendant's motion without articulating what corroboration it found to be sufficient. R322.

Not satisfied with the Court's previous ruling Defendant raised the requirement of Ala. Code 1975, Sec. 12-21-222 again in his post-trial motions heard March 7, 2003. C148-151;

March 7, 2003 R4-5.   In response thereto Plaintiff stated "we had plenty of corroboration from Nicholas McKinnon in relationship to the guns, the masks, what occurred in the house... The evidence was through Tyrone Lindsey that Mr. Grace, as well as Mr. Nicholas McKinnon, the guy that got Youthful Offender, said they went and took it and dumped it over a bridge."   First of all the test is a subtraction process where the testimony of the accomplice is removed so whatever Nicholas McKinnon testified to cannot be considered corroborative of his own testimony.   Secondly, Tyrone Lindsey never gave the asserted testimony.   R157-169, 219.   If there is "plenty of corroboration" as Plaintiff asserts why is it so difficult for Plaintiff (or the Court for that matter) to articulate?   Defendant submits that the reason is that there is no sufficient corroboration to articulate.   After acknowledging that Defendant had "perfectly preserved your errors for the record" the Court denied all post trial motions without making any findings of fact regarding corroboration or anything else.   March 7, 2003 R6, 10.

Accordingly, Defendant asserts that the Court's ruling that there was sufficient corroboration injured the substantial rights of Defendant and constitutes reversible error.

VII

**THE COURT ERRED TO REVERSAL IN REFUSING TO GIVE DEFENDANT'S REQUESTED JURY INSTRUCTIONS REGARDING CORROBORATION OF ACCOMPLICE TESTIMONY NECESSARY TO CONVICT.**

"A trial court has broad discretion in formulating its jury instructions, provided they are an accurate reflection of the law and facts of the case." Coon v. State, 494 So.2d 184, 186 (Ala.Crim.App. 1986). "The trial court's refusal to give written requested charges does not constitute error when the charges are covered in the trial court's oral charge, are confusing or misleading, are inapplicable or abstract, or are an incorrect statement of the applicable law." Stout v. State, 547 So.2d 894, 898-99 (Ala.Crim.App. 1988).

In Ex parte Chavers, 361 So.2d 1106, 1107 (Ala. 1978) the Alabama Supreme Court set out circumstances in which a criminal defendant is entitled to jury instructions when it stated: "(O)ur decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of the case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility. Burns v. State, 229 Ala. 68, 155 So.2d 561 (1934)."

Defendant's requested written jury instructions Nos. 8 and 9 were inexplicably refused by the Court and not given.

C84-85; R326-327.    Requested jury instructions 8 and 9 are correct statements of the law, are not misleading or confusing, and are not covered elsewhere in the trial court's instructions to the jury.    Requested jury instruction No. 8 is Ala. Code 1975, Sec. 12-21-222 verbatim.  C84.  Requested jury instruction No. 9 is a direct (but not verbatim) quote of the holding from Massey v. State, 497 So.2d 590 (Ala.Crim.App. 1986) wherein this Honorable Court cited as authority the Alabama Supreme Court decision of Sorrell v. State, 31 So.2d 82, 83 (1947). C85.  The jury should have been instructed as requested by Defendant so that as the trier of fact it could determine if there was credible incriminating evidence to corroborate the accomplice testimony of Nicholas McKinnon sufficient to convict Defendant.

The trial court's refusal to give Defendant's requested jury instructions No. 8 and/or No. 9 injured the substantial rights of Defendant and constitutes reversible error.

## VIII

**DEFENDANT WAS DENIED DUE PROCESS BY IMPROPER ARGUMENT TO THE JURY BY PLAINTIFF.**

Co-Defendant Nicholas McKinnon who was the key prosecution witness for Plaintiff was granted youthful offender treatment on May 17, 2002 for his active involvement in the Murphy robbery. Nicholas McKinnon's youthful offender sentencing orders were admitted at trial. C203-204; R320. Plaintiff called McKinnon and McKinnon's attorney as witnesses in its case against Defendant. R2-3. The patently lenient sentence McKinnon received as a youthful offender was referred to throughout the trial. C203-204; R149-150, 303-304, 310-311, 317-320. Plaintiff vehemently denied at trial that it had made a deal with McKinnon in exchange for his testimony against Defendant. R89-92, 300-301, 303. Plaintiff's case turned on the credibility of Co-Defendant Nicholas McKinnon and it knew it. To bolster that credibility Plaintiff was allowed to improperly argue to the jury during closing argument that Nicholas McKinnon's sentence as a youthful offender was "confidential" and "sealed" under law which served to distract the jury from the established documentary and testimonial evidence and deny Defendant due process. R330. In a substantially similar though not identical situation the United States Supreme Court in Davis v. Alaska,

415 U.S. 308 (1974) reversed a state conviction and held that a defendant was denied his Sixth and Fourteenth Amendment rights to confront witnesses when the prosecution used a juvenile as a key prosecution witness while simultaneously asserting state confidentiality laws concerning juveniles.  In the instant case Plaintiff's improper remarks during closing argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process."    Darden v. Wainwright, 477 U.S. 168 (1986).

## IX

**THE COURT ERRED TO REVERSAL IN GIVING PLAINTIFF'S ADDITIONAL JURY INSTUCTION.**

Alabama Rule of Criminal Procedure 21.2 provides:

"Additional instructions shall be submitted in writing, except that with respect to any additional instruction taken from Alabama Pattern Jury Instructions-Criminal, it shall be sufficient to identify the instruction on the record by reference to the number and title of the pattern jury instruction."

Defendant's requested jury instruction No. 1 is the pattern instruction as found in Pattern Jury Instructions-Criminal (Third Edition, 1994) for Ala. Code 1975, Sec. 13A-8-41(a)(1), Robbery in the First Degree (Armed), as charged in the indictments. C73, 103. Said pattern jury instruction for Armed Robbery does not include Ala. Code 1975, Sec. 13A-8-41(b).

Plaintiff did not offer any written jury instructions at the jury instruction hearing held October 16, 2001 and Plaintiff did not object to Defendant's written jury instruction No. 1. R325, 327. After the jury was instructed on October 17, 2001 Plaintiff orally requested an additional instruction related to Ala. Code 1975, Sec. 13A-8-41(b) misrepresenting to the Court that same is included in the pattern jury instructions for Armed Robbery when it clearly is not included in Pattern Jury Instructions-Criminal (Third

Edition, 1994). R354-356. Defendant objected and advised the Court that Plaintiff's requested oral additional instruction was not in Defendant's requested jury instruction No.1 that is the pattern instruction for Armed Robbery.

In Smith v. State, 795 So.2d 788, 827 (Ala.Crim.App. 2000) this Honorable Court stated:

> "In reviewing a jury instruction to which an
> appellant has objected, we do not review
> the jury instruction in isolation. Instead,
> we consider the jury charge as a whole, and
> we consider the instructions like a reasonable
> juror may have interpreted them."

The additional instruction for Ala. Code 1975, Sec. 13A-8-41(b) was the last substantive instruction given to the jury. R358. The evidence as to whether the robbers were armed with a deadly weapon or dangerous instrument was disputed. R211, 245, 248, 254-255, 267, 279. A reasonable juror may have interpreted said last substantive instruction, which clearly should not have been given, as being more important, more emphasized, more disposing of disputed evidence concerning deadly weapon or dangerous instrument and more memorable than earlier unemphasized instructions that favored Defendant. Accordingly, the substantial rights of Defendant were injured by the erroneously given instruction and the judgments of conviction should be reversed.

<u>X</u>

**THE COURT ABUSED ITS DISCRETION IN SENTENCING DEFENDANT TO 198 YEARS.**

The sentence imposed in each case should call for the least restrictive sanction that is consistent with the protection of the public and the gravity of the crime.   In determining the sentence, the court should evaluate the crime and its consequences, as well as the background and record of the defendant and give serious consideration to the goal of sentencing equality and the need to avoid unwarranted disparities. Judges should be sensitive to the impact their sentences have on all components of the criminal justice system and should consider alternatives to long-term institutional confinement or incarceration in cases involving offenders whom the court deems to pose no serious danger to society.

Rule 26.8, Ala.R.Crim.P.

The victims, by their own admission, suffered no physical harm.  R260.   January 23, R2-3.   The four robbers (who victim concedes did not include Defendant; January 23, 2003 R8) who entered the victims' home complied with multiple requests from the victims and carefully handled them by loosely restraining them with tape during the robbery.  R187-188, 260.  The facts do not support the victims' claim of being "terrorized" (all Americans are painfully aware of what being "terrorized" truly means since the attack on the World Trade Center on September 11, 2001) because after the robbers left the victims unharmed Mr. Murphy, a 63 year old in reported bad health, went to his barn alone looking for the four young robbers, something that

someone who had been truly "terrorized" indisputably would not have done.  R248; January 23, 2003 R13.

