No. CR-02-1017

---

## In the COURT of CRIMINAL APPEALS
### of ALABAMA

——————————— ◆ ———————————

JOHNNY C. GRACE, JR.,

Appellant,

v.

STATE OF ALABAMA,

Appellee.

——————————— ◆ ———————————

*On Appeal from the Circuit Court of
Henry County (CC-02-205 & 206)*

---

### BRIEF OF APPELLEE

William H. Pryor Jr.
*Attorney General*

Michael B. Billingsley*
*Assistant Attorney General*
Counsel of Record*

State of Alabama
Office of the Attorney General
11 South Union Street
Montgomery, Alabama  36130
(334) 242-7495*

August 6, 2003


EXHIBIT
1B

## STATEMENT REGARDING ORAL ARGUMENT

"The facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided" by oral argument.  Rule 34(a)(3), *A.R.A.P.*

i

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ........................ i

TABLE OF CONTENTS ....................................... ii

TABLE OF AUTHORITIES .................................... iii

STATEMENT OF THE CASE ................................... 1

STATEMENT OF THE ISSUES ................................. 2

STATEMENT OF THE FACTS .................................. 4

STANDARDS OF REVIEW ..................................... 6

SUMMARY OF THE ARGUMENT ................................ 10

ARGUMENT

I.   The Trial Court's Denial of Grace's Batson Motion
Was Not Clearly Erroneous ............................. 15

II. The Trial Court Did Not Err In Removing Two
Sleeping Jurors From The Petit Jury. .................. 20

III.  Grace's Convictions Do Not Violate The Double
Jeopardy Clause. ..................................... 22

IV.  The Claim That Grace's Wife Was Improperly
Denied The Right To Assert Her Marital Privilege
Is Moot. ............................................. 24

V.  The Trial Court Did Not Improperly Limit Grace's
Cross-Examination. ................................... 26

VI. Grace Was Not Convicted In Violation Of Section
12-21-222 Of The Code Of Alabama (1975). ............. 29

VII.  The Trial Court's Refusal Give Grace's Requested
Jury Instructions Numbers Eight And Nine Was Harmless
Error. ............................................... 32

**TABLE OF CONTENTS CONT'D**

VIII. The Record Does Not Establish That Improper
Argument_By the Prosecutor Denied Grace Due Process. ... 34

IX. The Trial Court Did Not Err By Instructing The Jury on
The Applicability Of Section 13A-8-41(b) Of The Code of
Alabama (1975). ...................................... 36

X.  The Sentences Imposed Upon Grace For His Two
Convictions Of First Degree Robbery Were Within The
Statutory Range And Lawful. .......................... 39

XI. The Trial Court Properly Denied Grace's Motion For A
Judgment Of Acquittal. ............................... 42

CONCLUSION ........................................... 44

CERTIFICATE OF SERVICE ............................... 45

## TABLE OF AUTHORITIES

**Cases**

Andrews v. State, 370 So. 2d 320 (Ala. Crim. App.), *cert. denied*, 370 So. 2d 323 (Ala. 1979) .............. 12, 29 31

Arthur v. State,
  711 So. 2d 1031 (Ala. Crim. App. 1996), aff'd, 711
  So. 2d 1097 (Ala. 1997). ............................. 32

Baird v. State, No. CR-00-2047, 2002 WL 1397493
  (Ala. Crim. App. 2002) ........................... 11, 22

Banks v. State,
  647 So. 2d 46 (Ala. Crim. App. 1994). ................. 29

Blockburger v. United States,
  284 U.S. 299 (1932). .............................. 11, 22

Cagle v. State,
  504 So. 2d 1225 (Ala. Crim. App. 1988) ................ 21

Drake v. State,
  675 So. 2d 1365 (Ala. Crim. App. 1995) ................ 22

Duke v. State,
  2002 WL 1145829 (Ala. Crim. App. May 31, 2002) ........ 32

Ex parte Coulliette,
  No. 1001380, 2003 WL 861639 (Ala. Mar. 7, 2003) ........ 38

Ex parte Pope,
  562 So. 2d 131 (Ala. 1989), cert. denied, 498 U.S. 841
  (1990) .............................................. 28

Ex parte Thomas,
  659 So. 2d 3 (Ala. 1994) ............................. 18

Ex parte Tyson,
  784 So. 2d 357 (Ala. 2000) ........................... 20

## TABLE OF AUTHORITIES (CONT'D)

Ex parte Pope,
562 So. 2d 131 (Ala. 1989) ............................... 28

Ferguson v. State,
814 So. 2d 925 (Ala. Crim. App. 2000). ................. 30

Hamrick v. State,
548 So. 2d 652 (Ala. Crim. App. 1989 ................... 21

Hardeman v. State,
651 So. 2d 59 (Ala. Crim. App. 1994) .................. 42

Harrison v. State,
2003 WL 1949812 (Ala. Crim. App. Apr. 23, 2003), ....... 21

Hernandez v. New York,
111 S. Ct. 1859 (1991) ................................ 18

Hyde v. State,
778 So. 2d 199 (Ala. Crim. App. 1999) ................. 33

Ingle v. State,
400 So. 2d 938 (Ala. Crim. App. 1981). ............. 31, 41

Jordan v. City of Huntsville,
667 So. 2d 153 (Ala. Crim. App. 1995) ................. 34

Long v. State,
615 So. 2d 114 (Ala. Crim. App. 1992)

Ex parte Thomas,
659 So. 2d 3 (Ala. 1994) .............................. 18

Long v. State,
615 So. 2d 114 (Ala. Crim. App. 1992) ................. 17

McKinney v. State,
511 So. 2d 220 (Ala. 1987) ............................ 23

Raper v. State,
584 So. 2d 544 (Ala. Crim. App. 1991) ................. 38

Rika v. State,
    587 So. 2d 1054 (Ala. Crim. App. 1991). . . . . . . . . . . . . . . . 18

Rutledge v. State,
    745 So. 2d 912 (Ala. Crim. App. 1999) . . . . . . . . . . . . . . . . 34

Woods v. State,
    724 So. 2d 40 (Ala. Crim. App. 1997).

Stanley v. State,
    723 So. 2d 821 (Ala. Crim. App. 1998), . . . . . . . . . . . . . . . 21

State v. Canada,
    481 P.2d 859, *cert. denied*, 404 U.S. 848 (1971). . . . . . . . 31

Ware v. State,
    409 So. 2d 886 (Ala. Crim. App. 1981) . . . . . . . . . . . . . . . . 31

White v. State,
    546 So. 2d 1014 (Ala. Crim. App.), cert. denied, 546 So.
    2d 1014 (Ala. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Woods v. State,
    724 So. 2d 40 (Ala. Crim. App. 1997). . . . . . . . . . . . . . . . . 43

Yancey v. State,
    813 So. 2d 1 (Ala. Crim. App. 2001) . . . . . . . . . . . . . . . . . . 14

Ziegler v. State,
    2003 WL 596875 (Ala. Crim. App. Feb. 28, 2003) . . . . . . . . 32

**Statutes**

ALA. CODE 1975

§ 12-21-222 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

§ 13A-8-43(a)(2) (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## STATEMENT OF THE CASE

This is an appeal from an order entered by Henry County Circuit Judge Loyd H. Little, adjudging Johnny C. Grace, Jr., guilty of two counts of robbery in the first degree. The evidence demonstrated that, at Grace's instigation, four other individuals forced their way into a house at gun point and threatened to kill the two residents while ransacking the home. Grace remained in the car. As a result of the convictions, the trial judge sentenced Grace, to two consecutive 99 year sentences.