If you accept as true that Plaintiff made no deal with Nicholas McKinnon in exchange for his testimony against Defendant, then Co-Defendant Nicholas McKinnon received a concurrent split sentence and probation for actually entering the victims' home and committing the robbery based strictly on the facts of the case in mitigation of his sentence (i.e., no physical harm, etc.).  January 23, 2003 R3, 5.  Defendant's past criminal record consist of one prior nonviolent misdemeanor conviction.  C141, January 23, 2003 R3. Defendant's September 26, 2002 convictions in Barbour County during this case were procured through accomplice testimony (by a three time convicted felon in Henry County investigated as a suspect in this case but not charged) in exchange for concurrent two year split sentences and probation when he should have received mandatory minimum sentencing under the law of life or life without parole. January 23, 2003 R3-4, 10-11.  The "fugitive warrant" for a robbery in Early County, Georgia referred to in the Pre-Sentence Report was initiated by Investigator Hornsby of the Henry County Sheriff's Department with no credible evidence establishing probable cause.  January 23, 2003 R4.  Same was dismissed in May 2003

63

for failure to prosecute (after its intended purpose of painting Defendant in a bad light was achieved.)

Defendant is married with two small children ages seven and four. January 23, 2003 R5. Alabama Probation and Parole Officer William Weber performed an investigation and compiled a Pre-Sentence Report that was provided to the Court prior to Defendant's sentencing wherein, based on established State of Alabama sentencing criteria, he recommended "a medium to long period of incarceration" and did not actively oppose probation for Defendant. C143, January 23, 2003 R7. Defendant specifically requested concurrent sentencing since this incident happened at the same time and place. January 23, 2003 R7.

The Court failed to duly consider any of the before-mentioned legitimate sentencing factors or Ala.R.Crim.P 26.8 and sentenced Defendant to 198 years prior to further duly considering any personal statement by the Defendant pursuant to Ala.R.Crim.P 26.9(b)(1) and thereby grossly abused its discretion requiring reversal.

## XI

**THE 198 YEAR SENTENCE AS IMPOSED IS UNCONSTITUTIONAL.**

The Eighth Amendment to the United States Constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Based on current generally accepted life expectancy statistics, Defendant's 198 year sentence constitutes the equivalent of four life sentences as punishment for two convictions where the victims, by their own admission, suffered absolutely no physical harm. R260, January 23, 2003 R2-3. Said sentence as imposed, given the underlying facts of these cases, is grossly disproportionate to the offense committed and constitutes cruel and unusual punishment prohibited by the Eighth Amendment.

"Proportionality of sentence is certainly a vital constitutional guarantee." Anderson v. State, 455 So.2d 957, 958 (Ala.Crim.App. 1984) (citing Solem v. Helm, 463 U.S. 277 (1983). The Alabama Supreme Court has stated:

> "However, the appellate courts may review a sentence, which, although within the prescribed limitation, is so disproportionate to the offense charged that it constitutes a violation of a defendant's Eighth Amendment rights. The United States Supreme Court in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), recognized that reviewing courts should grant substantial deference to the authority of the legislatures in determining the kinds and limits of punishment for crimes, as well as to the discretion that trial courts possess in sentencing

65

convicted criminals.  <u>Yet, the sentence should be proportionate to the crime</u>." (Emphasis added.)

<u>Ex parte Maddox</u>, 502 So.2d 786, 789-90 (Ala. 1986).

This Honorable Court in <u>Wilson v. State</u>, [Ms. CR-97-1494, August 31, 2001] __ So.2d __ (Ala.Crim.App. 2001) reversed a sentence as imposed and held that current Eighth Amendment jurisprudence requires a "narrow proportionality review" of disproportionate sentences in accordance with <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991) by applying the following <u>Solem</u> factors:

> "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."

"463 U.S. at 292".

Regarding factor one, the victims, by their own admission suffered absolutely no physical harm.  R260, January 23, 2003 R2-3.  The robbers complied with multiple requests from the victims and carefully handled them by loosely restraining them with tape during the robbery.  R187-188, 260.  The facts do not support the victims' claim of being "terrorized".  A sixty-three year old robbery victim in poor health who truly has been "terrorized" does not go looking for his four young robbers as did Mr. Murphy.  R248.  The 198 year sentence as imposed is the equivalent of four life sentences for Defendant

for two convictions and is in fact longer than Alabama has been a self-governing state in the United States of America.

Regarding factor two, Co-Defendant Nicholas McKinnon received, if you accept as true Plaintiff's assertions that no deal was made with him for his testimony against Defendant, youthful offender treatment and a concurrent split sentence and probation based on the facts of this case. C203-204; R320. The great disparity in sentences between Co-Defendant Nicholas McKinnon and Defendant cannot be legitimately justified by Nicholas McKinnon's age alone. Moreover, Defendants in robbery cases in this jurisdiction where there is no physical harm to the victim have not received 198 year sentences.

Similarly, regarding factor three, defendants in robbery cases in other jurisdictions where there is no physical harm to the victim have not received 198 year sentences.

Accordingly, Defendant respectfully requests that his sentences, as imposed, be reversed as unconstitutional cruel and unusual punishment.

<u>XII</u>

**THE COURT ERRED TO REVERSAL IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR MOTION FOR A NEW TRIAL.**

Plaintiff failed to make prima facie cases for two counts of Robbery in the First Degree. The testimony of accomplice Nicholas McKinnon was not sufficiently corroborated and should have been excluded by the Court pursuant to <u>Ala. Code</u> 1975, Sec. 12-21-222. There was insufficient evidence presented at trial that an actual deadly weapon or dangerous instrument was used in the commission of the robbery as required by <u>Ala. Code</u> 1975, Sec. 13A-8-41(a)(1). During the robbery, the victims individually and collectively questioned whether the two handguns brandished were real or toys. C201; R211, 245, 248, 254-255, 267, 269, 279. There was insufficient evidence presented at trial that Defendant procured, induced or caused the robbers to commit the offense or aided or abetted the robbers in committing two counts of robbery in the first degree absent the uncorroborated testimony of accomplice Nicholas McKinnon. There was absolutely no physical evidence offered or admitted at trial linking Defendant to the commission of the robbery. Accordingly, the Court erred to reversal in denying Defendant's Motions For Judgment of Acquittal and/or Motion For New Trial.

68

## CONCLUSION

For the foregoing reasons, individually and cumulatively, Defendant respectfully seeks from this Honorable Court reversal of the judgments of conviction and sentence by the Circuit Court of Henry County in State of Alabama v. Johnny C. Grace, Jr., Case Nos. CC-2002-205 and 206.

Respectfully submitted this 25th day of June, 2003

GREGORY A. DaGIAN (DAG 003)
Attorney for Appellant
406 Dothan Rd., Ste. B
Abbeville, AL  36310
Telephone: (334) 585-1394
Facsimile: (334) 585-1395

## CERTIFICATE OF SERVICE

I certify that I have served an exact copy of the foregoing Brief of Appellant on the Office of the Attorney General, 11 S. Union St., Third Floor, Montgomery, Alabama, 36130, by placing same in the U.S. Mail, properly addressed, with adequate postage affixed thereto this 25th day of June, 2003.

GREGORY A. DaGIAN (DAG 003)
Attorney for Appellant
406 Dothan Rd., Ste. B
Abbeville, AL  36310
Telephone: (334) 585-1394
Facsimile: (334) 585-1395

70

## STATEMENT CONCERNING FONT AND TYPE STYLE

I certify that access to equipment capable of producing print in Courier New 13 font and type is not reasonably available and the font and type style utilized constitutes the closest approximation to Courier New 13 available.

GREGORY A. DaGIAN
Attorney for Appellant

## LIST OF ADVERSE RULINGS

**TRANSCRIPT PAGE**

Batson challenge denied....................................................29

Double Jeopardy Motion denied........................................38

Spousal testimonial privilege denied...........................86-87

Sua sponte dismissal of jurors.......................................226

Objections limiting cross examination sustained.........283, 289

Motion To Exclude Accomplice Testimony denied............322

Motion For Judgment of Acquittal denied......................324

Defendant's requested jury instructions denied..........326

Improper argument to jury objection denied.................330

Objection to exclude requested additional
    instruction denied...................................................356

Defendant sentenced to 198 years...January 23, 2003 13-14

All Post-Trial Motions denied................March 7, 2003 10

## APPENDIX

U.S. Const. amend. V............................................................A1

U.S. Const. amend VI........................................................A1-2

U.S. Const. amend VIII........................................................A2

Pattern Jury Instructions-Criminal
    (Third Edition, 1994);
     Robbery In The First Degree (Armed)........................A3-5

Rule 21.2, Ala.R.Crim.P......................................................A6

Rule 26.8, Ala.R.Crim.P....................................................A7-8

Rule 26.9, Ala.R.Crim.P......................................................A9

Rule 401, Ala.R.Evid. .......................................................A10

Rule 404(b), Ala.R.Evid. ....................................................A11

Rule 611(b), Ala.R.Evid. ....................................................A12

Advisory Committee's Notes to
    Rule 611(b), Ala.R.Evid. ...............................................A13

Ala. Code 1975, Sec. 12-21-137..............................................A14

Ala. Rule 1975, Sec. 12-21-222..............................................A15

Ala. Rule 1975, Sec. 12-21-227..............................................A16

Ala. Rule 1975, Sec. 13A-8-41...............................................A17

Ala. Rule 1975, Sec. 13A-8-43...............................................A18

nd. I

n'r,

Amend. II          AMENDMENTS TO THE CONSTITUTION          Amend. VI

Carolina, January 19, 1790; New Hampshire, January 25, 1790; Delaware, January 28, 1790; Pennsylvania, March 10, 1790; New York, March 27, 1790; Rhode Island, June 15, 1790; Vermont, November 3, 1791, and Virginia, December 15, 1791. The following of the thirteen original states did not ratify until the year 1839: Massachusetts, March 2; Georgia, March 18; Connecticut, April 19.