In March of 2002, Grace was indicted for two counts of first degree robbery, violations of Section 13A-8-41 of the Code of Alabama (1975). (C. 26-27) Grace's trial began on October 15, 2002. (R. 1) Following voir dire and the striking of a jury, Grace raised a Batson motion, asserting that the prosecutor had impermissibly removed potential jurors on the basis of race. The prosecutor stated reasons for the strikes and, after hearing the reasons, and defense counsel's response, the trial court denied the motion. Following opening statements, the presentation of evidence, closing arguments, and instructions from the trial judge, the jury found Grace guilty as charged in the indictment.

On January 23, 2003, Grace was sentenced to 99 years

imprisonment for each count of first degree robbery.

Grace's motion for new trial was subsequently denied and

notice of appeal was filed on February 19, 2003.  (C. 157)

## STATEMENT OF THE ISSUES

    1.  Did the trial court correctly deny Grace's <u>Batson</u>

motion?

    2.  Did the trial court err in removing two sleeping

jurors and replacing them the previously selected

alternates?

    3.  Do Grace's convictions violate the Double Jeopardy

Clause?

    4.  Is Grace's claim that the trial court erroneously

denied his wife the right to assert a marital privilege

moot?

    5.  Did the trial court improperly limit Grace's right

to cross-examination?

    6.  Was Grace convicted in violation of Section 12-21-

222 of the Code of Alabama (1975)?

7.  Was the trial court's refusal to instruct the jury on the requirement that an accomplice's testimony be corroborated harmless error?

8.  Does the record support Grace's claim that a comment of the prosecutor during closing argument violated his right to due process?

9.  Did the trial court err by instructing the jury on the applicability of Section 13A-8-41(b) of the Code of Alabama (1975)?

10. Were the sentences imposed upon Grace for his two convictions of first degree robbery lawful?

11. Did the trial court properly deny Grace's motion for a judgment of acquittal?

## STATEMENT OF THE FACTS

On the evening of December 16, 2001, Nicholas McKinnon was "hanging around" with Johnny Grace and three other individuals. (R. 112) At some point, Grace had the idea of going to the home of Jack and Ann Murphy for the purpose of committing a robbery. (R. 115) Grace had previously worked for Mr. Murphy and knew that a safe was kept in the home. (R. 115-116) Grace drove McKinnon's car to the Murphy home. (R. 116)

Once the group arrived at the destination, McKinnon and the other three individuals put socks on their hands and covered their faces. (R. 117) They then took two pistols – one a toy and the other real – and proceeded to force their way into the Murphy home at gunpoint. (R. 229-31) Once inside, they restrained Mr. and Mrs. Murphy and ransacked the home. Mr. and Mrs. Murphy were repeatedly threatened with death. See, e.g., (R. 177) (Ann Murphy testifying that one of the perpetrators put a gun in her face and stated, "you white bitch, I want all of your case money before I blow your fucking brains out"); (R. 232) (Jack Murphy testifying that a gun was stuck in his face and he was ordered to "get in the house" or get shot and

4

killed).  They additionally obtained the safe and, when they were unable to open it, placed it in McKinnon's vehicle.  (R. 135)

Following the robbery, the group left Mr. and Mrs. Murphy restrained and went to the home of Tyrone Lindsey. Lindsey testified that, on the night in question, Grace came to his house with some other individuals, including McKinnon.  (R. 159)  Lindsey stated that the group arrived in McKinnon's vehicle and proceeded to unload the safe taken from the Murphy home.  (R. 159)  Additionally, according to Lindsey, Grace was present when the safe broken into and when the proceeds were divided up.  (R. 160, 169)

Upon hearing all of the evidence, and after being instructed on the law by the trial court, the jury convicted Grace of two counts of first degree robbery as charged in the indictment.  This appeal follows.

5

## STANDARDS OF REVIEW

1. "When reviewing a trial court's ruling on a <u>Batson</u> motion, this court gives deference to the trial court and will reverse a trial court's decision only if the ruling is clearly erroneous." <u>Yancey v. State</u>, 813 So. 2d 1, 3 (Ala. Crim. App. 2001), citing <u>Farrior v. State</u>, 728 So. 2d 691 (Ala. Crim. App. 1998); <u>Merriweather v. State</u>, 629 So. 2d 77 (Ala. Crim. App. 1993); <u>Nance v. State</u>, 598 So. 2d 30 (Ala. Crim. App. 1992); <u>Jackson v. State</u>, 594 So. 2d 1289 (Ala. Crim. App. 1991).

2. A trial court's decision to remove a juror should be reviewed for an abuse of discretion. See, e.g., <u>Eaton v. State</u>, 759 So. 2d 562 (Ala. Crim. App. 1999) (stating that "the trial court's decision not to remove this juror for cause was not an abuse of discretion").

3. The issue whether Grace was convicted in violation of the prohibition against Double Jeopardy presents a question of law. It is, therefore, subject to de novo review. See <u>Ex parte Hill</u>, 690 So. 2d 1201, 1203 (Ala. 1996).

4. Grace's claim that his wife was unlawfully denied the right to assert her martial privilege is moot. His

6

wife did not testify against him during the trial. "No judgment may be reversed or set aside . . . unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties." Rule 45, A. R. App. P.

5. "The latitude and extent of cross-examination are matters within the sound discretion of the trial court, and in the absence of abuse, that discretion is not reversible on appeal." Ex parte Tyson, 784 So. 2d 357, 365 (Ala. 2000), citing Ex parte Pope, 562 So. 2d 131, 134 (Ala. 1989), cert. denied, 498 U.S. 841 (1990).

6. Whether there is sufficient evidence to corroborate an accomplice's testimony is a question of law to be decided by the trial court and to be reviewed under a de novo standard. Arthur v. State, 711 So. 2d 1031, 1059 (Ala. Crim. App. 1996); Taylor v. Cox, 710 So. 2d 406, 407 (Ala. 1998). This inquiry is limited to determining "whether there is corroborating evidence tending to connect the defendant with the commission of the offense." Ex parte Bell, 475 So. 2d 609, 613 (Ala. 1985). Moreover,

because the corroboration issue is one of sufficiency, this Court must, when evaluating the question, "accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution." White v. State, 546 So. 2d 1014, 1016 (Ala. Crim. App.), cert. denied, 546 So. 2d 1014 (Ala. 1989).