### [AMENDMENT II]

#### [*Right; keeping and bearing arms*]

A well-regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed.

### [AMENDMENT III]

#### [*Soldiers; quartering*]

No soldier shall, in time of peace be quartered in any house, without the consent of the owner, nor in time of war, but in a manner to be prescribed by law.

### [AMENDMENT IV]

#### [*Right; security against unreasonable searches and seizures*]

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

### [AMENDMENT V]

#### [*Rights; persons in criminal proceedings*]

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

### [AMENDMENT VI]

#### [*Rights; speedy and public trial, nature of accusation, assistance of counsel, etc.*]

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascer-

Case 1:05-cv-00634-WKW-CSC    Document 9-3    Filed 08/05/2005    Page 86 of 104

Amend. VII          AMENDMENTS TO THE CONSTITUTION          Amend. XII          Amend. XI

tained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

## [AMENDMENT VII]

### [*Jury trial; civil cases*]

In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law.

## [AMENDMENT VIII]

### [*Excessive bail or fines — Cruel and unusual punishments*]

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

## [AMENDMENT IX]

### [*Rights of Constitution; no denial of other rights*]

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

## [AMENDMENT X]

### [*Powers; reservation to states or people*]

The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people.

## [AMENDMENT XI]

### [*Judicial power; restriction*]

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

**Note.** — The eleventh amendment of the Constitution of the United States was proposed to the legislatures of the several states by the third congress, on the 4th of March, 1794, and was declared in a message from the president to congress, dated the 8th of January, 1798, to have been ratified by the legislatures of three fourths of the states.

## [AMENDMENT XII]

### [*President and Vice-President; election*]

The electors shall meet in their respective states, and vote by ballot for president and vice-president, one of whom, at least, shall not be an inhabitant

18

A 2

STATE OF ALABAMA



CRIMINAL CODE

# PATTERN JURY INSTRUCTIONS -- CRIMINAL

## (Third Edition, 1994)

Edited By:

Judge Joseph A. Colquitt
Beasley Professor of Law
University of Alabama School of Law

Copyright, 1980, 1989, 1994, by the
Alabama Bar Institute
for Continuing Legal Education

Developed by: Alabama Law Institute

A3

Ala. Code § 13A-8-41(a)(1)

## <u>ROBBERY IN THE FIRST DEGREE</u>
### (Armed)

The defendant is charged with robbery in the first degree.

A person commits the crime of robbery in the first degree if, in the course of committing a theft, he uses or threatens the imminent use of force against the person of the owner of the property or any person present with intent to overcome that person's physical resistance or physical power of resistance, and in so doing he is armed with a deadly weapon (<u>or dangerous instrument</u>).

(1) That the defendant (<u>name of defendant</u>) committed or attempted to commit theft of (<u>describe property taken</u>);

(2) That in the course of committing or attempting to commit the theft, (<u>or in immediate flight after the attempt or commission</u>), the defendant either used force against the person of (<u>name of owner of property, or, if applicable, other person present</u>), with intent to overcome his physical resistance or physical power to resist, or threatened imminent use of force against the person of (<u>name of owner of property, or, if applicable, other person present</u>), with intent to compel acquiescence to the taking of (<u>or escaping with</u>) the property; and

(3) That the defendant was armed with a deadly weapon (<u>or dangerous instrument</u>).

A person commits the crime of theft of property if he knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property.

A deadly weapon is a firearm or anything manifestly designed, made or adapted for the purposes of inflicting death or serious physical injury.

A person acts intentionally with respect to a result or to conduct when

Rev.Feb.1, 1994
8-87          (CJI #2)

A-4

his purpose is to cause that result or to engage in that conduct.

A person acts knowingly with respect to conduct or to a circumstance when he is aware that his conduct is of that nature or that the circumstance exists.

[Use if Appropriate] A deadly weapon includes, but is not limited to [Select as Appropriate]: a pistol, rifle or shotgun; or a switch-blade knife, gravity knife, stiletto, sword or dagger; or any billy, black-jack, bludgeon or metal knuckles.

[Use if Appropriate] A dangerous instrument is any instrument, article or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is highly capable of causing death or serious physical injury.

[Use if Appropriate] A dangerous instrument can be a vehicle.

If you find from the evidence that the State has proved beyond a reasonable doubt each of the above elements of the offense of robbery in the first degree, as charged, then you shall find the defendant guilty of robbery in the first degree.

If you find that the State has failed to prove beyond a reasonable doubt any one or more of the elements of the offense of robbery in the first degree, then you cannot find the defendant guilty of robbery in the first degree.

(If lesser-included offenses are included, the Court should instruct on those offenses at this point.)

## Use Notes

Theft by deception is not included in this charge. Deception simply does not correspond with a taking by force.

It is no defense to a charge of robbery in any degree that the taking was under a claim of right and thereby could not be a theft of the property.

8-88                    Rev. Feb. 1, 1994
                        (CJI #2)

A5

rte Hall, — So. 2d —, 2002 Ala. ..a. Apr. 19, 2002).

te v. Grantland, 709 So. 2d 1310 . 1997); Reed v. State, 717 So. 2d App. 1997).

ring the trial as the court event, shall serve on the ruct the jury on the law as nsel of its proposed action jury, but the court shall . However, in the sentenc- , in its discretion, instruct l court elects to do so, it fter the arguments are rest of justice so requires. sed," as the case may be, e record. Each request ference as to which party nst the defendant nor the provided, however, that charges to the jury in a the court reporter as it is n instruction, although reversal on appeal if it and fairly given to the jury e request of the parties. or her opinion on the nstructions shall not be led 4-29-97, eff. 8-1-97;

If the trial court elects to do so, required to instruct the jury uments are completed, but it elieves the interest of justice ome effective March 1, 2001.

s.



**Oral instructions.**

The principle that refusal to give a written instruction is not cause for reversal under circumstances enumerated in this rule applies even where the actual language of the requested charge is not employed in the oral charge, and even where the requested charge may be preferred as a statement of the law over a given charge. Freeman v. State, 722 So. 2d 806 (Ala. Crim. App. 1998).

The trial court did not abuse its discretion in denying the defendant's request to submit his written charges concerning complicity to the jury where the trial court read several instructions requested by the defense to the jury and reinstructed the jury when requested to do so. Apicella v. State, 809 So. 2d 841, 2000 Ala. Crim. App. LEXIS 36 (Ala. Crim. App. 2000).

**Time for instructions.**

The trial court violated the rule by charging the jury on sentencing before counsel's arguments. James v. State, 723 So. 2d 776 (Ala. Crim. App. 1998), cert. denied, 723 So. 2d 776 (Ala. 1998).

If a trial court believes that preliminary instructions should be given to assist the jury in understanding the legal process, the rule requires the judge to also give comprehensive jury instructions after closing arguments, even at the cost of extensive repetition. James v. State, 723 So. 2d 776 (Ala. Crim. App. 1998), cert. denied, 723 So. 2d 776 (Ala. 1998).

**Illustrative cases.**

Where defendant argued that the trial judge failed to properly instruct the jury on reasonable doubt as that standard relates to whether the killing was unlawful or unjustifiable, but the trial court did properly charge the jury on reasonable doubt, self-defense, and the use of deadly force, the rule of law in defendant's requested charge was redundant. Weaver v. State, 682 So. 2d 488 (Ala. Crim. App. 1996).

Where the trial court stated the following in its instructions: "I will tell you now that reasonable doubt can arise from the evidence or from a lack of evidence, and you are to consider that in reaching your verdict," this adequately conveyed the principle of reasonable doubt to the jury in this case. Felder v. State, 686 So. 2d 1305 (Ala. Crim. App. 1996), cert. denied, 520 U.S. 1305, 117 S. Ct. 2420, 138 L. Ed. 2d 183 (1997).

The trial court did not abuse its discretion when it gave the jury a written copy of the definition of first-degree robbery. Wright v. State, 740 So. 2d 1147 (Ala. Crim. App. 1999).

**Cited** in Gaddy v. State, 698 So. 2d 1100 (Ala. Crim. App. 1995); James v. State, 723 So. 2d 786 (Ala. 1998).

## Rule 21.2. Additional instructions.

Additional instructions shall be submitted in writing, except that with respect to any additional instruction taken from Alabama Pattern Jury Instructions-Criminal, it shall be sufficient to identify the instruction on the record by reference to the number and title of the pattern jury instruction. (Amended 4-29-97, eff. 8-1-97.)

**Editor's note.** — Former ARCrP, rule 21.2 was renumbered as ARCrP, rule 21.3.

CASE NOTES

Instructions.
Procedure — Appellate.

**Instructions.**

If objections regarding instructions or reinstructions to a jury are not made before the jury retires to consider the verdict, they will not be preserved for review. Brown v. State, 701 So. 2d 314 (Ala. Crim. App. 1997).