7. Grace's claim that the trial court erred in refusing to instruct the jury on the need to corroborate accomplice testimony should be review for harmless error. "No judgment may be reversed or set aside . . . in any . . . criminal case on the ground of . . . the giving or refusal of special charges . . . unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties." Rule 45, A. R. App. P.

8. The portion of closing argument complained of by Grace does not appear in the record. This Court cannot predicate error on matters not shown by the record, nor can [it] presume error from a silent record. Rutledge v.

State, 745 So. 2d 912, 919 (Ala. Crim. App. 1999)
(citations and quotations omitted).

9.   A trial court has broad discretion in formulating
its jury instructions, providing those instructions
accurately reflect the law and the facts of the case.
Raper v. State, 584 So. 2d 544 (Ala. Crim. App. 1991).

10.   "It is well settled that this [C]ourt is without
authority to review a sentence so long as the sentence
imposed by the trial court is within the limits prescribed
by our [L]egislature." Moreland v. State, 469 So. 2d 1305,
1306 (Ala. Crim. App. 1985), cert. denied, 469 So. 2d 1305
(Ala. 1986).

11.   In considering a claim questioning the sufficiency
of the evidence, "this Court must accept as true the
evidence introduced by the State, accord the State all
legitimate inferences therefrom, and consider the evidence
in the light most favorable to the prosecution." White v.
State, 546 So. 2d 1014, 1016 (Ala. Crim. App.), cert.
denied, 546 So. 2d 1014 (Ala. 1989). Moreover, "'[t]he
test to be applied [in reviewing a conviction . . . ] is
whether the jury might reasonably find that the evidence
excluded every reasonable hypothesis but guilt; not whether

such evidence excludes every reasonable hypothesis but

guilty, but whether a jury might reasonably so conclude.'"

Hardeman v. State, 651 So. 2d 59, 65 (Ala. Crim. App. 1994)

(brackets in original), quoting Cumbo v. State, 368 So. 2d

871, 874 (Ala. Crim. App. 1978).

## SUMMARY OF THE ARGUMENT

1.   "When reviewing a trial court's ruling on a Batson

motion, this court gives deference to the trial court and

will reverse a trial court's decision only if the ruling is

clearly erroneous." Yancey v. State, 813 So. 2d 1, 3 (Ala.

Crim. App. 2001).  The trial court's determination that the

prosecutor offered sufficiently race neutral reasons for

its strikes was not clearly erroneous and Grace's contrary

claim should be denied.

2.   The trial court properly removed two sleeping juror

and replaced them with the previously chosen alternates.

Grace's claim that he is entitled to relief based juror

misconduct is not preserved for review.  Furthermore, any

race based claim that the trial court erred by removing the

jurors is without merit.  In response to Grace's objection,

the trial court plainly stated that it was "not taking them

off because they are black or white or whatever," but

"because they were sleeping." (R. 222) The record corroborates the statement of the court.

3. Grace's convictions do not violate the Double Jeopardy Clause. "[T]he test in determining whether the charges run afoul of the Double Jeopardy Clause is whether each crime contains a statutory element not contained in the other." Baird v. State, No. CR-00-2047, 2002 WL 1397493, at *22 (Ala. Crim. App. 2002), citing Blockburger v. United States, 284 U.S. 299 (1932). Here, the two counts of robbery were separate crimes, each requiring proof of a different victim – "an element not contained in the other."

4. Grace's claim that his wife was unlawfully denied the right to assert her martial privilege is moot. His wife did not testify against him during the trial and, therefore, he suffered no prejudice as a result of the trial court's ruling on the matter.

5. The trial court did not improperly limit Grace's right to cross-examination. Contrary to Grace's contention, the trial court did not strike a question and answer regarding a statement Sheriff Armstrong made concerning a possible bias against Grace. In addition,

11

Grace was properly prevented from eliciting testimony related to statements concerning a possible deal with a non-testifying co-defendant.

6.   The evidence, independent of Nicholas McKinnon's testimony, was more than sufficient to connect Grace to the offense.  This is all that is required to comply with Section 12-21-222.  See Ware v. State, 409 So. 2d 886, 891 (Ala. Crim. App. 1981) ("Corroborative evidence need not *directly* connect the accused with the offense, but need only *tend* to do so.") (emphasis in original), writ quashed, 409 So. 2d 893 (Ala. 1982), quoting Andrews v. State, 370 So. 2d 320 (Ala. Crim. App.), cert. denied, 370 So. 2d 323 (Ala. 1979), citing State v. Canada, 481 P.2d 859, cert. denied, 404 U.S. 848 (1971).

7. "Although an instruction on corroboration of accomplice testimony should generally be given in cases such as this one, [this Court has] recognized on numerous occasions that the error of failing to instruct the jury on the need for corroborative is harmless when the testimony of the accomplice has been corroborated." Ziegler v. State, 2003 WL 596875, at *13 (Ala. Crim. App. Feb. 28, 2003), citing Arthur v. State, 711 So. 2d 1031, 1058 (Ala.

Crim. App. 1996), aff'd, 711 So. 2d 1097 (Ala. 1997).
Here, because McKinnon's testimony was sufficiently
corroborated, any error was harmless.

8.    The portion of closing argument Grace asserts
violated his due process rights does not appear in the
record.  "This Court cannot predicate error on matters not
shown by the record, nor can [it] presume error from a
silent record." Rutledge v. State, 745 So. 2d 912, 919
(Ala. Crim. App. 1999) (citations and quotations omitted).
Grace's claim must, therefore, be denied.

9.    The trial court did not err in instructing the jury
on the applicability of Section 13A-8-41(b).  The
instruction accurately reflected the law and the facts of
the case.  It was, therefore, proper.  See, e.g., Raper v.
State, 584 So. 2d 544 (Ala. Crim. App. 1991).

10.   The trial court did not err in sentencing Grace.
The sentence imposed plainly fell within the range provided
by statute.  "When the trial court imposes a sentence
within the statutory range, this court will not review that
sentence." Wooden v. State, 822 So. 2d 455, 458 (Ala.
Crim. App. 2000), citing Hoosier v. State, 612 So. 2d 1352
(Ala. Crim. App. 1992).

13

11.   The evidence was sufficient to support the jury's
determination that Grace was guilty of two counts of
robbery in the first degree.  In considering Grace's claim
to the contrary, "this Court must accept as true the
evidence introduced by the State, accord the State all
legitimate inferences therefrom, and consider the evidence
in the light most favorable to the prosecution." White v.
State, 546 So. 2d 1014, 1016 (Ala. Crim. App.), cert.
denied, 546 So. 2d 1014 (Ala. 1989).  Considered in such a
light, the evidence was sufficient to allow the case to go
to the jury for its determination.