**Procedure — Appellate.**

Where counsel for sexual abuse defendant failed to object to any omission by the trial court in its oral charge to the jury, the court's failure to instruct jury of the alleged incident of abuse elected by the prosecution was not preserved for review. R.L.G. v. State, 712 So. 2d 348 (Ala. Crim. App. 1997), aff'd, 712 So. 2d 372 (Ala. 1998).

*Rule 26.7. Presence of the defendant.*

The defendant has the right to be present at the sentence hearing and at sentencing. Failure of the defendant to appear at the hearing or for sentencing will not delay the pronouncement and entry of judgment and sentence if the defendant's right to be present has been waived, either in writing or by the defendant's nonappearance after notice of the time, date, and place of the sentence hearing or sentencing.

**Editor's note.** — Former similar law: ARCrP.
Temporary Rule 7.

#### Committee Comments

Rule 26.7 requires the presence of the defendant at the sentence hearing and at sentencing, regardless of the nature of the sentence to be imposed. Defendant is entitled under Rule 9.1(a) to be present at the sentence hearing and at sentencing. This rule was included to reiterate the provisions of Rule 9.1(a) and also because of the essential warnings and information regarding appeal and required to be given after sentence is pronounced. See Rule 26.9.

Art. 1, § 6, Alabama Constitution of 1901, provides that "in all criminal prosecutions, the accused has a right to be heard by himself and counsel, or either ... and ... to be confronted by the witnesses against him ...." Alabama courts have not interpreted this section to guarantee a defendant the constitutional right to be present at the sentencing.

This rule, when read together with Rule 9.1(b), provides that, if defendant has been notified of the date of the sentence hearing or sentencing, then the defendant is not permitted to extend the time of taking an appeal by non-appearance at the sentence hearing and the subsequent sentencing. This will be true regardless of whether the defendant is represented by counsel at the sentence hearing or sentencing. Thus, the time of filing a notice of appeal is to run from entry of judgment and sentence, whether or not the defendant is present at sentencing. A defendant, when absent at sentencing through no fault of his own, may be entitled to a delayed appeal under Rule 32.

#### CASE NOTES

**Harmless error.**
An error in resentencing by written order is rendered harmless by a later resentencing hearing held in appellant's presence. Cline v. State, 571 So. 2d 368 (Ala. Crim. App. 1990).

The circuit court violated this rule by proceeding with the sentencing hearing in the appellant's absence. That violation was harmless, however, because the appellant received the same sentence he bargained for and of which he had been informed at the guilty plea proceeding. Lett v. State, 663 So. 2d 1022 (Ala. Crim. App. 1994).

*Rule 26.8. Principles of sentencing.*

The sentence imposed in each case should call for the least restrictive sanction that is consistent with the protection of the public and the gravity of the crime. In determining the sentence, the court should evaluate the crime and its consequences, as well as the background and record of the defendant and give serious consideration to the goal of sentencing equality and the need to avoid unwarranted disparities.

Judges should be sensitive to the impact their sentences have on all components of the criminal justice system and should consider alternatives to long-term institutional confinement or incarceration in cases involving offenders whom the court deems to pose no serious danger to society.

**Editor's note.** — Former similar law: ARCrP, Temporary Rule 6(c).

### Committee Comments

Growing attention has been given to sentencing practices and procedures at both the state and federal levels. In addition to perceived sentencing disparity in our criminal justice system, skyrocketing costs associated with institutional confinement have helped to focus attention on the judiciary's role in sentencing.

Prison overcrowding has significantly frustrated the criminal justice system in Alabama as well as most other states. Sentencing judges generally can only speculate as to what their sentences mean. This uncertainty operates to undermine the credibility of the sentencing process.

For appropriate defendants, judges are encouraged to fashion sentences utilizing alternatives other than basic probation and long-term institutional confinement. Although the alternatives presently available will vary to some degree, depending on the sentencing court's location, some alternatives include the following: a split sentence pursuant to Ala. Code 1975, § 15-18-8 (through judicial innovation § 15-18-8 has also been used to impose what is referred to as a "reverse" split sentence, wherein the defendant is sentenced to serve the probationary portion of the sentence first, followed by a period of incarceration; since the judge retains jurisdiction, the period of incarceration can be suspended to reward the defendant for successfully completing probation); fines, court costs, and restitution; drug and alcohol rehabilitation programs; boot camp pursuant to § 15-18-8; community service; work release; responsibility to community restitution centers; house arrest; and electronic monitoring.

Effective utilization of well planned alternatives to incarceration will:

1) Preserve scarce prison bed-space for habitual offenders and others from whom society needs protection.

2) Save the state the cost of incarceration, estimated to be approximately $14,000 per year, and the cost of new prison construction.

3) Frequently permit the offender to remain employed and thereby enable him to earn funds to pay fines, restitution, and court costs, as well as to support his family.

4) Frequently permit the offender who is a drug or alcohol abuser to obtain treatment for such abuse and thereby remove the reason for his criminal behavior.

5) More likely result in the defendant's rehabilitation than incarceration. Prisons serve as training camps for crime, especially for young offenders.

6) Tend to diminish disparity in sentencing. Judges who have alternatives available to them are likely to move to the middle ground provided by the alternatives, whereas judges who must choose between the extremes of incarceration or probation, when they choose differently, create the perception of disparity.

A 8

...t failed to "pronounce" sentence , where sentence was imposed by ~n a case action summary sheet, ranscript did not indicate the v. State, 733 So. 2d 937 (Ala. 998).

·· v. State, 688 So. 2d 275 (Ala. i); McDuffie v. State, 712 So. 2d i . App. 1997).

? sentence.

ury's verdict in each case, I pro- ly of unlawful distribution of a lance, to wit, cocaine in each . State, 790 So. 2d 1014, 2000 Ala. EXIS 167 (Ala. Crim. App. 2000).

v. State, 814 So. 2d 1001, 2001 L.. LEXIS 78 (Ala. Crim. App.

v. State, 711 So. 2d 1031 (Ala. 96); Ex parte Burgess, — So. 2d LEXIS 35 (Ala. 2000); Ex parte 2d 617, 2000 Ala. LEXIS 317 parte Jackson, — So. 2d —, ... 58 (Ala. Feb. 15, 2002); Ex , — So. 2d —, 2002 Ala. LEXIS '0, 2002).

uished his right to insist that the l se convictions in any subse- ch he is a defendant. Kaska v. ... 822 (Ala. Crim. App. 1996). ment of defendant's robbery and r~es under the Habitual Felony OA), was improper where the ion of prior felonies to invoke as invalid because no one ex- that youthful-offender convic- c isidered prior convictions for

purposes of sentence enhancement and that a conviction based on a nolo contendere plea cannot be used for purposes of enhancing an HFOA sentence. The State offered no evidence to support its contention he would have re- ceived the same sentences if the trial court had not considered his two prior felonies. Ex parte Dixon, 804 So. 2d 1075, 2000 Ala. LEXIS 379 (Ala. 2000).

—Notice.

The notice requirements of this rule were satisfied, where the State served the defendant with a document entitled "Habitual Felony Of- fender Notice," which informed the defendant that it intended to invoke the Habitual Felony Offender Act and listed three prior felonies it intended to use for enhancement, including the jurisdiction, the case number, and the crime. Morgan v. State, 733 So. 2d 940 (Ala. Crim. App. 1999).

Requirements.

Where the record showed that there was no

sentencing hearing, but that the court pro- ceeded directly, after taking the defendant's pleas, to sentencing, and the defendant was not accorded the opportunity to speak in his own behalf, nor was there any indication in the record that this issue was directly waived, then the sentence was erroneous. Newton v. State, 673 So. 2d 799 (Ala. Crim. App. 1995).

Although the rule does not set out a specific time that will be considered reasonable in sub- section (b)(3)(ii), where defendant was sen- tenced within 15 minutes of receiving notice of the State's intent to proceed under the Habitual Felony Offender Act, the reasonableness re- quirement of that subsection was not satisfied. Ex parte Crews, 797 So. 2d 1119, 2000 Ala. LEXIS 18 (Ala. 2000).

Cited in Tyler v. State, 683 So. 2d 1062 (Ala. Crim. App. 1995); Brock v. State, 697 So. 2d 1197 (Ala. Crim. App. 1996); Burgin v. State, — So. 2d —, 2001 Ala. Crim. App. LEXIS 183 (Ala. Crim. App. Aug. 31, 2001).

## Rule 26.7. Presence of the defendant.

### CASE NOTES

**Pronouncement of sentence.**

Failure to pronounce defendant's sentence in open court violated the defendant's constitu- tional right to be present at pronouncement of sentence. Hill v. State, 733 So. 2d 937 (Ala. Crim. App. 1998).

The trial court failed to "pronounce" sentence in open court, where sentence was imposed by written entry on a case action summary sheet, but the trial transcript did not indicate the sentence. Hill v. State, 733 So. 2d 937 (Ala. Crim. App. 1998).

## Rule 26.8. Principles of sentencing.

### CASE NOTES

**Cited** in James v. State, 729 So. 2d 364 (Ala. Crim. App. 1998).

## Rule 26.9. Pronouncement of judgment and sentence; minute entries.

(a) PRONOUNCEMENT OF JUDGMENT. Judgment shall be pronounced in open court. A judgment of conviction shall set forth the plea, the verdict, the findings, if any, and the adjudication. If the defendant is found not guilty or for any other reason is entitled to be discharged, judgment shall be entered accordingly.