**ARGUMENT**

I.  **The Trial Court's Denial of Grace's <u>Batson</u>[1] Motion
    Was Not Clearly Erroneous.**

Grace's first claim is that "the [trial] court erred to

reversal in denying [his] <u>Batson</u> challenge to [the

State]'s purposeful racial discrimination during jury

selection."  (Grace's brief at p. 31)  When reviewing such

a claim, "this court gives deference to the trial court and

will reverse a trial court's decision only if the ruling is

clearly erroneous."  <u>Yancey v. State</u>, 813 So. 2d 1, 3 (Ala.

Crim. App. 2001).  Because Grace has failed to demonstrate

that the determination of the trial court was clearly

erroneous, his claim is due to be denied.

Grace contends that a <u>Batson</u> violation occurred because

the prosecution "us[ed] its peremptory strikes to eliminate

six out of eight remaining black venirepersons from the

strike list . . . ."  (Grace's brief at p. 31)  The record

reveals that, in response to Grace's <u>Batson</u> motion, the

trial court directed the prosecutor to state reasons for

his strikes.  (R. 26)  At that point, the following

occurred:

---

[1]  476 U.S. 79 (1986).

15

[Prosecutor]: Okay. Number 38, that is Ms. Stanford, knew the defendant, knew members of his family, knew Chris Lindsey's uncle also. That is one of the co-defendants. Number 21 is Christy Lynn Harper. Now, she's not black. She's white. If I am mistaken —

[Defense Counsel]: Twenty-one is Ann Kinsey.

[Prosecutor]: Excuse Me. Twenty-One was Ann Kinsey. Ms. Kinsey said she knew some of the Grace's, not sure if they are related or not. So if she thinks she's related to some of the defendant's family, I think that is definitely race neutral. And she also knew the Warrens.

The next one is 22, Janice Kinsey, if I am correct on the list. She knows Pam Knight, which is the defendant's wife or common-law wife or someone he lives with. We are having a motion to suppress on her in relationship to the defense claiming husband and wife privilege of Ms. Knight received some of the stolen coins the State alleges from the defendant. In his statement he talks about how he acquired some of those coins. So that is the basis for striking her.

Thirty-Five is Rex Jerome Rhodes. Mr. Rhodes was struck because he said that his brother is a judge in New Jersey. And the State also struck a white female, Christy Harper, who said she knows the probate judge, who is a white judge in this Circuit. As well as we would have struck — we did strike correction officer, Number 8, who is Jerrod Bryant. He said he was a correction officer in Easterling Prison. I definitely don't want anybody who has any ties to judges or people or the prison. And Number 8 is a white male. And then Number 5 is Roosevelt Beck, Jr., a black male. He came up and said he'd been convicted of robbery in Barbour County, prosecuted over there, approached the bench. Then Number 36, I believe, he said that was the last strike. Betty Smith, she said she was familiar with the defendant, had

16

known him through school, just like Ms. Stanford said she had know him from school. Daisy Zittle was struck by the State, was our first strike, Number 42, she said not only did she know members of his family in school, she also dated him. She was a white female and we struck her. So we struck people who knew the defendant from the school or relationship, as well as the white people.

So based on that, I think that was clearly race neutral reasons.

THE COURT: Okay. Any response to that?

[Defense Counsel]: Yes, sir. We don't feel the responses warrant striking, especially, when we are talking about so little blacks on the venire, and the State striking 75 percent of those blacks.

[Prosecutor]: Once again, he says it's a number thing is what he is arguing to the Court. We gave you specific race neutral reasons why we struck those people. We struck blacks. We struck whites along the same lines. Plus, the reason we struck people in relationship to the knowledge of the defendant and his family, as well as white people. Those are clearly race neutral. And then the issues about the black male who had a judge, we struck the white female who came up and said she knew the probate judge in this Circuit, as well as the correction officer, other people who might know how the system works. In other words, they tend to play lawyer in the jury room. So that is a concern we have. So I submit those were our reasons. All he said was we stuck numbers. We think definitely we proved race neutral reasons.

THE COURT: That motion is denied.

(R. 26-29)

On appeal, Grace brings into question specific strikes, arguing that the reasons given were "obviously pretextual" and offered "to conceal racial discrimination." (Grace's brief at pp. 32-33) As is plainly demonstrated by the portion of record above, however, Grace did not make such an argument at trial. Rather, he based his objection solely on the low number of African-Americans on the venire. (R. 28) Because Grace did not assert the grounds included in his brief at trial, they should not be considered here. See Long v. State, 615 So. 2d 114, 116 (Ala. Crim. App. 1992) (refusing to consider, as part of Batson claim, the contention that the "state did not engage in any meaningful voir dire" because appellant "did not make this argument at trial"), overruled on other grounds Ex parte Thomas, 659 So. 2d 3 (Ala. 1994), citing Rika v. State, 587 So. 2d 1054 (Ala. Crim. App. 1991).

Regarding the general Batson motion, the record simply does not demonstrate - and Grace has failed to establish - that the ruling of the trial court was clearly erroneous. A trial court's determination that peremptory challenges were not motivated by intentional discrimination is a finding of fact that is entitled to great deference on

appeal and should be reversed only where that determination is clearly erroneous. See, e.g., Hernandez v. New York, 111 S. Ct. 1859 (1991).

      The trial judge in this case chose to believe the prosecutor's race-neutral explanation for striking the two jurors in question, rejecting petitioner's assertion that the reasons were pretextual. In Batson, we explained that the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal:

> In a recent Title VII sex discrimination case, we stated that 'a finding of intentional discrimination is a finding of fact' entitled to appropriate deference by a reviewing court. Anderson v. Bessemer City, 470 U.S. 564, 573 [105 S.Ct. 1504, 1511, 84 L.Ed.2d 518] (1985). Since the trial judge's findings in the context under consideration here largely turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference. Id., at 575-576 [105 S.Ct., at 1512-1513.]" Batson, supra, 476 U.S., at 98, n. 21, 106 S.Ct., at 1724, n. 21.

Hernandez, 500 U.S., at 360. Based upon the principles of law set forth above, and Grace's failure to establish that the decision of the trial court was clearly erroneous, his Batson claim is due to be denied.

## II.  The Trial Court Did Not Err In Removing Two Sleeping Jurors From The Petit Jury.

Grace next complains that "juror misconduct and/or the court's sua sponte ruling related to same acted to deny defendant his constitutional right to trial by impartial jury." (Grace's brief at p. 36)  The claim is related to the trial court's action in removing two sleeping jurors from the panel and replacing them with the previously selected alternates.  To the extent Grace couches his claim as one of juror misconduct, it was not raised below.  To the extent Grace contends that the trial court erred by removing the jurors, the claim is without merit.  For these reasons, the claim is due to be denied.