(b) PRONOUNCEMENT OF SENTENCE. In pronouncing sentence, the court shall:

(1) Afford the defendant an opportunity to make a statement in his or her own behalf before imposing sentence.

(2) State that a credit will be allowed on the sentence, as provided by law, for time during which the defendant has been incarcerated on the present charge.

(3) Explain to the defendant the terms of the sentence.

**Section (d). Inconsistent presumptions.** There are occasions when two presumptions at work in the same case clash. When such a conflict arises, the presumption prevails which is based upon the weightier policy considerations. Cross v. Rudder, 380 So. 2d 766 (Ala. 1979). Should the policy weight of such presumptions be equal, neither applies. Compare Gulf States Paper Corp. v. Hawkins, 444 So. 2d 381 (Ala. 1983).

## Rule 302.

## Applicability of federal law in civil actions and proceedings.

In civil actions and proceedings, the effect of a presumption respecting a fact which is an element of a claim or defense as to which federal law supplies the rule of decision is determined in accordance with federal law.

### Advisory Committee's Notes

This rule differs from Fed. R. Evid. 302 only insofar as the term "federal law" has been substituted for the term "State law." That change makes this rule identical to that found in the Uniform Rules of Evidence. Indeed, the commentary to Unif. R. Evid. 302 explains this substitution and its resulting effect as follows:

"Parallel jurisdiction in state and federal courts exists in many instances. The modification of Rule 302 is made in recognition of this situation. The rule prescribes that when a federally created right is litigated in a state court, any prescribed federal presumption shall be applied."

The term "federal law" may include both statutes and case law. Rule 302, however, is not intended to affect preexisting law governing what federal case law is binding upon Alabama courts.

## ARTICLE IV. RELEVANCY AND ITS LIMITS

## Rule 401.

## Definition of "relevant evidence".

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

### Advisory Committee's Notes

This rule is identical to the corresponding Federal Rule of Evidence and to the relevancy rule adopted by the overwhelming majority of states that have adopted modern evidence rules. The test of logical relevancy set forth in Rule 401 is a liberal one. Evidence is to be admitted if it possesses "any tendency," in logic or experience, to lead to the fact or inference for which it is offered. The standard of probability under the rule is "more probable or less probable than it would be without the evidence."

Rule 401 leaves unchanged the preexisting relevancy test that has applied historically under the common law of Alabama. See, e.g., Aetna Life Ins. Co. v. Lavoie, 470 So. 2d 1060, 1078 (Ala. 1984) ("whether the offered evidence bears any logical relationship to the ultimate inference for which it is offered") (emphasis added), vacated, 475 U.S. 813 (1986); Gafford v. State, 122 Ala. 54, 25 So. 10, 12 (1899) (characterizing the issue as one of whether "the testimony offered to be introduced by defendant [would] have any tendency, even though slight, to shed light on the main inquiry") (emphasis added); Mattison v. State, 55 Ala. 224, 232

Case 1:06-cv-00535-WHA-CSC    Document 152    Filed 05/30/2008    Page 95 of 104

(1) CHARACTER OF ACCUSED. Evidence of character offered by an accused, or by the prosecution to rebut the same;

(2) CHARACTER OF VICTIM.

(A) In criminal cases. (i) Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or (ii) evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(B) In civil cases. Evidence of character for violence of the victim of assaultive conduct offered on the issue of self-defense by a party accused of assaultive conduct, or evidence of character for peacefulness to rebut the same;

(3) CHARACTER OF WITNESS. Evidence of the character of a witness, as provided in Rules 607, 608, 609, and 616.

(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

### Advisory Committee's Notes

This rule undertakes to answer the basic question of when evidence of character may be admissible. Once character evidence is determined to be admissible under (a), one generally must consult Ala. R. Evid. 405 for the appropriate medium through which the character may be proven — i.e., reputation, opinion, or conduct. It is intended that Rule 404(b) will be applicable in civil as well as criminal cases.

**Section (a). Character evidence generally.** Rule 404, like its federal counterpart, begins with what may be termed a "general exclusionary rule of character." As a general rule, whether in civil or criminal cases, character evidence is not admissible when offered to prove that a person is of a particularly good or bad character and that the person acted in conformity with that character on the occasion that is the basis of the litigation. This exclusionary rule has been long recognized in Alabama case law. See C. Gamble, Character Evidence: A Comprehensive Approach 3 (1987). In a criminal case, for example, the prosecution may not take the initiative to prove the accused's bad character as a basis for the jury to infer that the accused committed the now-charged crime. Ex parte Cofer, 440 So. 2d 1121 (Ala. 1983); Ex parte Killough, 438 So. 2d 333 (Ala. 1983); C. Gamble, McElroy's Alabama Evidence § 27.02(1) (4th ed. 1991). Likewise, a party to a civil action may not prove an opponent's bad character for negligence as a basis for the factfinder to infer that the opponent was negligent on the occasion that serves as the basis of the cause of action. Smith v. Civil Service Bd. of the City of Florence, 52 Ala. App. 44, 289 So. 2d 614 (1974); Babcock v. Smith, 285 Ala. 557, 234 So. 2d 573 (1970).

**Subsection (a)(1). Character of accused.** The criminally accused is provided special dispensation from the general exclusionary rule regarding character. Under the power historically granted by a principle that has come to be termed the "mercy rule," the criminal defense may prove the accused's good character. The accused's evidence of good character may serve as circumstantial proof that the accused did

861

Crim. App.), cert. denied, 390 So. 2d 1176 (Ala. 1980). See Conrad v. City & County of Denver, 656 P. 2d 662 (Colo. 1983).

## Rule 611.

## Mode and order of interrogation and presentation.

(a) *Control by court*. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

(b) *Scope of cross-examination*. The right to cross-examine a witness extends to any matter relevant to any issue and to matters affecting the credibility of the witness, except when a party calls an adverse party or an officer, a director, or a managing agent of a public or private corporation or a partnership or association that is an adverse party, or a witness identified with an adverse party. In those excepted situations, cross-examination by the adverse party may be only upon the subject matter of the witness's examination-in-chief or upon the witness's credibility.

(c) *Leading questions*. Leading questions should not be used on the direct examination of a witness, except when justice requires that they be allowed. Leading questions are permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

### Advisory Committee's Notes

**Section (a). Control by court.** As witnesses testify and evidence is presented, several procedural issues arise. These issues are to be resolved, as under pre-existing common law, through the judge's common sense and fairness. The judge has the primary responsibility for the effective working of the adversary system. Alford v. State Farm Fire & Casualty Co., 496 So. 2d 19 (Ala. 1986) (recognizing that the mode of examining witnesses and the order of introducing evidence are within the discretion of the trial court). See C. Gamble, McElroy's Alabama Evidence § 433.01 (4th ed. 1977); J. Colquitt, Alabama Law of Evidence § 6.11 (1990). Spelling out detailed rules governing those issues is neither desirable nor feasible. See Fed. R. Evid. 611(a) advisory committee's note.

At least three goals should guide the exercise of this judicial discretion. First, the mode and order of interrogating witnesses and presenting evidence should be such as will promote the ascertainment of truth.

Second, efforts should be made to avoid needless consumption of time. The judge's discretion in this regard is likewise recognized in Ala. R. Evid. 403. The trial judge, for example, has the discretion to limit the number of witnesses who may be called to testify to a particular matter. Allen v. State, 290 Ala. 339, 276 So. 2d 583 (1973). See C. Gamble, McElroy's Alabama Evidence § 10.06 (4th ed. 1991).

Third, witnesses should be protected from harassment or undue embarrassment. Compare Ala. Code 1975, § 12-21-141 (declaring a witness's right to be protected from improper questions and from a harsh or insulting demeanor). The importance of the testimony, the nature of the inquiry, its relevance to credibility, waste of time, and confusion are factors for the judge to consider in this regard. Efforts to protect the witness, of course, should by no means foreclose efforts to discredit the witness. See Alford v. United States, 282 U.S. 687, 694 (1931) (recognizing that the trial's

920

Rule 611

*. City & County*

...tion.

control over the
idence so as to (1)
tainment of the
witnesses from

vitness extends
e credibility of
officer, a director,
partnership or
ith an adverse
e adverse party
ation-in-chief or

on the direct
they be allowed.
party calls a
adverse party,

is presented,
as under pre-
s. The judge
ary system.
) (recognizing
g evidence are
's Alabama
ence § 6.11
esirable nor

n. First, the
uld be such

of time. The
3. The trial
who may be
So. 2d 583
1991).

rassment.
protected
importance
aste of time,
to protect
e witness.
the trial's

judge's duty to protect a witness arises only when the questions "go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate"). See Ala. Code 1975, § 12-21-137 (giving every party the right of cross-examination, "thorough and sifting," as to witnesses called against him or her).