The record reveals that following the testimony of three witnesses, the trial judge informed both parties that he had noticed two jurors "sleeping a good bit." (R. 220) Noting "that, obviously, they are not paying attention to the evidence," the court stated its intention to replace the jurors with the previously selected alternates. (R. 221)  In addition, the court took the testimony of Deputy Mike Sitzler, who had been present and watching the jury, regarding his observations of the jurors in question. (R. 223)  Deputy Sitzler corroborated the remarks of the court,

20

stating that the jurors appeared to be asleep for as much as "to or three minutes" at a time.  (R. 224)  Consistent with its expressed intent, the trial court then dismissed the two jurors, replacing them with the alternates.  (R. 226)

On appeal, Grace asserts that he is entitled to a reversal of his conviction on the basis of juror misconduct.  He basis this claim on the sleeping itself and on the failure of the two jurors to "advise [him during voir dire] that they had any problems staying awake." (Grace's brief at p. 37)  Grace did not, however, raise such a claim at trial.  Rather, his only objection to the removal of the jurors was that "the only two black people [were] taken off the jury."  (R. 222)  Because he did not raise his claim of juror misconduct below, it is not preserved for review.  "Even constitutional issues must first be raised before the trial court or they are waived." Stanley v. State, 723 So. 2d 821, 822 (Ala. Crim. App. 1998), citing Cagle v. State, 504 So. 2d 1225, 1226 (Ala. Crim. App. 1987).[2]

_____

[2]  Grace did raise in his motion for a new trial, a claim based upon the failure of the two jurors to "answer truthfully" during voir dire.  (C. 149)  This was, however

Finally, any race based claim that the trial court erred by removing the jurors is without merit.  In response to Grace's objection, the trial court plainly stated that it was "not taking them off because they are black or white or whatever," but "because they were sleeping."  (R. 222) Furthermore, as noted above, the trial court's reason for removing the jurors was corroborated by Deputy Sitzler, who testified that he witnessed the two jurors sleeping.  (R. 223)  The trial court did not abuse its discretion in removing the two jurors.  Grace's claim to the contrary should be denied.

## III. Grace's Convictions Do Not Violate The Double Jeopardy Clause.

Grace asserts that his convictions violate the Double Jeopardy Clause of the Fifth Amendment to the United States constitution.  (Grace's brief at p. 39)  Grace was convicted of two counts of robbery - one for the robbery of Ann Murphy and one for the robbery of Jack Murphy.  These convictions were proper based upon the evidence.  For that

---

too late.  "Absent a timely and sufficient objection at trial, a motion for a new trial will not preserve an issue for appellate review."  Harrison v. State, 2003 WL 1949812, at * 13 (Ala. Crim. App. Apr. 23, 2003), citing Hamrick v. State, 548 So. 2d 652 (Ala. Crim. App. 1989).

reason, and those that follow, Grace's claim is due to be denied.

"[T]he test in determining whether the charges run afoul of the Double Jeopardy Clause is whether each crime contains a statutory element not contained in the other." Baird v. State, No. CR-00-2047, 2002 WL 1397493, at *22 (Ala. Crim. App. 2002), citing Blockburger v. United States, 284 U.S. 299 (1932). Here, the two counts of robbery were separate crimes, each requiring proof of a different victim – "an element not contained in the other." Grace's contrary claim, which relies on this Court's decision in Drake v. State, 675 So. 2d 1365 (Ala. Crim. App. 1995), is simply wrong.

Robbery is a crime against the person, unlike the offense at issue in *Drake* – "'leaving the scene of an accident[,]' [which] is not a crime against the person." Id. at 1367. In McKinney v. State, 511 So. 2d 220 (Ala. 1987) – a case also erroneously relied on by Grace – the Alabama Supreme Court adopted the "majority view," allowing "for multiple convictions when more than one person is injured as the result of a single act." Id. at 225. Here, the evidence here plainly demonstrated that both

victims were "threatened [with] the imminent use of force."
Ala. Code § 13A-8-43(a)(2) (1975); see, e.g., (R. 177) (Ann
Murphy testifying that one of the perpetrators put a gun in
her face and stated, "you white bitch, I want all of your
money before I blow your fucking brains out"); (R. 232)
(Jack Murphy testifying that a gun was stuck in his face
and he was ordered to "get in the house" or be shot and
killed).  Plainly, the trial court did not err in allowing
two counts of robbery to go to the jury.  Grace's claim to
the contrary should be rejected.

**IV.  The Claim That Grace's Wife Was Improperly Denied
The Right To Assert Her Marital Privilege Is Moot.**

Grace next complains that the trial "court erred to
reversal in its ruling that [his] wife could be compelled
to testify against . . . her will."  (Grace's brief at p.
42)  His claim, relating to the marital privilege, relies
upon Section 12-21-227 of the Code of Alabama (1975), which
provides as follows:  "The husband and wife may testify
either for or against each other in criminal cases, but
shall not be compelled so to do."  For the following
reasons, Grace's claim is due to be rejected.

Grace is correct in asserting that the trial court
ruled against his wife and her assertion of the marital

24

privilege.  (R. 86-87)  Specifically, following a pretrial
hearing on the issue, the trial court questioned whether
Grace and his "wife" were actually living together as
husband and wife and, if not, whether the privilege could
be deemed waived.  (R. 86-87)  Ultimately, the trial judge
concluded that he would allow the testimony and "let a
higher court decide whether [he was] right or wrong."  (R.
87)  This Court need not make that determination, however,
because, as Grace acknowledges, the State "did not call
[his] wife to the witness stand during its case in chief .
. . ."  (Grace's brief at p. 43)

    In fact, Grace's wife did not testify at all during the
trial proceedings.  Despite this fact, Grace complains that
his "substantial rights . . . were injured" because the
testimony was "ready and available to [the State] if [he]
had presented a defense."  (Grace's brief at p. 44)  On
this basis, he asserts that his conviction should be
reversed.  Such a claim is specious, speculative, and due
to be rejected.  Plainly, any claim related to the trial
court's ruling was mooted when Grace's wife did not
testify.

V.  **The Trial Court Did Not Improperly Limit Grace's Right To Cross-Examination.**

Grace asserts that the trial "court erred to reversal in limiting [his] cross examination of a key prosecution witness." (Grace's brief at p. 45)  The claim relates to Grace's attempt to question Lawton Armstrong – the Sheriff of Henry County – about statements he made to a non-testifying co-defendant.  For the following reasons, Grace's claim is without merit and due to be denied.

Grace first complains that he was not allowed to question Sheriff Armstrong about whether Armstrong held "any personal animus towards [him]."  (Grace's brief at p. 47)  Specifically, he cites to the following portion of record:

> Q [defense counsel]:  Sheriff, do you hold any personal animus toward Mr. Grace?
>
> A:  Huh-uh.
>
> Q:  You've got to answer out loud.
>
> A:  No, sir.
>
> Q:  None?
>
> A:  (Negative response.)
>
> Q:  Let me ask you something, have you ever made the statement, and I'm going to tell you something else, Boogy, I'm going

to be there.  It's just like a – it's
just like a damn cattle prod, one of them
big old prods.  Every time the DA gets
ready to do something, I'm going to be
there sticking, 'cause I want it poured
to him.  Did you ever say that?

A:  I may have.  If it's on the tape, I
may have.

Q:  That statement was made on March the
28, 2002 during a statement of one of the
co-defendants – interrogation of one of
the co-defendants; is that right?