    Section (b). Scope of cross-examination. Rule 611(b) continues Alabama's present position as a "wide open rule" jurisdiction regarding matters that may be inquired about on cross-examination. Questions on cross-examination are appropriate as long as they are relevant either to credibility or to any material issue in the case. Moody v. State, 267 Ala. 204, 100 So. 2d 733 (1957); Cooper v. State, 526 So. 2d 602 (Ala. Crim. App. 1986). See Ala. R. Civ. P. 43(b) (permitting cross-examination "upon all matters material to every issue of the action"); Ala. Code 1975, § 12-21-137 (declaring that parties have the right to a cross-examination that is "thorough and sifting"). See also C. Gamble, McElroy's Alabama Evidence § 438.01 (4th ed. 1991).

    The more limited "scope of direct examination" standard is adopted, as now provided under Ala. R. Civ. P. 43(b), when one calls an adverse party or a specified agent of an adverse party and that witness is then cross-examined by counsel for the adverse party. This limit on the scope of cross-examination is extended to apply to the adverse party's cross-examination of a witness identified with the adverse party. See Rule 611(c).

    Section (c). Leading questions. This section embraces the traditional Alabama position that leading questions are not permitted during direct examination. It is within the trial judge's discretion, however, to permit leading questions "when justice requires that they be allowed." This exception from the "no leading questions" rule retains Alabama's preexisting statutory provision allowing such questions "when, from the conduct of the witness or other reason, justice requires it." Ala. Code 1975, § 12-21-138 (superseded by adoption of Rule 611(c)). Rule 43(b), Ala. R. Civ. P., likewise permits leading questions on direct examination "when justice requires."

    Under Rule 611(c), leading questions should always be permitted on cross-examination.

## Rule 612.

### Writing used to refresh memory.

    (a) *General rule.* Any writing may be used to refresh the memory of a witness.

    (b) *Production of writing used to refresh memory.* If while testifying a witness uses a writing to refresh his or her memory, then an adverse party is entitled, upon request, to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions of it relating to the witness's testimony. If it is claimed, in opposition to such a request, that the writing contains matters not related to the subject matter of the testimony, the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal. If a writing is not delivered pursuant to order under this rule, the court shall make any order justice requires, except that in a criminal case if the prosecution does not comply, the order shall be one striking the testimony of the witness whose memory was refreshed or, if the court in its discretion determines that the

bargaining, he did not have to placed under oath before his guilty plea was accepted by the court. Young v. State, 598 So. 2d 1060 (Ala. Crim. App. 1992).

**Procedure — Trial.**

If the proper oath is administered, there is no

rule which forbids the swearing of a number of witnesses at one and the same time. Vaughn v. State, 236 Ala. 442, 183 So. 428 (1938).

**Cited in** Wright v. State, 24 Ala. App. 378, 135 So. 636 (1931); Rodgers v. State, 42 Ala. App. 660, 177 So. 2d 460 (1965).

## § 12-21-137. Cross-examination.

The right of cross-examination, thorough and sifting, belongs to every party as to the witnesses called against him. If several parties to the same case have distinct interests, each may exercise this right.

**Editor's notes.** Rule 43 of the Alabama Rules of Civil Procedure supersedes this section as to civil proceedings; however, this section may be applicable in criminal or probate proceedings.

**Cross references.** — Court rules, scope of examination and cross-examination, A.R.C.P. Rule 43(b).

### CASE NOTES

General comment.
Bias.
Burden of persuasion.
Character.
Construction with other law.
Conversations.
Credibility.
Discretion.
Evidence — Admissible.
Evidence — Inadmissible.
Harmless error.
Knowledge.
Limitation.
Materiality.
No error.
Prior criminal charge.
Procedure — Trial.
Reversible error.
Review.
When applicable.
Illustrative cases.
Cited.

**General comment.**

Right of cross-examination is a valuable right. Mitchell v. Birmingham News Co., 223 Ala. 568, 137 So. 422 (1931).

Every party has the right of cross-examination, thorough and sifting, of the witnesses who testify against him. Sowell v. State, 30 Ala. App. 18, 199 So. 900 (1941); Adams v. State, 30 Ala. App. 188, 2 So. 2d 468 (1941).

Former section 443, Title 7, Code of Alabama 1940 (see now § 12-21-137), guarantees the right of cross examination, thorough and sifting. This section must be reasonably construed. It does not deprive the trial judge of discretion reasonably exercised to limit the range of cross examination in respect to collateral and irrelevant matter. The undue and unnecessary consumption of time in the trial of causes, and the

avoidance of multiplied collateral and irrelevant issues is committed in the first instance to the wise discretion of the trial judge. Powell v. Powell, 285 Ala. 230, 231 So. 2d 103 (1970).

Party exercising right of cross-examination is afforded great latitude, especially when inquiry is directed to interest, bias, prejudice or partiality about matters to which witness is testifying. McMullian v. State, 52 Ala. App. 321, 292 So. 2d 127 (1973).

One purpose of cross-examination is to elicit conflicts of the witness' evidence and thereby show that the witness is confused in his evidentiary assessment of facts. Jackson v. State, 56 Ala. App. 597, 324 So. 2d 311 (1975).

Right to a "thorough and sifting" cross-examination is not limited to criminal cases. Lomax v. Speed, 507 So. 2d 455 (Ala. 1987).

The right to cross-examine a witness is a guaranteed right provided to an accused. This right inures to the benefit of the State in a criminal proceeding. Herring v. State, 563 So. 2d 33 (Ala. Crim. App. 1990).

The right of cross-examination is a fundamental right granted by Article 1, § 6 of the Constitution of Alabama, 1901, and is included in the right of an accused to confront the witnesses against him. Case v. Case, 627 So. 2d 980 (Ala. Civ. App. 1993).

**Bias.**

Proper way to show bias of a witness is to ask him directly the state of his feelings, and, if he denies bias, to resort to facts and circumstances tending to show it. Sullivan v. State, 25 Ala. App. 140, 142 So. 110 (1932).

Questions to illustrate witness' friendship, bias, or prejudice for or against the defendant are competent. Roan v. State, 225 Ala. 428, 143 So. 454 (1932).

Case 1:06-cr-00001-DSC   Document 9-2   Filed 05/19/2006   Page 99 of 104

## § 12-21-221. Reward contingent upon conviction.

There shall be no exclusion of a witness in a criminal case because, on conviction of the defendant, he may be entitled to a reward or to a restoration of property or to the whole or any part of the fine or penalty inflicted. The witness may be examined touching such circumstances, but the examination goes to his credibility and not to his competency as a witness.

### CASE NOTES

General comment.
Evidence — Admissible.
Illustrative cases.
Cited.

**General comment.**
It is always permissible to show the pecuniary interest of a witness in the result of a trial as affecting his credibility under this section, but where the interest is fixed by law, it is not necessary to make the proof and, therefore, in such cases, a refusal to permit proof would not be error. Weaver v. State, 17 Ala. App. 506, 86 So. 179 (1920).

**Evidence — Admissible.**
The bias of an adverse witness is always a proper inquiry, and on cross-examination any fact may be elicited which tends to show bias or partiality on the part of such witness and in this connection the pecuniary interest a witness may have in the outcome of the trial is admissible to be considered by the jury in weighing the testimony of the witness. Beverly v. State, 27 Ala. App. 374, 173 So. 397 (1937).

**Illustrative cases.**
In a prosecution for making or possessing a still for the manufacture of prohibited liquors, where a statute granted a reward for a conviction, it was error not to permit the defendant to cross-examine the sheriff as to whether or not he received a reward for a conviction of the defendant where it was not fixed by law that the sheriff would receive a reward. Weaver v. State, 17 Ala. App. 506, 86 So. 179 (1920).

**Cited** in Dixon v. State, 40 Ala. App. 465, 115 So. 2d 262 (1957), rev'd on other grounds, 269 Ala. 593, 115 So. 2d 269 (1958), 269 Ala. 548, 115 So. 2d 270 (1959); Pugh v. State, 42 Ala. App. 499, 169 So. 2d 27 (1964).

## § 12-21-222. Corroboration of accomplice testimony.

A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient.

### CASE NOTES

General comment.
Accomplice.
—Generally.
—Insufficient evidence.
—Sufficient evidence.
Burden of proof.
Conspiracy.
Construction with other law.
Corroborative evidence.
—Insufficient.
—Sufficient.
Effective assistance of counsel.
Elements.
Evidence — Admissible.
Evidence — Generally.
Harmless error.
Instructions.
Legislative intent.

Limitation.
Minors.
No error.
Presumptions.
Procedure — Trial.
Question of law or fact.
Requirements.
Reversible error.
Review.
Revocation of probation.
Standard of proof.
Time limitations.
Waiver.
When applicable.
Illustrative cases.
Cited.

**General comment.**
This section has been liberally construed

699

## § 12-21-226. Wife; desertion by husband.

In all cases where a husband is charged with abandoning his family and leaving them in danger of becoming a burden to the public, the wife shall be competent witness against her husband.

## § 12-21-227. Spousal testimonial privilege.

The husband and wife may testify either for or against each other in criminal cases, but shall not be compelled so to do.

Editor's notes. Rule 601 of the Alabama Rules of Evidence supersedes this section, effective January 1, 1996. See the Advisory Committee's Notes to ARE, Rule 601.

## CASE NOTES

General comment.
Defenses.
Divorce.
Duty of trial court.
Evidence — Admissible.
Evidence — Generally.
Evidence — Inadmissible.
Procedure — Trial.
Waiver.
When applicable.
Illustrative cases.
Cited.