A:  Uh-huh, Kevin McKinnon.

Q: And you brought up about what you are
going to do to Boogy or Johnny Grace?

[Prosecutor]:  I object.  I object.  This
is irrelevant.  Any discussions between a
co-defendant.  If this is said to the
defendant, I have no objection.

(R. 280)  The parties then continued to argue over the

admissibility of the testimony.  (R. 280-88)  Contrary to

Grace's contention, however, the trial court did not

"exclude[] the evidence over the objection of the

Defendant."  (Grace's brief at p. 47)  While Grace may have

been prevented from going further into the matter, the

testimony set forth above was not stricken from the record.

Although the State moved to exclude the testimony, the

trial court did not grant the request.  (R. 283)  The jury,

therefore, heard Sheriff Armstrong acknowledge that he may

have made the statement in question and was able to

consider it.   Moreover, as was noted by the trial court,

Sheriff Armstrong's testimony was limited to matters that

did not directly implicate Grace.

> Gentlemen, first of all, the sheriff's
> testimony has only been limited to the
> fact that he found the safe or was at the
> recovery of the safe; and, secondly, he
> identified an offense report that was
> written by somebody else, and he was just
> merely the custodian of the records.   He
> has had nothing to do with the Case-In
> Chief as far a whether or not this man is
> guilty or not guilty.   So whatever he
> said, what is the relevance of it?

(R. 282)   Plainly, any limitations place upon Grace's

cross-examination of Sheriff Armstrong do not warrant a

reversal of his conviction.

Grace additionally complains that he was not allowed to

question Sheriff Armstrong about a "statement regarding a

sentencing recommendation for Co-Defendant Nicholas

McKinnon."  (Grace's brief at p. 47)  The contention is

simply not accurate.  The trial court did not prevent Grace

from questioning Sheriff Armstrong about whether he made

any deals or recommended any particular sentence for

Nicholas McKinnon."  (R. 289)  Rather, Grace was prevented

from asking about out of court statements made regarding a

28

non-testifying co-defendant.  "The latitude and extent of
cross-examination are matters within the sound discretion
of the trial court, and in the absence of abuse, that
discretion is not reversible on appeal."  Ex parte Tyson,
784 So. 2d 357, 365 (Ala. 2000), citing Ex parte Pope, 562
So. 2d 131, 134 (Ala. 1989), cert. denied, 498 U.S. 841
(1990).  Here, because there was no abuse of the discretion
on the part of the trial court, Grace's claim should be
rejected.

## VI.  Grace Was Not Convicted In Violation Of Section 12-21-222 Of The Code Of Alabama (1975).

Grace contends that the trial "court erred to reversal
in its ruling that the uncorroborated testimony of
accomplice Nicholas McKinnon would not be excluded and
would be submitted to the jury."  (Grace's brief at p. 5)
Grace raised this issue at trial after the State rested its
case.  (R. 321)  Finding sufficient corroboration, the
trial court denied Grace's motion.  (R. 322)  That decision
was correct and should be affirmed.

As noted, Grace's claim is based upon the assertion
that his conviction violates the requirements of Section
12-21-222 of The Code of Alabama (1975).  Grace, however,
presents the wrong question.  The question is not whether

29

the trial court should have excluded the testimony of the

accomplice.  Rather, the question is whether there is

sufficient evidence to corroborate the testimony of the

accomplice.  Specifically, Section 12-21-222 reads as

follows:

> A conviction of felony cannot be had on
> the testimony of an accomplice unless
> corroborated by other evidence tending to
> connect the defendant with the commission
> of the offense, and such corroborative
> evidence, if it merely shows the
> commission of the offense or the
> circumstances thereof, is not sufficient.

Ala. Code § 12-21-222 (1975).  "The evidence presented in

corroboration[, however,] does not have to be enough

standing alone to result in a conviction.  The

corroborating evidence need not be 'strong'."  Andrews v.

State, 370 So. 2d 320, 322 (Ala. Crim. App.), cert. denied,

370 So. 2d 323 (Ala. 1979).  Rather, it need only tend to

connect Webster to the offense.  See, e.g., Banks v. State,

647 So. 2d 46, 49 (Ala. Crim. App. 1994).

     The question whether there was sufficient corroboration

is one concerning the sufficiency of the evidence.  When

considering whether the requirement of 12-21-222 has been

meet, therefore, this Court must "accept as true the

evidence introduced by the State, accord the State all

legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution." White v. State, 546 So. 2d 1014, 1016 (Ala. Crim. App.), cert. denied, 546 So. 2d 1014 (Ala. 1989).  "Applying the foregoing principles of law to the facts of this case, [it is plain] that [McKinnon]'s testimony was amply corroborated and that the evidence was . . . sufficient to sustain [Grace]'s convictions." Ferguson v. State, 814 So. 2d 925, 952 (Ala. Crim. App. 2000).

Here, the State presented evidence, excluding the testimony of McKinnon, that connects Grace with the crime. Perhaps most significant - and certainly sufficient to "connect" Grace "with the commission of the offense" - the State presented non-accomplice testimony establishing that Grace was in possession of property taken from the Murphy's home.  Specifically, Tyrone Lindsey testified that, on the night of the burglary, Grace came to his house with some other individuals, including McKinnon.  (R. 159)  Lindsey stated that the group arrived in McKinnon's vehicle and proceeded to unload the safe taken from the Murphy home. (R. 159)  Additionally, according to Lindsey, Grace was

present when the safe broken into and the proceeds were divided.  (R. 160, 169)

While it was not the only corroborating evidence, the testimony of Lindsey certainly "tended to connect Grace with the commission of the offense" and, therefore was sufficient to satisfy the requirements of Section 12-21-222.  See Ware v. State, 409 So. 2d 886, 891 (Ala. Crim. App. 1981) ("Corroborative evidence need not *directly* connect the accused with the offense, but need only *tend* to do so.") (emphasis in original), writ quashed, 409 So. 2d 893 (Ala. 1982), quoting Andrews v. State, 370 So. 2d 320 (Ala. Crim. App.), cert. denied, 370 So. 2d 323 (Ala. 1979), citing State v. Canada, 481 P.2d 859, cert. denied, 404 U.S. 848 (1971).  "Corroboration need only be slight to suffice."  Ingle v. State, 400 So. 2d 938, 940 (Ala. Crim. App. 1981).   For the foregoing reasons, Grace's claim - that the evidence was insufficient to comply with Section 12-21-222 - is due to be denied.

**VII. The Trial Court's Refusal Give Grace's Requested Jury Instructions Numbers Eight And Nine Was Harmless Error.**

Grace next asserts that the trial "court erred to reversal in refusing to give [his] requested jury instructions regarding the corroboration of accomplice

testimony necessary to convict."  (Grace's brief at p. 56)
For the following reasons, the claim is due to be denied.