**General comment.**

Court should apply this section, which alters the common law rule, in a manner to benefit the administration of justice. Taylor v. State, 25 Ala. App. 408, 147 So. 647 (1933).

The privileged communications rule should be construed liberally, and should not be confined to mere audible communications. Arnold v. State, 353 So. 2d 520 (Ala. Crim. App. 1976), modified, 353 So. 2d 524 (Ala. 1977).

This section makes no mention of the common law privilege for confidential communications between husband and wife, and thus, can have no effect on the independent nature of that privilege. Arnold v. State, 353 So. 2d 524 (Ala. 1977).

One spouse may testify against the other, notwithstanding the objection of the other. Holyfield v. State, 365 So. 2d 108 (Ala. Crim. App. 1978).

The state cannot require one spouse to testify against the other. Holyfield v. State, 365 So. 2d 108 (Ala. Crim. App. 1978).

The witness-spouse may elect to testify and the defendant-spouse can in no way compel or prevent the testimony. Billingsley v. State, 402 So. 2d 1060 (Ala. 1981), cert. denied, 465 U.S. 1023, 104 S. Ct. 1276, 79 L. Ed. 2d 681 (1984).

**Defenses.**

Spousal immunity privilege is unavailable unless the husband and wife are married at the time the privilege is sought. Rogers v. State, 417 So. 2d 241 (Ala. Crim. App. 1982).

**Divorce.**

Divorced spouses may invoke the rule barring testimony of privileged communications. Arnold v. State, 353 So. 2d 520 (Ala. Crim. App. 1976), modified, 353 So. 2d 524 (Ala. 1977).

This section does not apply, and the privilege of marital communications may be invoked despite the fact that the spouses are divorced at the time of trial. Arnold v. State, 353 So. 2d 524 (Ala. 1977).

The testimonial privilege does not apply to persons who are divorced at the time of the trial. Maxwell v. State, 620 So. 2d 93 (Ala. Crim. App. 1992).

**Duty of trial court.**

It was not incumbent on court to advise witness that she could not be compelled to be a witness against her husband, where witness had counsel present, and there was evidence indicating that she was not legal wife of defendant. Aycock v. State, 50 Ala. App. 130, 277 So. 2d 404 (1973).

**Evidence — Admissible.**

Where wife refused to testify against her husband in his prosecution for raping his 14 year old daughter, judge who had presided over previous peace bond proceeding at which wife did testify was permitted to recount the wife's testimony at the peace bond proceeding at the criminal rape trial. Wyatt v. State, 35 Ala. App. 147, 46 So. 2d 837 (1950).

Under the statutory law of the State of Alabama, the wife of a defendant may voluntarily testify against her husband. Kilpatrick v. State, 51 Ala. App. 352, 285 So. 2d 516 (1973).

The testimony of a witness at a former trial is admissible at a second trial when the witness

718

A16

course of committing a theft" which includes an attempted theft. Grace v. State, 431 So. 2d 1331 (Ala. Crim. App. 1982).

As robbery in the first degree embraces acts which occur in the "attempt to commit" theft, as well as in the actual commission of theft, it was not necessary that the state prove that property was actually taken by the defendant during any attempted theft, where the state's proof otherwise met the statutory requirements of §§ 13A-8-40, 13A-8-41, and 13A-8-43. Williams v. State, 462 So. 2d 944 (Ala. Crim. App. 1983).

At the very least, one may commit first degree robbery by threat of violence during an attempted theft. Ex parte James, 468 So. 2d 889 (Ala. 1984), aff'd sub nom. James v. State, 468 So. 2d 892 (Ala. Crim. App. 1985).

The violence used or threatened does not have to precede or accompany the theft but it must be for the purpose of accomplishing the theft. Carlisle v. State, 484 So. 2d 540 (Ala. Crim. App. 1985).

Under the present statutory definition of robbery, it is not essential that any property be taken from the victim; consequently, the value and amount of any property taken is immaterial. Maxwell v. State, 488 So. 2d 517 (Ala. Crim. App. 1986).

The present robbery statutes do not require a "taking" of property. Acres v. State, 548 So. 2d 459 (Ala. Crim. App. 1987).

Robbery includes instances where violence is used or threatened in the course of attempting a theft or in flight. Harvey v. State, 576 So. 2d 680 (Ala. Crim. App. 1991).

Present robbery statutes do not require a "taking" of property. Gainey v. State, 647 So. 2d 37 (Ala. Crim. App. 1994).

Because the amount taken in a robbery is not an element of the offense under the current robbery statutes, the indictment was sufficient to apprise the appellant of the charges against him. Windsor v. State, 683 So. 2d 1013 (Ala. Crim. App. 1993), rev'd on other grounds, 683 So. 2d 1021 (Ala. 1994).

Robbery is an offense against the person, and therefore, the value of the property taken during a robbery is not an element of the crime. The indictment charging the appellant with murder during the course of a robbery was not deficient. Ex parte Windsor, 683 So. 2d 1042 (Ala. 1996), cert. denied, 520 U.S. 1171, 117 S. Ct. 1438, 137 L. Ed. 2d 545 (1997).

The indictment was not unconstitutionally vague because the robbery statutes do not require a "taking" of property, so that not only is the value of the property immaterial, but also the indictment need not allege an actual theft to constitute the offense. McWhorter v. State, 781 So. 2d 257, 1999 Ala. Crim. App. LEXIS 212 (Ala. Crim. App. 1999), aff'd sub nom. Ex parte McWhorter, 781 So. 2d 330 (Ala. 2000), cert. denied, 532 U.S. 976, 121 S. Ct. 1612, 149 L. Ed. 476 (2001).

**Evidence — Insufficient.**

Where testimony was undisputed that defendant used force to flee the scene, but the original theft (shoplifting) had been completed, and the victim had regained control of the property, and the defendant used force to flee but not with the property, the defendant was guilty of serious offenses, but not robbery. Casher v. State, 469 So. 2d 679 (Ala. Crim. App. 1985).

**Evidence — Sufficient.**

Evidence was sufficient to show defendant's possession of a box cutter immediately following his arrest for robbery, supporting an armed robbery conviction. Laney v. State, 417 So. 2d 624 (Ala. Crim. App. 1982).

Where defendant argued that the force employed by him was not employed to effectuate the taking of the stolen property, court found that the jury was justified in relying on the testimony regarding the stolen articles being recovered from the person of the appellant or from the get away car, in making out the elements of the offense of robbery in the first degree and that even without that evidence, the evidence before them was clear to the effect that the defendant did use force and a deadly weapon to effectuate his immediate escape. White v. State, 462 So. 2d 750 (Ala. Crim. App. 1984), vacated, 479 U.S. 1074, 107 S. Ct. 1266, 94 L. Ed. 2d 127 (1987).

Although witnesses' testimony may have been unbelievable as to both killings, from the evidence the jury could have concluded that defendant had actually shot one of the two victims. Rutledge v. State, 680 So. 2d 997 (Ala. Crim. App. 1996).

Evidence that defendant, after being confronted with possession of stolen merchandise, shoved a shopping mall security guard before fleeing, and later hit a store manager and bystander, was

sufficient to prove that force was used in immediate flight following the theft, and thus to establish the offense of third degree robbery. Fuqua v. State, 706 So. 2d 817 (Ala. Crim. App. 1997).

**Included offenses.**

The crime of robbery includes all the elements of larceny, with the one additional element of force or putting in fear, and a state of facts tending to prove the higher degree also tends to prove larceny; the degree is a question for the jury. Pierce v. State, 25 Ala. App. 302, 145 So. 592 (1933).

Robbery is a common law offense and does not include as a lesser offense the crime of buying, receiving and concealing stolen property, which a statutory offense. Mayes v. State, 350 So. 2d 339 (Ala. Crim. App. 1977).

**Instructions.**

A defendant charged under former robbery statute was entitled to a jury instruction on the charges of larceny or assault and battery if the evidence was sufficient to support a conviction under these charges. Kelly v. State, 235 Ala. 5, 176 So. 807 (1937).

**Intent, knowledge.**

A statement by defendant at his arraignment that he was drunk at the time of the robbery and did not know what he was doing could be properly construed as an assertion that he was so drunk as to make him incapable of possessing the requisite criminal intent to commit first degree robbery. Simmons v. State, 412 So. 2d 1239 (Ala. Crim. App. 1981).

The question of intent is a question for the jury. Carlisle v. State, 484 So. 2d 540 (Ala. Crim. App. 1985).

**Procedure — Pretrial.**

The form of indictment set out by § 15-8-150(86), followed the common law definition of robbery, is no longer applicable to robbery under § 13A-8-40 through 13A-8-44 of the criminal code. Lewis v. State, 469 So. 2d 1291 (Ala. Crim. App. 1984), aff'd sub nom. Ex parte Blake, 469 So. 2d 1301 (Ala. 1985).

Because the amount taken in a robbery is immaterial under Alabama's robbery statutes, §§ 13A-8-40 through 13A-8-44, the court committed no error in allowing the indictment to be amended without the appellant's consent. Odom v. State, 625 So. 2d 1171 (Ala. Crim. App. 1993).