"Although an instruction on corroboration of accomplice
testimony should generally be given in cases such as this
one, [this Court has] recognized on numerous occasions that
the error of failing to instruct the jury on the need for
corroborative is harmless when the testimony of the
accomplice has been corroborated." Ziegler v. State, 2003
WL 596875, at *13 (Ala. Crim. App. Feb. 28, 2003), citing
Arthur v. State, 711 So. 2d 1031, 1058 (Ala. Crim. App.
1996), aff'd, 711 So. 2d 1097 (Ala. 1997).  This is so even
in capital cases.  See Ziegler, at 13-14; Duke v. State,
2002 WL 1145829, at *23 (Ala. Crim. App. May 31, 2002)
(recognizing that "[t]his Court has long applied the
harmless-error rule in capital cases where the circuit
court failed to instruct the jury on the requirement that
an accomplice's testimony be corroborated"), citing Hyde v.
State, 778 So. 2d 199, 221 (Ala. Crim. App. 1999); Arthur,
711 So. 2d at 1058-59; Gurley v. State, 639 So. 2d 557
(Ala. Crim. App. 1993); Frazier v. State, 562 So. 2d 543,
558 (Ala. Crim. App.), rev'd on other grounds, 562 So. 2d
560 (1989).

33

Here, any error was plainly harmless as Nicholas McKinnon's testimony was corroborated. (See Issue VI, supra) "Even though the court did not instruct the jury that [McKinnon] was an accomplice, his status as a codefendant was made abundantly clear through his testimony." Duke, at 24. "Accordingly, any error in the court's failure to charge the jury on the necessity of accomplice corroboration was harmless." Id.

## VIII. The Record Does Not Establish That Improper Argument By the Prosecutor Denied Grace Due Process.

Grace complains that he "was denied due process by improper argument to the jury by [the prosecutor]." (Grace's brief at p. 58) More specifically, Grace asserts that, to "bolster [the] credibility" of Nicholas McKinnon, the prosecutor was "allowed to improperly argue to the jury during closing argument that . . . McKinnon's sentence as a youthful offender was 'confidential' and 'sealed' under law which served to distract the jury from the established documentary and testimony evidence . . . ." (Grace's brief at p. 58) For the following reasons, Grace's claim is without merit and due to be denied.

The comments of the prosecutor brought into question
are not transcribed in the record.  Rather, all that
appears is Grace's objection, which reads as follows:

> The testimony that the Youthful Offender
> hearing was here in open court, and I
> heard it.  If it's sealed, how do we have
> the records and all the testimony here?
>
> THE COURT:  Okay.  Overruled.

(R. 330)  Because the portion of argument at issue does not
appear in the record, Grace's claim must be rejected.

> 'It is the appellant's duty to provide
> this court with a complete record on
> appeal.' McCray v. State, 629 So. 2d 729,
> 733 (Ala. Crim. App. 1993); *Knight v.
> State*, 621 So. 2d 394 (Ala. Crim. App.
> 1993).    'This Court cannot predicate
> error on matters not shown by the record,
> nor can we presume error from a silent
> record.'  Stegall v. State, 628 So. 2d
> 1006, 1009 (Ala. Crim. App. 1993);
> Smelcher v. State,  520 So. 2d 229 (Ala.
> Crim. App. 1987);  Abbott v. State, 494
> So. 2d 789 (Ala. Crim. App. 1986).

Rutledge v. State, 745 So. 2d 912, 919 (Ala. Crim. App.
1999), citing Jordan v. City of Huntsville, 667 So. 2d 153,
155-56 (Ala. Crim. App. 1995).

Moreover, as Grace noted within the objection quoted
above, the circumstances surrounding McKinnon's youthful
offender adjudication were fully developed at trial.
Whether sealed or not, therefore, the jury was fully aware

of McKinnon's status and was able to consider that
information for any relevant purpose.  Contrary to Grace's
contention, any comment made by the prosecutor on the
matter would not have "'so infected the trial with
unfairness as to make the resulting conviction a denial of
due process.'"  (Grace's brief at p. 59), quoting Daren v.
Wainwright, 477 U.S. 168 (1986).  Graces's claim should,
therefore, be denied.

**IX.  The Trial Court Did Not Err By Instructing The Jury on
The Applicability Of Section 13A-8-41(b) Of The Code of
Alabama (1975).**

Grace next complains that the trial "court erred to
reversal in giving [the State]'s additional jury
instruction."  (Grace's brief at p. 60)  The claim relates
to an instruction, given at the request of the State, after
the trial court had concluded its charge to the jury.   (R.
354-58)  Specifically, in relation to the charge of robbery
in the first degree, the court read directly from Section
13A-8-41(b) of the Code of Alabama (1975), which provides
that "[p]osssession then and there of an article used or
fashioned in a manner to lead any person who is present
reasonably to believe it to be a deadly weapon or dangerous
instrument, or any verbal or other representation by the

36

defendant that he is then and there so armed, is prima

facie evidence under subsection (a)[3] of this section that he

was so armed." For the following reasons, Grace's claim,

if preserved, is without merit and due to be denied.

The evidence demonstrated that two guns were involved

in the robbery of Mr. and Mrs. Murphy. (R. 116) According

to Nicholas McKinnon, an accomplice, one gun was real and

the other was a toy. (R. 116) During the trial, however,

counsel for Grace, via cross examination, attempted to at

least insinuate that both guns may have been toys. (R.

211, 254-55)[4] Moreover, on appeal, Grace asserts that

"[t]he evidence as to whether the robbers were armed with a

deadly weapon or dangerous instrument was disputed."

(Grace's brief at p. 61) Without conceding that the

evidence on this point can be credibly disputed, what is

clear is that the perpetrators represented the guns as

real. They constantly threatened to shoot the Murphy's

---

[3] "A person commits the crime of robbery in the first
degree if he violates Section 13A-8-43 and he:
(1) Is armed with a deadly weapon or dangerous
instrument; . . . ."

[4] Grace may have additionally argued this point during
closing arguments. Whether he did so is not reflected in
the record, however, because the arguments of counsel were
not transcribed. (R. 329-30)

and, at one point, stated that they would respond to any noncompliance by "blow[ing the Murphy's] fucking brains out." (R. 177, 180, 232) Section 13A-8-41(b) was plainly applicable to the evidence presented in this case. The instruction was, therefore, not improper.

Grace does not contend that the instruction was an incorrect statement of law, nor could he credibly make such an argument. As noted, the instruction consisted of a verbatim reading of Section 13A-8-41(b). Rather, his complaint is that, because this was the last instruction given, "[a] reasonable juror may have interpreted said last substantive instruction . . . as being more important, more emphasized, more disposing of disputed evidence concerning deadly weapon or dangerous instrument and more memorable than earlier unemphasized instructions that favored Defendant." (Grace's brief at p. 61) Grace, however, raised no such objection at trial. Although he objected to the instruction, he did so solely on the grounds that the prosecution had not requested that it be given during the charge conference. (R. 355) "'The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not

38

assigned at trial.'" Ex parte Coulliette, No. 1001380,
2003 WL 861639, at *2 (Ala. Mar. 7, 2003), quoting Ex parte
Frith, 526 So. 2d 880, 882 (Ala. 1987). Because Grace's
claim is not preserved, it must be rejected.