**Miscellaneous.**

The former offense of assault with intent to rob has been merged into the present offense of robbery. Marvin v. State, 407 So. 2d 576 (Ala. Crim. App. 1981).

Cited in Kent v. State, 56 Ala. App. 1, 318 So. 2d 742 (1975); McLester v. State, 423 So. 2d 286 (Ala. Crim. App. 1982); Crowe v. State, 435 So. 2d 1371 (Ala. Crim. App. 1983); Barnett v. State, 437 So. 2d 668 (Ala. Crim. App. 1983); Ex parte Clements, 447 So. 2d 695 (Ala. 1984); Johnson v. State, 473 So. 2d 607 (Ala. Crim. App. 1985); Herndon v. State, 563 So. 2d 1065 (Ala. 1990); Bush v. State, 580 So. 2d 106 (Ala. Crim. App. 1991).

## § 13A-8-41. Robbery; first degree.

(a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he:

(1) Is armed with a deadly weapon or dangerous instrument; or

(2) Causes serious physical injury to another.

(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed.

(c) Robbery in the first degree is a Class A felony.

**History.** Acts 1977, No. 77-607.

With three prior felony convictions, a defendant convicted of robbery in the second degree must be sentenced to life in the penitentiary. Bennett v. State, 649 So. 2d 213 (Ala. Crim. App. 1993).

**Sentence — Not excessive.**

A sentence of life imprisonment is proper upon conviction of a Class B felony when the defendant has three prior felony convictions. Hatcher v. State, 581 So. 2d 25 (Ala. Crim. App. 1991).

A sentence of life imprisonment is proper upon conviction of a Class B felony when the defendant has three prior felony convictions. Hatcher v. State, 581 So. 2d 25 (Ala. Crim. App. 1991).

**Separate or multiple offenses.**

At common law, the Alabama crimes of robbery and assault with intent to murder were two separate and distinct offenses. Brown v. Alabama, 619 F.2d 376 (5th Cir. 1980).

**Miscellaneous.**

Robbery, from the earliest times has always been regarded a crime of the gravest character; since the Revised Code of 1867, § 3668, any person convicted of robbery, must be punished, at the discretion of the jury, either by death, or by imprisonment for not less than ten years; or, as in Code 1886, § 3742, by death or by imprisonment for not less than five years; or, as in Code 1896, § 5479, and subsequent codes, by death or by imprisonment for not less than ten years. Boykin v. State, 281 Ala. 659, 207 So. 2d 412 (1968), rev'd on other grounds, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

**Cited in** Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); Jenkins v. State, 384 So. 2d 1135 (Ala. Crim. App. 1979); Gosha v. State, 389 So. 2d 563 (Ala. Crim. App. 1980); Thomas v. State, 418 So. 2d 921 (Ala. Crim. App. 1981); Lidge v. State, 419 So. 2d 610 (Ala. Crim. App. 1982); Russell v. State, 428 So. 2d 126 (Ala. Crim. App.); Crowe v. State, 435 So. 2d 1371 (Ala. Crim. App. 1983); Beverly v. State, 439 So. 2d 758 (Ala. Crim. App. 1983); Ragsdale v. State, 448 So. 2d 442 (Ala. Crim. App. 1984); Gorman v. State, 448 So. 2d 495 (Ala. Crim. App. 1984); Ex parte Bates, 461 So. 2d 5 (Ala. 1984); Brooks v. State, 469 So. 2d 677 (Ala. Crim. App. 1984); Phillips v. State, 484 So. 2d 1205 (Ala. Crim. App. 1986); Hartley v. State, 516 So. 2d 802 (Ala. Crim. App. 1986); Coleman v. State, 516 So. 2d 871 (Ala. Crim. App. 1987); Kolonaus v. State, 552 So. 2d 1075 (Ala. Crim. App. 1989); McGruder v. State, 560 So. 2d 1137 (Ala. Crim. App. 1989); Herndon v. State, 563 So. 2d 1063 (Ala. Crim. App. 1989); Young v. State, 563 So. 2d 44 (Ala. Crim. App. 1990); Riggins v. State, 563 So. 2d 1075 (Ala. Crim. App. 1990); Ex parte Lynch, 587 So. 2d 303 (Ala. 1990); Lynch v. State, 587 So. 2d 305 (Ala. Crim. App. 1990); Preston v. State, 586 So. 2d 263 (Ala. Crim. App. 1991); Gray v. State, 658 So. 2d 507 (Ala. Crim. App. 1992); Nickerson v. State, 629 So. 2d 60 (Ala. Crim. App. 1993); Goodwin v. State, 641 So. 2d 1289 (Ala. Crim. App. 1994); Sims v. State, 663 So. 2d 975 (Ala. Crim. App. 1994); McKinney v. State, 665 So. 2d 209 (Ala. Crim. App. 1995); Ex parte Frazier, 729 So. 2d 253 (Ala. 1998).

## § 13A-8-43. Robbery; third degree.

(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:

(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or

(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.

(b) Robbery in the third degree is a Class C felony.

**History.** Acts 1977, No. 77-607.

**Cross references.** — This law is referred to in: §§ 13A-8-41, 13A-8-42.

## CASE NOTES

Attempt.
Burden of proof.
Construction with other law.
Double jeopardy.
Elements.
Evidence — Admissible.
Evidence — Insufficient.
Evidence — Sufficient.
Included offenses.
Instructions.
Intent, knowledge.
Jurors.
Liability.
Procedure — Pretrial.
Question of law or fact.
Review.
Sentence — Generally.
Venue.
Miscellaneous.
Cited.

**Attempt.**

The former crime of attempted robbery now constitutes robbery. Petty v. State, 414 So. 2d 182 (Ala. Crim. App. 1982).

This section subsumes all activities and conduct which may be characterized as an attempt to commit robbery. Petty v. State, 414 So. 2d 182 (Ala. Crim. App. 1982).

**Burden of proof.**

Where the proof adduced at trial showed that the appellant threatened to use a gun if necessary, there was no variance between the indictment and the evidence presented at trial because the state did not prove that the appellant actually was armed with a deadly weapon or dangerous instrument; the State does not have to prove that the defendant actually had a gun in order to sustain a conviction of first degree robbery. Rice v. State, 620 So. 2d 140 (Ala. Crim. App. 1993).

**Construction with other law.**

Subsection (a) adds a definition that extends robbery to include conduct which occurs in an attempt to commit a theft or in flight after the attempt or commission, as defined in section 13A-8-40(b). Petty v. State, 414 So. 2d 182 (Ala. Crim. App. 1982).

Reversal required where the trial court lacked jurisdiction to accept defendant's guilty plea to second-degree robbery under § 13A-8-42, because the information charging him with that offense failed to state one of the essential elements of that offense, that the defendant be "aided by another person actually present" during the course of the robbery. Byrd v. State, 765 So. 2d 987, 2000 Ala. Crim. App. LEXIS 6 (Ala. Crim. App. 2000).

Although ARCrP 26.6 does not set out a specific time that will be considered reasonable under subdivision (b)(3)(xiii), where defendant was sentenced within 15 minutes of receiving notice of the State's intent to proceed under the Habitual Felony Offender Act, the reasonableness requirement of subdivision (b)(3)(xii) was not satisfied. Ex parte Crews, 797 So. 2d 1119, 2000 Ala. LEXIS 18 (Ala. 2000).

Because burglary in the first degree (§ 13A-7-5) and robbery in the first degree (this section) are not so similar as to encompass one another, it was not error to punish the defendant under both statutes. Ex parte Dixon, 804 So. 2d 1075, 2000 Ala. LEXIS 379 (Ala. 2000).

**Double jeopardy.**

At common law, the Alabama crimes of robbery and assault with intent to murder were two separate and distinct offenses. Brown v. Alabama, 619 F.2d 376 (5th Cir. 1980).

A previous conviction for theft of the victim's automobile bars a subsequent prosecution for murder of that same victim during the course of robbing that victim of property other than the automobile where the taking of all the property occurred as part of the same criminal and factual transaction; the prosecution of the defendant for the capital offense of murder-robbery after his conviction for theft violated established principles of former jeopardy. Connolly v. State, 539 So. 2d 436 (Ala. Crim. App. 1988).

**CONCLUSION**

For the foregoing reasons, individually and cumulatively, Defendant respectfully seeks from this Honorable Court reversal of the judgments of conviction and sentence by the Circuit Court of Henry County in State of Alabama v. Johnny C. Grace, Jr., Case Nos. CC-2002-205 and 206.

Respectfully submitted this 25th day of June, 2003

GREGORY A. DaGIAN (DAG 003)
Attorney for Appellant
406 Dothan Rd., Ste. B
Abbeville, AL  36310
Telephone: (334) 585-1394
Facsimile: (334) 585-1395

69

## CERTIFICATE OF SERVICE

I certify that I have served an exact copy of the foregoing Brief of Appellant on the Office of the Attorney General, 11 S. Union St., Third Floor, Montgomery, Alabama, 36130, by placing same in the U.S. Mail, properly addressed, with adequate postage affixed thereto this 25th day of June, 2003.

GREGORY A. DaGIAN (DAG 003)
Attorney for Appellant
406 Dothan Rd., Ste. B
Abbeville, AL 36310
Telephone: (334) 585-1394
Facsimile: (334) 585-1395