Even assuming that Grace's claim was preserved,
moreover, it is still due to be denied. As noted, the
instruction accurately reflected the law and the facts of
the case. See, e.g., Raper v. State, 584 So. 2d 544 (Ala.
Crim. App. 1991). Any claim that the timing of the
instruction resulted in a violation of the substantial
rights of Grace is entirely unsupported. His claim must,
therefore, be denied.

**X.    The Sentences Imposed Upon Grace For His Two
Convictions Of First Degree Robbery Were Within The
Statutory Range And Lawful.**

Grace asserts that the "trial court abused its
discretion in sentencing [him]" and that "the 198 year
sentence as imposed is unconstitutional." (Grace's brief
at pp. 62-67)[5] For the following reasons, both claims are
due to be denied.

---

[5] Grace raises these claims in two separate sections of
his brief. The State has, however, chosen to respond to
both under one heading.

The sentence imposed here plainly fell within the range provided by statute. "When the trial court imposes a sentence within the statutory range, this court will not review that sentence." Wooden v. State, 822 So. 2d 455, 458 (Ala. Crim. App. 2000), citing Hoosier v. State, 612 So. 2d 1352 (Ala. Crim. App. 1992). The Legislature has categorized first degree robbery as a Class A felony. Ala. Code § 13A-8-41(c) (1994). Class A felonies carry a sentencing range of "life or not more than 99 years or less than 10 years." Ala. Code § 13A-5-6(a)(1) (1994). The court did not abuse its discretion in sentencing Grace to the maximum term allowed under the statute - separate ninety-nine year sentences for his two armed robbery crimes. Jolly v. State, 2002 WL 31628700, at *10 (Ala. Crim. App. Nov. 22, 2002) (upholding trial court's order of consecutive sentences imposing the maximum sentence on each of two counts of manslaughter); see also Hammond v. State, 502 So. 2d 843, 846 (Ala. Crim. App. 1986) (maximum sentence for drug crime did not violate 8th Amendment), cert. denied, 502 So. 2d 843 (Ala. 1987), cert. denied, 482 U.S. 917 (1987); Holmes v. State, 485 So. 2d 381, 385 (Ala.

Crim. App. 1985) (same), cert. denied, 485 So. 2d 381 (Ala. 1986).

Again, "[i]t is well settled that this [C]ourt is without authority to review a sentence so long as the sentence imposed by the trial court is within the limits prescribed by our [L]egislature." Moreland v. State, 469 So. 2d 1305, 1306 (Ala. Crim. App. 1985), cert. denied, 469 So. 2d 1305 (Ala. 1986). Grace, however, asserts that his sentence differs from those typically imposed. Assuming without conceding that such is true, it would not warrant a reversal of the sentences imposed by the trial court. As noted by this Court in Moreland, the sentence should reflect the offensiveness of the crime and attitude of the defendant.

> There will always be differences in approaches to sentencing. By establishing a range of sentence, the legislative and executive branches of government showed their intent that the discretion of the judge should be employed in sentencing. Crimes are not identical. Perpetrators of crimes are not identical. Neither should sentences be identical. To contend otherwise is to advocate a form of "vending machine justice." Courts should not apply a rigid or mechanical sentencing procedure.

*Id.* at 1307.  Based on the court's proper consideration of

the circumstances underlying the case and Grace's demeanor

and refusal to accept responsibility, this Court should

affirm the sentences imposed.

## XI.  The Trial Court Properly Denied Grace's Motion For A Judgment Of Acquittal.

Grace's final claim is that the trial "court erred to

reversal in denying [his] motion for judgment of acquittal

and/or motion for new trial."  (Grace's brief at p. 68)

(R. 323)  This claim was raised at trial, following the

close of the State's case.  The motion was denied.  That

decision was correct and should be affirmed.

In determining the sufficiency of the evidence to

sustain the conviction, this Court must "accept as true the

evidence introduced by the State, accord the State all

legitimate inferences therefrom, and consider the evidence

in the light most favorable to the prosecution." White v.

State, 546 So. 2d 1014, 1016 (Ala. Crim. App.), cert.

denied, 546 So. 2d 1014 (Ala. 1989).  Moreover, "'[t]he

test to be applied [in reviewing a conviction . . . ] is

whether the jury might reasonably find that the evidence

excluded every reasonable hypothesis but guilt; not whether

such evidence excludes every reasonable hypothesis but guilty, but whether a jury might reasonably so conclude.'" Hardeman v. State, 651 So. 2d 59, 65 (Ala. Crim. App. 1994) (brackets in original) quoting Cumbo v. State, 368 So. 2d 871, 874 (Ala. Crim. App. 1978).  An appellate court may interfere with a jury's verdict only where it reaches a clear conclusion that the finding and judgment are wrong.

Applying these well-established principles of law to the facts of this case, it becomes clear that there was sufficient evidence to support the verdict of the jury.  As noted in Issue VI of this brief, the testimony of Nicholas McKinnon was sufficiently corroborated – there was other independent evidence tending to connect Grace to the offense – and, therefore, can be considered in evaluating Grace's sufficiency of the evidence claim.  When McKinnon's testimony is considered in conjunction with the other evidence presented, it is clear that the evidence was sufficient to allow the case to go to the jury.

Indeed, the evidence showed that, of the individuals involved in the robbery, Grace was the only one who knew the victims, having worked for them and having been in their home.  Additionally, McKinnon testified that Grace

43

was the one who drove to the Murphy home for the purpose of committing the robbery.  (R. 115-16)  Grace informed the others that the Mr. Murphy kept a safe in his home.  (R. 116)  Tyrone Lindsey testified that, on the night of the burglary, Grace came to his house with some other individuals, including McKinnon.  (R. 159)  The group arrived in McKinnon's vehicle and proceeded to unload the safe taken from the Murphy home.  (R. 159)  Furthermore, Grace participated in breaking into the safe and shared in the proceeds.  (R. 160, 169)  This evidence, and that set forth in the "Statement of the Facts" portion of this brief was plainly sufficient to allow the case to go to the jury. See Woods v. State, 724 So. 2d 40, 48 (Ala. Crim. App. 1997).  Grace's claim is, therefore, due to be denied.

44

## CONCLUSION

For the above reasons, Grace is not entitled to any relief.  His convictions and sentences should be affirmed.

Respectfully submitted,

William H. Pryor Jr.
*Attorney General*

Michael B. Billingsley
*Assistant Attorney General*

45

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August, 2003,
I did serve a copy of the foregoing on the attorney for the
Appellant, by placing the same in the United States Mail,
postage prepaid and properly addressed as follows:

> Gregory A. DaGian, Esquire
> 406 Dothan Road
> Suite B
> Abbeville, AL 36310

Michael B. Billingsley
Assistant Attorney General

ADDRESS OF COUNSEL:

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama   36130
(334) 242-7300