Billingsley 51243

APPELLATE NO. CR-02-1017

IN THE COURT OF CRIMINAL APPEALS


JOHNNY C. GRACE, JR.,

    APPELLANT,

       vs.

STATE OF ALABAMA,

    APPELLEE.


ON APPEAL FROM HENRY COUNTY CIRCUIT COURT

CASE NOS. CC-2002-205 AND CC-2002-206

APPLICATION FOR REHEARING
AND
BRIEF IN SUPPORT


GREGORY A. DaGIAN
ATTORNEY FOR APPELLANT
406 DOTHAN RD., STE. B
ABBEVILLE, ALABAMA  36310
TELEPHONE: (334) 585-1394
FACSIMILE: (334) 585-1395



EXHIBIT
10

### IN THE COURT OF CRIMINAL APPEALS

JOHNNY C. GRACE, JR.     )
        Appellant,

                )

      vs.           Appellate No.:  CR-02-1017
                )  Henry Circuit Court: 02-205,-206

STATE OF ALABAMA,
        Appellee.     )

### APPLICATION FOR REHEARING

COMES NOW Appellant who respectfully submits pursuant to Rule 40, Ala.R.App.P. the following points of law or the facts the Appellant believes this Honorable Court overlooked or misapprehended in its Memorandum released 24 October 2003:

I.   The record contains <u>Batson</u> objections as to discrimination in number of strikes of blacks relative to total number of blacks on strike list, discriminatory pattern of strikes of blacks and insufficiency of stated reasons of strikes of blacks inferring pretext or sham;

II.   Objection to sua sponte removal of petit jurors for juror misconduct (acts of sleeping and/or failures to respond to voir dire questioning regarding inability to stay awake) was raised at trial or in timely filed Motion For New Trial;

V.   The record is clear that Appellant was not allowed to cross-examine Sheriff Armstrong at trial about Sheriff Armstrong's March 2002 statement, that had been duly recorded and transcribed by Sheriff Armstrong's Henry County Sheriff's Department, concerning Sheriff Armstrong's lenient sentencing

1

recommendation for Nicholas McKinnon that key prosecution witness and Co-Defendant Nicholas McKinnon ultimately received in May 2002;

VII. Failure to give requested jury instructions not harmless error as Appellant was denied instructions on correct propositions of law and was thereby denied jury determination on issue of sufficiency of corroboration of accomplice testimony necessary for conviction of felony pursuant to Ala. Code 1975, Sec. 12-21-222;

X. The disproportionality and unconstitutionality of the 198 year sentence pursuant to the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution and Rule 26.8, Ala.R.Crim.P. was totally overlooked;

XI. Toy gun evidence was totally overlooked, there was insufficient credible evidence establishing Defendant's complicity in two counts of robbery in the first degree and there was absolutely no physical evidence offered or admitted at trial linking Defendant to the commission of two counts of robbery in the first degree and therefore, a prima facie case of two counts of robbery in the first degree was not established beyond a reasonable doubt.

## ADDITIONAL STATEMENT OF THE FACTS

On December 16, 2001 at approximately 9:10 p.m. Mr. and Mrs. Jack Murphy, a well-known and well-liked white, married couple (forty year marriage) in their early to mid 60s, were robbed in their home in rural Henry County by four young black males who had their faces partially or fully covered. C201-202; R229, 231, 279. The four robbers did not act like they knew the Murphys. R216. Two of the males held in their hands what appeared to be pistols. R231. Mr. Murphy initially grabbed one of the pistols and it did not feel real to him. R254. The pistol grabbed by Mr. Murphy "felt light, very light" to Mr. Murphy. R255. Mr. Murphy never touched the other pistol, which was silver in color like the one he had grabbed, and both pistols looked basically the same to him. R255. Both pistols were chrome. C201, R 279. During the robbery Mr. Murphy worried that he and his wife might be shot if the young black males had real guns. R267. During the course of the robbery, which lasted approximately forty-five minutes, Mrs. Murphy asked Mr. Murphy if he thought the pistols were real. R211, 245, 267. And during the course of the robbery, Mrs. Murphy noticed that the color of the pistols or something about the pistols did not seem exactly right and it flashed through her mind that at least one of the pistols was not real. R211. Mrs. Murphy cannot say for sure if

either or both of the pistols used were toys or were real. R211. Immediately after the robbery Mr. Murphy went to his barn looking for the four robbers. R248.

The four robbers forced themselves into the Murphy residence with Mr. Murphy through the open back door to the house that Mr. Murphy had gone out of to get a box. C202; R231, 233, 279. The robbers began looking throughout the house for money. R180. After approximately twenty minutes of searching throughout the house opening drawers and the like one of the robbers found a floor safe that had been located since 1975 in a closet under the only stair well in the house. R256. One of the robbers got Mrs. Murphy's billfold out of her car and then took Mrs. Murphy back into the house where the other robbers had used packing tape to tape Mr. Murphy's hands and tape him to a straight back chair in the kitchen. R187. Mrs. Murphy was similarly taped to a straight back chair in the kitchen. R187. Mrs. Murphy requested that she not be taped too tightly and that no tape be placed on Mr. Murphy's mouth so that his breathing would not be hindered and the robbers complied with her request. R187-188. No tape was placed over the mouth or on the faces of Mr. or Mrs. Murphy and they both were taped loosely to the straight back chairs in the kitchen. R187-188, 260. Although the robbers threatened the Murphy's with bodily harm, the robbers did not

physically harm Mr. Murphy or Mrs. Murphy. R260. Shortly after the robbers left their home the Murphys were able to free themselves from the tape and call E-911. R198. Deputy John Gilmer and Investigator Clyde Hornsby with the Henry County Sheriff's Department responded to the E-911 call at the Murphy residence and completed an Alabama Uniform Incident/Offense Report at 10:30 p.m. that night. C201-202, R279.

Defendant was a former worker for the Murphys and had last worked for them around their house and farm according to Mrs. Murphy "several months" prior to the robbery and according to Mr. Murphy two and one half months prior to the robbery. R213, 253. Defendant has a distinctive real deep, deep voice and Mr. Murphy did not hear that voice during the robbery even though all four robbers jabbered back and forth amongst themselves during the robbery. R235, 264. Mrs. Murphy had known the Defendant for many years prior to the robbery (she had been the school nurse at the school that Defendant attended) and when looking and listening to the four robbers during the course of the robbery over a forty-five minute period Mrs. Murphy did not think of Defendant. R172, 212-213. Prior to December 16, 2001 Mrs. Murphy's opinion of Defendant was that he was a very nice person, that he did good work and that he was very mannerly. R212. Mrs. Murphy

testified that no one other than Defendant had worked for the Murphys in the two years prior to the robbery on December 16, 2001. R213. Mr. Murphy testified that a number of "school boys" had worked for him in the year prior to the robbery on December 16, 2001. R254. Mr. Murphy spoke with Deputy John Gilmer and Investigator Clyde Hornsby at his home immediately after this robbery on December 16, 2001 and the Incident/Offense Report completed by Deputy Gilmer and co-signed by Investigator Hornsby states that the robbers were not known to Mr. Murphy and that there was no prior relationship (i.e. former worker, etc.) known to Mr. Murphy concerning the robbers. C2, 201-202; R278-279. The Murphys stayed in their home on December 16, 2001 and thereafter after the robbery. R199-200.

Co-defendant Nicholas McKinnon was the chief witness for Plaintiff at Defendant's trial on October 16, 2002 and he testified that he, Kevin McKinnon, Todd Blackmon and Christopher Lindsey entered the Murphy's residence on December 16, 2001 and robbed them and that he used a toy gun during the robbery. R143. Nicholas McKinnon is an acknowledged liar. R144. Nicholas McKinnon acknowledged that if Defendant had really taken him and the other three robbers to the Murphys to steal their safe that they would have found the safe before looking throughout the house for twenty minutes. R148-149.

Nicholas McKinnon entered pleas of guilty to the robbery of the Murphys on May 17, 2002 and received youthful offender treatment, a split sentence of boot camp followed by probation on a three year base sentence, concurrent sentencing, a fine of $500 and a victims compensation fund assessment of $500 in Henry County Case Nos. CC-2002-199 and CC-2002-200.  C203-204; R320.  Prior to being granted youthful offender, entering pleas of guilty and being sentenced on May 17, 2002, Nicholas McKinnon received a favorable written recommendation regarding youthful offender treatment and sentencing from Alabama Probation and Parole Officer William Weber.  R300, 312. Plaintiff did not notify the Murphys of Nicholas McKinnon's May 17, 2002 sentencing hearing.  R92.  Defendant advised the Court prior to trial during a pre-trial motion hearing that he had evidence that Henry County Sheriff Lawton Ed Armstrong acknowledged during a tape recorded interrogation of Co-Defendant Kevin McKinnon in March 2002, later transcribed by the Henry County Sheriff's Department, that the Sheriff recommended a split sentence and probation for Nicholas McKinnon.  R91-92.  The Court advised Defendant that he would be able to present evidence at trial regarding Sheriff Armstrong's March 2002 statement.  R92.  At trial Defendant was not allowed to use the Sheriff's March 2002 statement acknowledging a split sentence recommendation for Nicholas

McKinnon in Defendant's cross examination of Sheriff Armstrong. R288-289.

Prior to Nicholas McKinnon testifying in Defendant's case on October 16, 2002 Plaintiff had him transported to the Houston County Jail in Dothan and "locked down" and Nicholas McKinnon got the message that he had to testify like Plaintiff wanted him to testify. R146-147. Prosecution witness Tyrone Lindsey claimed that five individuals including Defendant showed up at his house on the night of the Murphy robbery and broke into a safe in his yard by beating it with an axe and that he did not know what was going on. R161. Lindsey was initially charged with a felony for his involvement, which was reduced to a misdemeanor with suspended sentence and probation. R166. Lindsey was on probation when he testified for Plaintiff. R162.

During jury selection in Defendant's case Plaintiff used his third, fourth, fifth, sixth, ninth and tenth peremptory strikes to eliminate six of the remaining eight black members on the strike list (Miriam Onadeko who was related to Defendant had been challenged for cause). C66, 71; R25-26. Defendant intimated to the Court that Plaintiff's exercise of his peremptory strikes constituted purposeful racial discrimination and that the reasons given by Plaintiff were a

sham or pretextual.  R28.  The Court denied Defendant's <u>Batson</u> challenge.  R29.

Defendant's requested written jury instructions No. 8 and No.9 covering sufficiency of corroboration of accomplice testimony necessary for conviction of felony were refused by the Court over the objection of Defendant.  C84.85;  R326-327. Requested jury instruction No. 8 was verbatim <u>Ala. Code</u> 1975, Sec. 12-21-222 as follows:

> "A conviction of felony cannot be had on
> the testimony of an accomplice unless corroborated
> by other evidence tending to connect the defendant
> with the commission of the offense, and such
> corroborative evidence, if it merely shows the
> the commission of the offense or the circumstances
> thereof, is not sufficient." C84.

Requested jury instruction No. 9 was from the holding of <u>Massey v. State</u>, 497 So.2d 590 (Ala.Crim.App 1986) wherein the Alabama Court of Criminal Appeals cited as authority the Alabama Supreme Court holding of <u>Sorrell v. State</u>, 31 So.2d 82, 83 (1947) as follows:

> "The corroboration necessary to support the
> testimony of an accomplice must be of a substantive
> character, must be inconsistent with the innocence
> of the accused, and must do more than raise a
> suspicion of guilt." C85.

The jury seated to hear Defendant's case (excluding the two white alternates) was comprised of ten whites and two blacks, the black members being Trumma Neal and Henry Lynn. C65-66, 71.  After less than three hours of testimony Ms. Neal

and Mr. Lynn were removed from the jury by the Court sua sponte without warning for sleeping over the objection of the Defendant. R220, 226. Consequently, an all white jury found Defendant guilty of two counts of robbery in the first degree. C61-68, 71. Defendant further objected to the jurors' misconduct in a timely filed Motion For New Trial, which was denied. C149. Defendant was sentenced to 198 years incarceration on January 23, 2003 in contravention of Rule 26.8, Ala.R.Crim.P. and the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution. January 23, 2003 R13-14.

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully request rehearing on the before-mentioned points of law or the facts the Appellant believes this Honorable Court overlooked or misapprehended in its Memorandum released 24 October 2003.

RESPECTFULLY SUBMITTED this 29th day of October, 2003.


GREGORY A. DaGIAN    (DAG 003)
Attorney for Appellant
406 Dothan Rd., Ste B
Abbeville, AL  36310
Telephone: (334) 585-1394
Facsimile: (334) 585-1395

## TABLE OF CONTENTS

TABLE OF CONTENTS................................................................…i

TABLE OF AUTHORITIES............................................................ii

STATEMENT OF THE CASE...........................................................1

STATEMENT OF THE ISSUES.......................................................…2

STATEMENT OF THE STANDARD OF REVIEW.....................................…2

SUMMARY OF THE ARGUMENT.......................................................3

ARGUMENT I.......................................................................…4

ARGUMENT II.....................................................................…5

ARGUMENT V.......................................................................6

ARGUMENT VII...................................................................…9

ARGUMENT X......................................................................10

ARGUMENT XI.....................................................................11

CONCLUSION....................................................................…12

CERTIFICATE OF SERVICE........................................................12

STATEMENT CONCERNING FONT AND TYPE STYLE...........................13

LIST OF ADVERSE RULINGS......................................................13

APPENDIX.......................................................................13

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>:

<u>Anderson v. State</u>,
    455 So.2d 957, 958 (Ala.Crim.App. 1984)......................10

<u>Batson v. Kentucky</u>,
    476 U.S. 79 (1986).................................................4

<u>Burns v. State</u>,
    155 So.2d 561 (1934).............................................9

<u>Cooper v. State</u>,
    526 So.2d 602 (Ala.Crim.App. 1986)...................7

<u>Ex parte Bird</u>,
    594 So.2d 676 (Ala. 1991)....................................5

<u>Ex parte Branch</u>,
    526 So.2d 609 (Ala. 1987)....................................5

<u>Ex parte Chavers</u>,
    361 So.2d 1106 (Ala. 1978)..................................9

<u>Ex parte Willie C. Dobyne</u>,
    805 So.2d 763 (Ala. 2001)...................................6

<u>Ex parte Maddox</u>,
    502 So.2d 786 (Ala. 1986)...................................10

<u>Moody v. State</u>,
    100 So.2d 733 (1957)............................................7

<u>Perry v. Brakefield</u>,
    534 So.2d 602 (Ala. 1988)...................................7

<u>Solem v. Helm</u>,
    463 U.S. 277 (1983)............................................10

<u>Wilson v. State</u>,
    [Ms. Cr-97-1494, August 31, 2001]
    ___ So.2d ___ (Ala.Crim.App. 2001)...................10

**CONSTITUTIONAL AMENDMENTS:**

U.S. Const. amend VI..................................................................5,6

U.S. Const. amend VIII................................................................10

**RULES:**

Rule 401, Ala.R.Evid...................................................................7

Rule 611(b), Ala.R.Evid..............................................................6

Rule 611(b), Ala.R.Evid., Advisory Committee's Notes.............7

**STATUTES:**

Ala. Code 1975, Sec. 12-21-137.....................................................7

Ala. Code 1975, Sec. 12-21-222.....................................................9

Ala. Code 1975, Sec. 13A-8-41(a)(1)...........................................11

## STATEMENT OF THE CASE

On December 16, 2001 at approximately 9:10 p.m. Mr. and Mrs. Jack Murphy were robbed in their home in rural Henry County by four young black males who had their faces partially or fully covered. C201-202, R279. The robbers took from the Murphy residence and premises a floor safe, United States currency and a cell phone and left the Murphys physically unharmed but restrained by packing tape in straight back chairs. R260. The March Term 2002 Henry County Grand Jury issued two indictments against Defendant alleging two counts of robbery in the first degree. C26-27.

On October, 15, 2002 Defendant's cases were called to trial and a jury was qualified and seated and then excused until October 16, 2002 at 9:00 a.m. while the Court heard pre-trial motions by Defendant. R5-36. On October 16, 2002 at 9:00 a.m. the trial of Defendant started and at 3:30 p.m. Plaintiff and Defendant gave closing arguments. R327. After closing arguments the jury was excused for the day and told to report back the next morning at 9:00 a.m. R331. On October 17, 2002 at 9:00 a.m. the jury was charged and began deliberations. R359. After deliberating approximately two hours the jury returned guilty verdicts of robbery in the first degree in both cases. R363. After sentencing hearing on January 23, 2003 the Court sentenced Defendant to ninety-

nine years, a $5,000.00 fine and a $1,500.00 victims compensation fund assessment in each case and specifically provided said periods of incarceration to run consecutively. January 23, 2003 R13-14.  Thus this appeal.

### STATEMENT OF THE ISSUES

I.   WHETHER THE COURT ERRED TO REVERSAL IN DENYING DEFENDANT'S BATSON CHALLENGE TO PLAINTIFF'S PURPOSEFUL RACIAL DISCRIMINATION DURING JURY SELECTION?

II.  WHETHER JUROR MISCONDUCT AND/OR THE COURT'S SUA SPONTE RULING RELATED TO SAME ACTED TO DENY DEFENDANT HIS CONSTITUTIONAL RIGHT TO TRIAL BY IMPARTIAL JURY?

V.   WHETHER THE COURT ERRED TO REVERSAL IN LIMITING DEFENDANT'S CROSS EXAMINATION OF A KEY PROSECUTION WITNESS?

VII. WHETHER THE COURT ERRED TO REVERSAL IN REFUSING TO GIVE DEFENDANT'S REQUESTED JURY INSTRUCTIONS REGARDING CORROBATION OF ACCOMPLICE TESTIMONY NECESSARY TO CONVICT?

X.   WHETHER THE SENTENCES AS IMPOSED ARE UNCONSTITUTIONAL?

XI.  WHETHER THE COURT ERRED TO REVERSAL IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR MOTION FOR NEW TRIAL?

### STATEMENT OF THE STANDARD OF REVIEW

The standard of review for **Issues I, V, VII**, and **XI** is whether the trial court abused its discretion.

The standard of review for **Issue II** is whether the juror misconduct might have prejudiced the Defendant and whether the trial court abused its discretion.

The standard of review for **Issue X** is whether the sentence is grossly disproportionate to the offense.

## SUMMARY OF THE ARGUMENT

Regarding **Issue I**, the Court erred to reversal in denying Defendant's Batson challenge to Plaintiff's purposeful racial discrimination in striking six of the remaining eight blacks on the strike list during jury selection. Plaintiff's explanations for its peremptory strikes of blacks were shams and pretextual.

Regarding **Issue II**, juror misconduct by the only two black members of the jury prejudiced Defendant's right to an impartial jury and the Court sua sponte abused its discretion when it discharged the jurors without warning.

Regarding **Issue V**, the Court erred to reversal in limiting Defendant's cross-examination of a key prosecution witness.

Regarding **Issue VII**, the Court abused its discretion when it refused to give Defendant's requested jury instructions that were correct propositions of law regarding corroboration of accomplice testimony necessary to convict.

Regarding **Issue X**, the 198 year sentence is grossly disproportionate to the offense and constitutes cruel and unusual punishment.

Regarding **Issue XI**, the trial court erred to reversal in denying Defendant's Motion For Judgment of Acquittal and/or Motion For New Trial where there was insufficient evidence regarding the use of a deadly weapon or dangerous instrument, there was insufficient credible evidence that Defendant procured, induced or caused the robbers to commit the offense or aided or abetted the robbers to commit the offense and there was absolutely no physical evidence offered or admitted at trial linking Defendant to the commission of the crime.

## I

**THE COURT ERRED TO REVERSAL IN DENYING DEFENDANT'S BATSON CHALLENGE TO PLAINTIFF'S PURPOSEFUL RACIAL DISCRIMINATION DURING JURY SELECTION.**

Plaintiff systematically and purposely discriminated against members of the black race during jury selection by using its peremptory strikes to eliminate six out of eight remaining black venirepersons from the strike list in violation of the United States Supreme Court holding in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed 2d. 69 (1986). Plaintiff used his third, fourth, fifth, sixth, ninth and tenth peremptory strikes to eliminate members of the black race from Defendant's (a member of the black race) jury. C61-68, 71. The record contains Batson objections as to discrimination in number of strikes of blacks relative to total number of blacks on strike list, discriminatory pattern

4

of strikes of blacks and insufficiency of stated reasons of strikes of blacks inferring pretext or sham.  "Once a prima facie case has been established, a presumption is created that the peremptory challenges were used to discriminate against black jurors."  Ex parte Branch, 526 So.2d 609, 623 (Ala. 1987),  "When the trial court has required a party to state reasons for the strikes, that party must articulate reasons that are clear, specific and legitimate, that relate to the particular case, and that are nondiscriminatory."  Ex parte Bird, 594 So.2d 676, 679 (Ala. 1991).  The Alabama Supreme Court has held that a State's failure to engage in a meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination.  Ex parte Bird, 594 So.2d 676, 683 (Ala. 1991).

## II

**JUROR MISCONDUCT AND/OR THE COURT'S SUA SPONTE RULING RELATED TO SAME ACTED TO DENY DEFENDANT HIS CONSTITUTIONAL RIGHT TO TRIAL BY IMPARTIAL JURY.**

The Sixth Amendment to the United States Constitution provides in pertinent part:

> "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed…"

5

After less than three hours of testimony in the morning of the first (and only) day of trial Ms. Neal and Mr. Lynn were removed by the Court sua sponte without warning for sleeping over the objection of the Defendant. R220, 226. An objection to the Court's sua sponte removal of petit jurors for juror misconduct (acts of sleeping and/or failures to respond to voir dire questioning regarding inability to stay awake) was raised at trial or in timely filed Motion For New Trial. R220, 226, C149. For obvious reasons, Defendant sought to include members of his own race on his jury and Ms. Neal and Mr. Lynn's gross misconduct acted to deny Defendant a trial by an impartial jury. In Ex parte Willie C. Dobyne, 805 So.2d 763, 771 (Ala. 2001) the Alabama Supreme Court reemphasized that:

> "The proper standard for determining whether juror misconduct warrants a new trial, as set out by this Court's precedent, is whether the misconduct might have prejudiced, not whether it actually did prejudice, the defendant." (Emphasis added.)

### V

**THE COURT ERRED TO REVERSAL IN LIMITING DEFENDANT'S CROSS EXAMINATION OF A KEY PROSECUTION WITNESS.**

The Sixth Amendment to the United States Constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him." Alabama Rule of Evidence 611(b)

provides in pertinent part:  "The right to cross-examine a witness extends to any matter relevant to any issue and to matters affecting the credibility of the witness..."

> "Rule 611(b) continues Alabama's present position as a 'wide open rule' jurisdiction regarding matters that may be inquired about on cross-examination. Questions on cross-examination are appropriate as long as they are relevant either to credibility or to any material issue in the case.  Moody v. State, 267 Ala. 204, 100 So.2d 733 (1957); Cooper v. State, 526 So.2d 602 (Ala.Crim.App. 1986)."

Ala. R. Evid. 611(b), Advisory Committee's Notes.

Ala. Code 1975, Sec. 12-21-137 provides in pertinent part: "The right to cross-examination, thorough and sifting, belongs to every party as to the witnesses called against him..." Alabama Rule of Evidence 401 provides:  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

> "In Alabama, a party is entitled to a thorough and sifting cross-examination of the witnesses against him... [T]he trial court is vested with considerable control over the scope of cross-examination, and its rulings thereon will not be reversed in the absence of a gross abuse of discretion that causes substantial injury to the objecting party.... The trial court may not, however, limit cross-examination as to a relevant and material matter until the examining party has substantially exercised his right to question the witness thereon."

Perry v. Brakefield, 534 So.2d 602, 607-08 (Ala. 1988).

The record is clear that Appellant was not allowed to cross-examine Sheriff Armstrong at trial about Sheriff Armstrong's March 2002 statement, that had been duly recorded and transcribed by Sheriff Armstrong's Henry County Sheriff's Department, concerning Sheriff Armstrong's lenient sentencing recommendation for Nicholas McKinnon that key prosecution witness and Co-Defendant Nicholas McKinnon ultimately received in May 2002. Sheriff Armstrong was asked about his sentencing recommendation for Nicholas McKinnon in his March 2002 statement as follows:

> "...it's like the other day, I had one of the lawyers come up here and tell me---and was trying to work out a deal with one of his clients and sat down in the chair over there. He said, Sheriff, I see where you recommended so and so and so, and you didn't have no objection to him getting a split sentence. I said, I don't. He said, well, how about my client, my client was with him. I said, I do." R288.

The matter excluded by the Court was highly relevant because it touched upon the material issue in the case whether Co-Defendant Nicholas McKinnon's accomplice testimony implicating Defendant was true or a lie bartered for with favorable treatment from Plaintiff or its agents. The Court grossly abused its discretion in limiting Defendant's cross-examination and the substantial rights of Defendant were injured thereby which requires that his convictions be reversed.

## VII

**THE COURT ERRED TO REVERSAL IN REFUSING TO GIVE DEFENDANT'S REQUESTED JURY INSTRUCTIONS REGARDING CORROBORATION OF ACCOMPLICE TESTIMONY NECESSARY TO CONVICT.**

In Ex parte Chavers, 361 So.2d 1106, 1107 (Ala. 1978) the Alabama Supreme Court set out circumstances in which a criminal defendant is entitled to jury instructions when it stated:  "(O)ur decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of the case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility. Burns v. State, 229 Ala. 68, 155 So.2d 561 (1934)."

Defendant's requested written jury instructions Nos. 8 and 9 were inexplicably refused by the Court and not given. C84-85;  R326-327.  Requested jury instructions 8 and 9 are correct statements of the law, are not misleading or confusing, and are not covered elsewhere in the trial court's instructions to the jury.  The failure to give requested jury instructions was not harmless error as Defendant was denied instructions on correct propositions of law and was thereby denied jury determination on issue of sufficiency of corroboration of accomplice testimony necessary to finding of guilt pursuant to Ala. Code 1975, Sec. 12-21-222.

**9**

## X

**THE 198 YEAR SENTENCE AS IMPOSED IS UNCONSTITUTIONAL.**

The Eighth Amendment to the United States Constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Said sentence as imposed, given the underlying facts of these cases, is grossly disproportionate to the offense committed and constitutes cruel and unusual punishment prohibited by the Eight Amendment.    The victims, by their own admission, suffered no physical harm.    R260.

"Proportionality of sentence is certainly a vital constitutional guarantee."  Anderson v. State, 455 So.2d 957, 958 (Ala.Crim.App. 1984) (citing Solem v. Helm, 463 U.S. 277 (1983).  The Alabama Supreme Court has stated:

> "However, the appellate courts may review a sentence, which, although within the prescribed limitation, is so disproportionate to the offense charged that it constitutes a violation of a defendant's Eighth Amendment rights.  The United States Supreme Court in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), recognized that reviewing courts should grant substantial deference to the authority of the legislatures in determining the kinds and limits of punishment for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals.  Yet, the sentence should be proportionate to the crime." (Emphasis added.)

Ex parte Maddox, 502 So.2d 786, 789-90 (Ala. 1986).

This Honorable Court in Wilson v. State, [Ms. CR-97-1494, August 31, 2001] __ So.2d __ (Ala.Crim.App. 2001) reversed a

10

sentence as imposed within the range of punishment allowed by law and held that current Eighth Amendment jurisprudence requires a "narrow proportionality review" of disproportionate sentences.

## XI

**THE COURT ERRED TO REVERSAL IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR MOTION FOR A NEW TRIAL.**

Plaintiff failed to make prima facie cases for two counts of Robbery in the First Degree. There was insufficient evidence presented at trial that an actual deadly weapon or dangerous instrument was used in the commission of the robbery as required by Ala. Code 1975, Sec. 13A-8-41(a)(1). During the robbery, the victims individually and collectively questioned whether the two handguns brandished were real or toys. C201; R211, 245, 248, 254-255, 267, 269, 279. There was insufficient credible evidence presented at trial that Defendant procured, induced or caused the robbers to commit the offenses of robbery in the first degree. There was absolutely no physical evidence offered or admitted at trial linking Defendant to the commission of the robbery. Accordingly, the Court erred to reversal in denying Defendant's Motions For Judgment of Acquittal and/or Motion For New Trial.

## CONCLUSION

For the foregoing reasons, individually and cumulatively, Defendant respectfully seeks from this Honorable Court reversal of the judgments of conviction and sentence by the Circuit Court of Henry County in State of Alabama v. Johnny C. Grace, Jr., Case Nos. CC-2002-205 and 206.

Respectfully submitted this 29th day of October, 2003.

GREGORY A. DaGIAN    (DAG 003)
Attorney for Appellant
406 Dothan Rd., Ste. B
Abbeville, AL  36310
Telephone: (334) 585-1394
Facsimile: (334) 585-1395

## CERTIFICATE OF SERVICE

I certify that I have served an exact copy of the foregoing Application For Rehearing and Supporting Brief of Appellant on the Office of the Attorney General, 11 S. Union St., Third Floor, Montgomery, Alabama, 36130, by placing same in the U.S. Mail, properly addressed, with adequate postage affixed thereto this 29th day of October, 2003.

GREGORY A. DaGIAN    (DAG 003)
Attorney for Appellant
406 Dothan Rd., Ste. B
Abbeville, AL  36310
Telephone: (334) 585-1394
Facsimile: (334) 585-1395

## STATEMENT CONCERNING FONT AND TYPE STYLE

I certify that access to equipment capable of producing print in Courier New 13 font and type is not reasonably available and the font and type style utilized in the Application For Rehearing and Supporting Brief constitutes the closest approximation to Courier New 13 available.

_____
GREGORY A. DaGIAN
Attorney for Appellant

| LIST OF ADVERSE RULINGS | TRANSCRIPT PAGE |
|---|---|

Batson challenge denied.......................................................29

Sua sponte dismissal of jurors.........................................226

Objections limiting cross examination sustained..........283, 289

Motion For Judgment of Acquittal denied........................324

Defendant's requested jury instructions denied...........326

All Post-Trial Motions denied.................. March 7, 2003 10

### APPENDIX

U.S. Const. amend VI............................................................A1-2

U.S. Const. amend VIII........................................................A2

Rule 26.8, Ala.R.Crim.P. ...................................................A3-4

Rule 401, Ala.R.Evid. ........................................................A5

Rule 611(b), Ala.R.Evid. ...................................................A6

Advisory Committee's Notes to
      Rule 611(b), Ala.R.Evid. .........................................A7

Ala.Code 1975, Sec.12-21-137................................................A8

Ala.Rule 1975, Sec 12-21-222................................................A9

Ala.Rule 1975, Sec. 13A-8-41................................................A10

Ala.Rule 1975, Sec. 13A-8-43................................................A11

Carolina, January 19, 1790; New Hampshire, January 25, 1790; Delaware, January 28, 1790; Pennsylvania, March 10, 1790; New York, March 27, 1790; Rhode Island, June 15, 1790; Vermont, November 3, 1791, and Virginia, December 15, 1791. The following of the thirteen original states did not ratify until the year 1839: Massachusetts, March 2; Georgia, March 18; Connecticut, April 19.

### [AMENDMENT II]

#### [Right; keeping and bearing arms]

A well-regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed.

### [AMENDMENT III]

#### [Soldiers; quartering]

No soldier shall, in time of peace be quartered in any house, without the consent of the owner, nor in time of war, but in a manner to be prescribed by law.

### [AMENDMENT IV]

#### [Right; security against unreasonable searches and seizures]

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

### [AMENDMENT V]

#### [Rights; persons in criminal proceedings]

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

### [AMENDMENT VI]

#### [Rights; speedy and public trial, nature of accusation, assistance of counsel, etc.]

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascer-

17

tained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

### [AMENDMENT VII]

#### *[Jury trial; civil cases]*

In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law.

### [AMENDMENT VIII]

#### *[Excessive bail or fines — Cruel and unusual punishments]*

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

### [AMENDMENT IX]

#### *[Rights of Constitution; no denial of other rights]*

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

### [AMENDMENT X]

#### *[Powers; reservation to states or people]*

The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people.

### [AMENDMENT XI]

#### *[Judicial power; restriction]*

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

**Note.** — The eleventh amendment of the Constitution of the United States was proposed to the legislatures of the several states by the third congress, on the 4th of March, 1794, and was declared in a message from the president to congress, dated the 8th of January, 1798, to have been ratified by the legislatures of three fourths of the states.

### [AMENDMENT XII]

#### *[President and Vice-President; election]*

The electors shall meet in their respective states, and vote by ballot for president and vice-president, one of whom, at least, shall not be an inhabitant

18

A2

*Rule 26.7. Presence of the defendant.*

The defendant has the right to be present at the sentence hearing and at sentencing. Failure of the defendant to appear at the hearing or for sentencing will not delay the pronouncement and entry of judgment and sentence if the defendant's right to be present has been waived, either in writing or by the defendant's nonappearance after notice of the time, date, and place of the sentence hearing or sentencing.

**Editor's note.** — Former similar law: ARCrP, Temporary Rule 7.

### Committee Comments

Rule 26.7 requires the presence of the defendant at the sentence hearing and at sentencing, regardless of the nature of the sentence to be imposed. Defendant is entitled under Rule 9.1(a) to be present at the sentence hearing and at sentencing. This rule was included to reiterate the provisions of Rule 9.1(a) and also because of the essential warnings and information regarding appeal and required to be given after sentence is pronounced. See Rule 26.9.

Art. 1, § 6, Alabama Constitution of 1901, provides that "in all criminal prosecutions, the accused has a right to be heard by himself and counsel, or either ... and ... to be confronted by the witnesses against him ...." Alabama courts have not interpreted this section to guarantee a defendant the constitutional right to be present at the sentencing.

This rule, when read together with Rule 9.1(b), provides that, if defendant has been notified of the date of the sentence hearing or sentencing, then the defendant is not permitted to extend the time of taking an appeal by non-appearance at the sentence hearing and the subsequent sentencing. This will be true regardless of whether the defendant is represented by counsel at the sentence hearing or sentencing. Thus, the time of filing a notice of appeal is to run from entry of judgment and sentence, whether or not the defendant is present at sentencing. A defendant, when absent at sentencing through no fault of his own, may be entitled to a delayed appeal under Rule 32.

### CASE NOTES

**Harmless error.**
An error in resentencing by written order is rendered harmless by a later resentencing hearing held in appellant's presence. Cline v. State, 571 So. 2d 368 (Ala. Crim. App. 1990).
The circuit court violated this rule by proceeding with the sentencing hearing in the appellant's absence. That violation was harmless, however, because the appellant received the same sentence he bargained for and of which he had been informed at the guilty plea proceeding. Lett v. State, 663 So. 2d 1022 (Ala. Crim. App. 1994).

*Rule 26.8. Principles of sentencing.*

The sentence imposed in each case should call for the least restrictive sanction that is consistent with the protection of the public and the gravity of the crime. In determining the sentence, the court should evaluate the crime and its consequences, as well as the background and record of the defendant and give serious consideration to the goal of sentencing equality and the need to avoid unwarranted disparities.

216

A3

Judges should be sensitive to the impact their sentences have on all components of the criminal justice system and should consider alternatives to long-term institutional confinement or incarceration in cases involving offenders whom the court deems to pose no serious danger to society.

**Editor's note. —** Former similar law: ARCrP,
Temporary Rule 6(c).

## Committee Comments

Growing attention has been given to sentencing practices and procedures at both the state and federal levels. In addition to perceived sentencing disparity in our criminal justice system, skyrocketing costs associated with institutional confinement have helped to focus attention on the judiciary's role in sentencing.

Prison overcrowding has significantly frustrated the criminal justice system in Alabama as well as most other states. Sentencing judges generally can only speculate as to what their sentences mean. This uncertainty operates to undermine the credibility of the sentencing process.

For appropriate defendants, judges are encouraged to fashion sentences utilizing alternatives other than basic probation and long-term institutional confinement. Although the alternatives presently available will vary to some degree, depending on the sentencing court's location, some alternatives include the following: a split sentence pursuant to Ala. Code 1975, § 15-18-8 (through judicial innovation § 15-18-8 has also been used to impose what is referred to as a "reverse" split sentence, wherein the defendant is sentenced to serve the probationary portion of the sentence first, followed by a period of incarceration; since the judge retains jurisdiction, the period of incarceration can be suspended to reward the defendant for successfully completing probation); fines, court costs, and restitution; drug and alcohol rehabilitation programs; boot camp pursuant to § 15-18-8; community service; work release; responsibility to community restitution centers; house arrest; and electronic monitoring.

Effective utilization of well planned alternatives to incarceration will:

1) Preserve scarce prison bed-space for habitual offenders and others from whom society needs protection.

2) Save the state the cost of incarceration, estimated to be approximately $14,000 per year, and the cost of new prison construction.

3) Frequently permit the offender to remain employed and thereby enable him to earn funds to pay fines, restitution, and court costs, as well as to support his family.

4) Frequently permit the offender who is a drug or alcohol abuser to obtain treatment for such abuse and thereby remove the reason for his criminal behavior.

5) More likely result in the defendant's rehabilitation than incarceration. Prisons serve as training camps for crime, especially for young offenders.

6) Tend to diminish disparity in sentencing. Judges who have alternatives available to them are likely to move to the middle ground provided by the alternatives, whereas judges who must choose between the extremes of incarceration or probation, when they choose differently, create the perception of disparity.

217

**Section (d). Inconsistent presumptions.** There are occasions when two presumptions at work in the same case clash. When such a conflict arises, the presumption prevails which is based upon the weightier policy considerations. Cross v. Rudder, 380 So. 2d 766 (Ala. 1979). Should the policy weight of such presumptions be equal, neither applies. Compare Gulf States Paper Corp. v. Hawkins, 444 So. 2d 381 (Ala. 1983).

## Rule 302.

### Applicability of federal law in civil actions and proceedings.

In civil actions and proceedings, the effect of a presumption respecting a fact which is an element of a claim or defense as to which federal law supplies the rule of decision is determined in accordance with federal law.

#### Advisory Committee's Notes

This rule differs from Fed. R. Evid. 302 only insofar as the term "federal law" has been substituted for the term "State law." That change makes this rule identical to that found in the Uniform Rules of Evidence. Indeed, the commentary to Unif. R. Evid. 302 explains this substitution and its resulting effect as follows:

"Parallel jurisdiction in state and federal courts exists in many instances. The modification of Rule 302 is made in recognition of this situation. The rule prescribes that when a federally created right is litigated in a state court, any prescribed federal presumption shall be applied."

The term "federal law" may include both statutes and case law. Rule 302, however, is not intended to affect preexisting law governing what federal case law is binding upon Alabama courts.

## ARTICLE IV. RELEVANCY AND ITS LIMITS

## Rule 401.

### Definition of "relevant evidence".

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

#### Advisory Committee's Notes

This rule is identical to the corresponding Federal Rule of Evidence and to the relevancy rule adopted by the overwhelming majority of states that have adopted modern evidence rules. The test of logical relevancy set forth in Rule 401 is a liberal one. Evidence is to be admitted if it possesses "any tendency," in logic or experience, to lead to the fact or inference for which it is offered. The standard of probability under the rule is "more probable or less probable than it would be without the evidence."

Rule 401 leaves unchanged the preexisting relevancy test that has applied historically under the common law of Alabama. See, e.g., Aetna Life Ins. Co. v. Lavoie, 470 So. 2d 1060, 1078 (Ala. 1984) ("whether the offered evidence bears any logical relationship to the ultimate inference for which it is offered") (emphasis added), vacated, 475 U.S. 813 (1986); Gafford v. State, 122 Ala. 54, 25 So. 10, 12 (1899) (characterizing the issue as one of whether "the testimony offered to be introduced by defendant [would] have any tendency, even though slight, to shed light on the main inquiry") (emphasis added); Mattison v. State, 55 Ala. 224, 232

856

Crim. App.), cert. denied, 390 So. 2d 1176 (Ala. 1980). See Conrad v. City & County of Denver, 656 P. 2d 662 (Colo. 1983).

## Rule 611.

### Mode and order of interrogation and presentation.

(a) *Control by court.* The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

(b) *Scope of cross-examination.* The right to cross-examine a witness extends to any matter relevant to any issue and to matters affecting the credibility of the witness, except when a party calls an adverse party or an officer, a director, or a managing agent of a public or private corporation or a partnership or association that is an adverse party, or a witness identified with an adverse party. In those excepted situations, cross-examination by the adverse party may be only upon the subject matter of the witness's examination-in-chief or upon the witness's credibility.

(c) *Leading questions.* Leading questions should not be used on the direct examination of a witness, except when justice requires that they be allowed. Leading questions are permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

### Advisory Committee's Notes

**Section (a). Control by court.** As witnesses testify and evidence is presented, several procedural issues arise. These issues are to be resolved, as under pre-existing common law, through the judge's common sense and fairness. The judge has the primary responsibility for the effective working of the adversary system. Alford v. State Farm Fire & Casualty Co., 496 So. 2d 19 (Ala. 1986) (recognizing that the mode of examining witnesses and the order of introducing evidence are within the discretion of the trial court). See C. Gamble, McElroy's Alabama Evidence § 433.01 (4th ed. 1977); J. Colquitt, Alabama Law of Evidence § 6.11 (1990). Spelling out detailed rules governing those issues is neither desirable nor feasible. See Fed. R. Evid. 611(a) advisory committee's note.

At least three goals should guide the exercise of this judicial discretion. First, the mode and order of interrogating witnesses and presenting evidence should be such as will promote the ascertainment of the truth.

Second, efforts should be made to avoid needless consumption of time. The judge's discretion in this regard is likewise recognized in Ala. R. Evid. 403. The trial judge, for example, has the discretion to limit the number of witnesses who may be called to testify to a particular matter. Allen v. State, 290 Ala. 339, 276 So. 2d 583 (1973). See C. Gamble, McElroy's Alabama Evidence § 10.06 (4th ed. 1991).

Third, witnesses should be protected from harassment or undue embarrassment. Compare Ala. Code 1975, § 12-21-141 (declaring a witness's right to be protected from improper questions and from a harsh or insulting demeanor). The importance of the testimony, the nature of the inquiry, its relevance to credibility, waste of time, and confusion are factors for the judge to consider in this regard. Efforts to protect the witness, of course, should by no means foreclose efforts to discredit the witness. See Alford v. United States, 282 U.S. 687, 694 (1931) (recognizing that the trial's

920

judge's duty to protect a witness arises only when the questions "go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate"). See Ala. Code 1975, § 12-21-137 (giving every party the right of cross-examination, "thorough and sifting," as to witnesses called against him or her).

**Section (b). Scope of cross-examination.** Rule 611(b) continues Alabama's present position as a "wide open rule" jurisdiction regarding matters that may be inquired about on cross-examination. Questions on cross-examination are appropriate as long as they are relevant either to credibility or to any material issue in the case. Moody v. State, 267 Ala. 204, 100 So. 2d 733 (1957); Cooper v. State, 526 So. 2d 602 (Ala. Crim. App. 1986). See Ala. R. Civ. P. 43(b) (permitting cross-examination "upon all matters material to every issue of the action"); Ala. Code 1975, § 12-21-137 (declaring that parties have the right to a cross-examination that is "thorough and sifting"). See also C. Gamble, McElroy's Alabama Evidence § 438.01 (4th ed. 1991).

The more limited "scope of direct examination" standard is adopted, as now provided under Ala. R. Civ. P. 43(b), when one calls an adverse party or a specified agent of an adverse party and that witness is then cross-examined by counsel for the adverse party. This limit on the scope of cross-examination is extended to apply to the adverse party's cross-examination of a witness identified with the adverse party. See Rule 611(c).

**Section (c). Leading questions.** This section embraces the traditional Alabama position that leading questions are not permitted during direct examination. It is within the trial judge's discretion, however, to permit leading questions "when justice requires that they be allowed." This exception from the "no leading questions" rule retains Alabama's preexisting statutory provision allowing such questions "when, from the conduct of the witness or other reason, justice requires it." Ala. Code 1975, § 12-21-138 (superseded by adoption of Rule 611(c)). Rule 43(b), Ala. R. Civ. P., likewise permits leading questions on direct examination "when justice requires."

Under Rule 611(c), leading questions should always be permitted on cross-examination.

## Rule 612.

### Writing used to refresh memory.

(a) *General rule.* Any writing may be used to refresh the memory of a witness.

(b) *Production of writing used to refresh memory.* If while testifying a witness uses a writing to refresh his or her memory, then an adverse party is entitled, upon request, to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions of it relating to the witness's testimony. If it is claimed, in opposition to such a request, that the writing contains matters not related to the subject matter of the testimony, the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal. If a writing is not delivered pursuant to order under this rule, the court shall make any order justice requires, except that in a criminal case if the prosecution does not comply, the order shall be one striking the testimony of the witness whose memory was refreshed or, if the court in its discretion determines that the

§ 12-21-137                    EVIDENCE AND WITNESSES                    § 12-21-137

bargaining, he did not have to placed under oath before his guilty plea was accepted by the court. Young v. State, 698 So. 2d 1060 (Ala. Crim. App. 1992).

**Procedure — Trial.**
  If the proper oath is administered, there is no rule which forbids the swearing of a number of witnesses at one and the same time. Vaughn v. State, 236 Ala. 442, 183 So. 428 (1938).

  **Cited in** Wright v. State, 24 Ala. App. 378, 135 So. 636 (1931); Rodgers v. State, 42 Ala. App. 660, 177 So. 2d 460 (1965).

## § 12-21-137. Cross-examination.

  The right of cross-examination, thorough and sifting, belongs to every party as to the witnesses called against him. If several parties to the same case have distinct interests, each may exercise this right.

**Editor's notes.** Rule 43 of the Alabama Rules of Civil Procedure supersedes this section as to civil proceedings; however, this section may be applicable in criminal or probate proceedings.

**Cross references.** — Court rules, scope of examination and cross-examination, A.R.C.P. Rule 43(b).

### CASE NOTES

General comment.
Bias.
Burden of persuasion.
Character.
Construction with other law.
Conversations.
Credibility.
Discretion.
Evidence — Admissible.
Evidence — Inadmissible.
Harmless error.
Knowledge.
Limitation.
Materiality.
No error.
Prior criminal charge.
Procedure — Trial.
Reversible error.
Review.
When applicable.
Illustrative cases.
Cited.

**General comment.**
  Right of cross-examination is a valuable right. Mitchell v. Birmingham News Co., 223 Ala. 568, 137 So. 422 (1931).

  Every party has the right of cross-examination, thorough and sifting, of the witnesses who testify against him. Sowell v. State, 30 Ala. App. 18, 199 So. 900 (1941); Adams v. State, 30 Ala. App. 188, 2 So. 2d 468 (1941).

  Former section 443, Title 7, Code of Alabama 1940 (see now § 12-21-137), guarantees the right of cross examination, thorough and sifting. This section must be reasonably construed. It does not deprive the trial judge of discretion reasonably exercised to limit the range of cross examination in respect to collateral and irrelevant matter. The undue and unnecessary consumption of time in the trial of causes, and the

avoidance of multiplied collateral and irrelevant issues is committed in the first instance to the wise discretion of the trial judge. Powell v. Powell, 285 Ala. 230, 231 So. 2d 103 (1970).

  Party exercising right of cross-examination is afforded great latitude, especially when inquiry is directed to interest, bias, prejudice or partiality about matters to which witness is testifying. McMullian v. State, 52 Ala. App. 321, 292 So. 2d 127 (1973).

  One purpose of cross-examination is to elicit conflicts of the witness' evidence and thereby show that the witness is confused in his evidentiary assessment of facts. Jackson v. State, 56 Ala. App. 597, 324 So. 2d 311 (1975).

  Right to a "thorough and sifting" cross-examination is not limited to criminal cases. Lomax v. Speed, 507 So. 2d 455 (Ala. 1987).

  The right to cross-examine a witness is a guaranteed right provided to an accused. This right inures to the benefit of the State in a criminal proceeding. Herring v. State, 563 So. 2d 33 (Ala. Crim. App. 1990).

  The right of cross-examination is a fundamental right granted by Article 1, § 6 of the Constitution of Alabama, 1901, and is included in the right of an accused to confront the witnesses against him. Case v. Case, 627 So. 2d 980 (Ala. Civ. App. 1993).

**Bias.**
  Proper way to show bias of a witness is to ask him directly the state of his feelings, and, if he denies bias, to resort to facts and circumstances tending to show it. Sullivan v. State, 25 Ala. App. 140, 142 So. 110 (1932).

  Questions to illustrate witness' friendship, bias, or prejudice for or against the defendant are competent. Roan v. State, 225 Ala. 428, 143 So. 454 (1932).

637

A8

## § 12-21-221. Reward contingent upon conviction.

There shall be no exclusion of a witness in a criminal case because, on conviction of the defendant, he may be entitled to a reward or to a restoration of property or to the whole or any part of the fine or penalty inflicted. The witness may be examined touching such circumstances, but the examination goes to his credibility and not to his competency as a witness.

### CASE NOTES

General comment.
Evidence — Admissible.
Illustrative cases.
Cited.

**General comment.**
It is always permissible to show the pecuniary interest of a witness in the result of a trial as affecting his credibility under this section, but where the interest is fixed by law, it is not necessary to make the proof and, therefore, in such cases, a refusal to permit proof would not be error. Weaver v. State, 17 Ala. App. 606, 86 So. 179 (1920).

**Evidence — Admissible.**
The bias of an adverse witness is always a proper inquiry, and on cross-examination any fact may be elicited which tends to show bias or partiality on the part of such witness and in in this connection the pecuniary interest a witness may have in the outcome of the trial is admissible to be considered by the jury in weighing the testimony of the witness. Beverly v. State, 27 Ala. App. 374, 173 So. 397 (1937).

**Illustrative cases.**
In a prosecution for making or possessing a still for the manufacture of prohibited liquors, where a statute granted a reward for a conviction, it was error not to permit the defendant to cross-examine the sheriff as to whether or not he received a reward for a conviction of the defendant where it was not fixed by law that the sheriff would receive a reward. Weaver v. State, 17 Ala. App. 606, 86 So. 179 (1920).

Cited in Dixon v. State, 40 Ala. App. 465, 115 So. 2d 262 (1957), rev'd on other grounds, 269 Ala. 593, 115 So. 2d 269 (1958), 269 Ala. 548, 115 So. 2d 270 (1959); Pugh v. State, 42 Ala. App. 499, 169 So. 2d 27 (1964).

## § 12-21-222. Corroboration of accomplice testimony.

A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient.

### CASE NOTES

General comment.
Accomplice.
—Generally.
—Insufficient evidence.
—Sufficient evidence.
Burden of proof.
Conspiracy.
Construction with other law.
Corroborative evidence.
—Insufficient.
—Sufficient.
Effective assistance of counsel.
Elements.
Evidence — Admissible.
Evidence — Generally.
Harmless error.
Instructions.
Legislative intent.

Limitation.
Minors.
No error.
Presumptions.
Procedure — Trial.
Question of law or fact.
Requirements.
Reversible error.
Review.
Revocation of probation.
Standard of proof.
Time limitations.
Waiver.
When applicable.
Illustrative cases.
Cited.

**General comment.**
This section has been liberally construed

699

A9

course of committing a theft" which includes an attempted theft. Grace v. State, 431 So. 2d 1331 (Ala. Crim. App. 1982).

As robbery in the first degree embraces acts which occur in the "attempt to commit" theft, as well as in the actual commission of theft, it was not necessary that the state prove that property was actually taken by the defendant during any attempted theft, where the state's proof otherwise met the statutory requirements of §§ 13A-8-40, 13A-8-41, and 13A-8-43. Williams v. State, 462 So. 2d 944 (Ala. Crim. App. 1983).

At the very least, one may commit first degree robbery by threat of violence during an attempted theft. Ex parte James, 468 So. 2d 889 (Ala. 1984), aff'd sub nom. James v. State, 468 So. 2d 892 (Ala. Crim. App. 1985).

The violence used or threatened does not have to precede or accompany the theft but it must be for the purpose of accomplishing the theft. Carlisle v. State, 484 So. 2d 540 (Ala. Crim. App. 1985).

Under the present statutory definition of robbery, it is not essential that any property be taken from the victim; consequently, the value and amount of any property taken is immaterial. Maxwell v. State, 488 So. 2d 517 (Ala. Crim. App. 1986).

The present robbery statutes do not require a "taking" of property. Acres v. State, 648 So. 2d 459 (Ala. Crim. App. 1987).

Robbery includes instances where violence is used or threatened in the course of committing a theft or in flight. Harvey v. State, 676 So. 2d 680 (Ala. Crim. App. 1991).

Present robbery statutes do not require a "taking" of property. Gainey v. State, 647 So. 2d 37 (Ala. Crim. App. 1994).

Because the amount taken in a robbery is not an element of the offense under the current robbery statutes, the indictment was sufficient to apprise the appellant of the charges against him. Windsor v. State, 683 So. 2d 1013 (Ala. Crim. App. 1993), rev'd on other grounds, 683 So. 2d 1021 (Ala. 1994).

Robbery is an offense against the person, and therefore, the value of the property taken during a robbery is not an element of the crime. The indictment charging the appellant with murder during the course of a robbery was not deficient. Ex parte Windsor, 683 So. 2d 1042 (Ala. 1996), cert. denied, 520 U.S. 1171, 117 S. Ct. 1438, 137 L. Ed. 2d 545 (1997).

The indictment was not unconstitutionally vague because the robbery statutes do not require a "taking" of property, so that not only is the value of the property immaterial, but also the indictment need not allege an actual theft to constitute the offense. McWhorter v. State, 781 So. 2d 257, 1999 Ala. Crim. App. LEXIS 212 (Ala. Crim. App. 1999), aff'd sub nom. Ex parte McWhorter, 781 So. 2d 330 (Ala. 2000), cert. denied, 532 U.S. 976, 121 S. Ct. 1612, 149 L. Ed. 476 (2001).

**Evidence — Insufficient.**

Where testimony was undisputed that defendant used force to flee the scene, but the original theft (shoplifting) had been completed, and the victim had regained control of the property, and the defendant used force to flee but not with the property, the defendant was guilty of serious offenses, but not robbery. Casher v. State, 469 So. 2d 679 (Ala. Crim. App. 1985).

**Evidence — Sufficient.**

Evidence was sufficient to show defendant's possession of a box cutter immediately following his arrest for robbery, supporting an armed robbery conviction. Laney v. State, 417 So. 2d 624 (Ala. Crim. App. 1982).

Where defendant argued that the force employed by him was not employed to effectuate the taking of the stolen property, court found that the jury was justified in relying on the testimony regarding the stolen articles being recovered from the person of the appellant or from the get away car, in making out the elements of the offense of robbery in the first degree and that even without that evidence, the evidence before them was clear to the effect that the defendant did use force and a deadly weapon to effectuate his immediate escape. White v. State, 462 So. 2d 760 (Ala. Crim. App. 1984), vacated, 479 U.S. 1074, 107 S. Ct. 1266, 94 L. Ed. 2d 127 (1987).

Although witnesses' testimony may have been unbelievable as to both killings, from the evidence the jury could have concluded that defendant had actually shot one of the two victims. Rutledge v. State, 680 So. 2d 997 (Ala. Crim. App. 1996).

Evidence that defendant, after being confronted with possession of stolen merchandise, shoved a shopping mall security guard before fleeing, and later hit a store manager and bystander, was

sufficient to prove that force was used in immediate flight following the theft, and thus to establish the offense of third degree robbery. Fuqua v. State, 706 So. 2d 817 (Ala. Crim. App. 1997).

**Included offenses.**

The crime of robbery includes all the elements of larceny, with the one additional element of force or putting in fear, and a state of facts tending to prove the higher degree also tends to prove larceny, the degree is a question for the jury. Pierce v. State, 25 Ala. App. 302, 145 So. 592 (1933).

Robbery is a common law offense and does not include as a lesser offense the crime of buying, receiving and concealing stolen property, which a statutory offense. Mayes v. State, 350 So. 2d 339 (Ala. Crim. App. 1977).

**Instructions.**

A defendant charged under former robbery statute was entitled to a jury instruction on the charges of larceny or assault and battery if the evidence was sufficient to support a conviction under these charges. Kelly v. State, 235 Ala. 5, 176 So. 807 (1937).

**Intent, knowledge.**

A statement by defendant at his arraignment that he was drunk at the time of the robbery and did not know what he was doing could be properly construed as an assertion that he was so drunk as to make him incapable of possessing the requisite criminal intent to commit first degree robbery. Simmons v. State, 412 So. 2d 1239 (Ala. Crim. App. 1981).

The question of intent is a question for the jury. Carlisle v. State, 484 So. 2d 540 (Ala. Crim. App. 1985).

**Procedure — Pretrial.**

The form of indictment set out by § 15-8-150(86), followed the common law definition of robbery, is no longer applicable to robbery under § 13A-8-40 through 13A-8-44 of the criminal code. Lewis v. State, 469 So. 2d 1291 (Ala. Crim. App. 1984), aff'd sub nom. Ex parte Blake, 469 So. 2d 1301 (Ala. 1985).

Because the amount taken in a robbery is immaterial under Alabama's robbery statutes, §§ 13A-8-40 through 13A-8-44, the court committed no error in allowing the indictment to be amended without the appellant's consent. Odom v. State, 625 So. 2d 1171 (Ala. Crim. App. 1993).

**Miscellaneous.**

The former offense of assault with intent to rob has been merged into the present offense of robbery. Marvin v. State, 407 So. 2d 576 (Ala. Crim. App. 1981).

Cited in Kent v. State, 56 Ala. App. 1, 318 So. 2d 742 (1975); McLester v. State, 423 So. 2d 286 (Ala. Crim. App. 1982); Crowe v. State, 435 So. 2d 1371 (Ala. Crim. App. 1983); Barnett v. State, 437 So. 2d 668 (Ala. Crim. App. 1983); Ex parte Clements, 447 So. 2d 695 (Ala. 1984); Johnson v. State, 473 So. 2d 607 (Ala. Crim. App. 1985); Herndon v. State, 563 So. 2d 1065 (Ala. 1990); Bush v. State, 580 So. 2d 106 (Ala. Crim. App. 1991).

## § 13A-8-41. Robbery; first degree.

(a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he:

(1) Is armed with a deadly weapon or dangerous instrument; or

(2) Causes serious physical injury to another.

(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed.

(c) Robbery in the first degree is a Class A felony.

**History.** Acts 1977, No. 77-607.

With three prior felony convictions, a defendant convicted of robbery in the second degree must be sentenced to life in the penitentiary. Bennett v. State, 649 So. 2d 213 (Ala. Crim. App. 1993).

**Sentence — Not excessive.**

A sentence of life imprisonment is proper upon conviction of a Class B felony when the defendant has three prior felony convictions. Hatcher v. State, 581 So. 2d 25 (Ala. Crim. App. 1991).

A sentence of life imprisonment is proper upon conviction of a Class B felony when the defendant has three prior felony convictions. Hatcher v. State, 581 So. 2d 25 (Ala. Crim. App. 1991).

**Separate or multiple offenses.**

At common law, the Alabama crimes of robbery and assault with intent to murder were two separate and distinct offenses. Brown v. Alabama, 619 F.2d 376 (5th Cir. 1980).

**Miscellaneous.**

Robbery, from the earliest times has always been regarded a crime of the gravest character; since the Revised Code of 1867, § 3668, any person convicted of robbery, must be punished, at the discretion of the jury, either by death, or by imprisonment for not less than ten years; or, as in Code 1886, § 3742, by death or by imprisonment for not less than five years; or, as in Code 1896, § 5478, and subsequent codes, by death or by imprisonment for not less than ten years. Boykin v. State, 281 Ala. 659, 207 So. 2d 412 (1968), rev'd on other grounds, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

Cited in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); Jenkins v. State, 384 So. 2d 1135 (Ala. Crim. App. 1979); Gusha v. State, 389 So. 2d 563 (Ala. Crim. App. 1980); Thomas v. State, 418 So. 2d 921 (Ala. Crim. App. 1981); Lidge v. State, 419 So. 2d 610 (Ala. Crim. App. 1982); Russell v. State, 428 So. 2d 126 (Ala. Crim. App.); Crowe v. State, 435 So. 2d 1371 (Ala. Crim. App. 1983); Beverly v. State, 439 So. 2d 758 (Ala. Crim. App. 1983); Ragsdale v. State, 448 So. 2d 442 (Ala. Crim. App. 1984); Gorman v. State, 448 So. 2d 495 (Ala. Crim. App. 1984); Ex parte Bates, 461 So. 2d 5 (Ala. 1984); Brooks v. State, 469 So. 2d 677 (Ala. Crim. App. 1984); Phillips v. State, 484 So. 2d 1205 (Ala. Crim. App. 1986); Hartley v. State, 516 So. 2d 802 (Ala. Crim. App. 1986); Coleman v. State, 516 So. 2d 871 (Ala. Crim. App. 1987); Kolouzez v. State, 552 So. 2d 1075 (Ala. Crim. App. 1989); McGruder v. State, 560 So. 2d 1137 (Ala. Crim. App. 1989); Herndon v. State, 563 So. 2d 1063 (Ala. Crim. App. 1989); Young v. State, 563 So. 2d 44 (Ala. Crim. App. 1990); Riggins v. State, 563 So. 2d 1075 (Ala. Crim. App. 1990); Ex parte Lynch, 587 So. 2d 303 (Ala. 1990); Lynch v. State, 587 So. 2d 305 (Ala. Crim. App. 1990); Preston v. State, 586 So. 2d 263 (Ala. Crim. App. 1991); Gray v. State, 658 So. 2d 607 (Ala. Crim. App. 1992); Nickerson v. State, 629 So. 2d 60 (Ala. Crim. App. 1993); Goodwin v. State, 641 So. 2d 1289 (Ala. Crim. App. 1994); Sims v. State, 663 So. 2d 975 (Ala. Crim. App. 1994); McKinney v. State, 665 So. 2d 209 (Ala. Crim. App. 1995); Ex parte Frazier, 729 So. 2d 253 (Ala. 1998).

## § 13A-8-43. Robbery; third degree.

(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:

(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or

(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.

(b) Robbery in the third degree is a Class C felony.

**History.** Acts 1977, No. 77-607.

**Cross references. —** This law is referred to in: §§ 13A-8-41, 13A-8-42.

## CASE NOTES

Attempt.
Burden of proof.
Construction with other law.
Double jeopardy.
Elements.
Evidence — Admissible.
Evidence — Insufficient.
Evidence — Sufficient.
Included offenses.
Instructions.
Intent, knowledge.
Jurors.
Liability.
Procedure — Pretrial.
Question of law or fact.
Review.
Sentence — Generally.
Venue.
Miscellaneous.
Cited.

**Attempt.**

The former crime of attempted robbery now constitutes robbery. Petty v. State, 414 So. 2d 182 (Ala. Crim. App. 1982).

This section subsumes all activities and conduct which may be characterized as an attempt to commit robbery. Petty v. State, 414 So. 2d 182 (Ala. Crim. App. 1982).

**Burden of proof.**

Where the proof adduced at trial showed that the appellant threatened to use a gun if necessary, there was no variance between the indictment and the evidence presented at trial because the state did not prove that the appellant actually was armed with a deadly weapon or dangerous instrument; the State does not have to prove that the defendant actually had a gun in order to sustain a conviction of first degree robbery. Rice v. State, 620 So. 2d 140 (Ala. Crim. App. 1993).

**Construction with other law.**

Subsection (a) adds a definition that extends robbery to include conduct which occurs in an attempt to commit a theft or in flight after the attempt or commission, as defined in section 13A-8-40(b). Petty v. State, 414 So. 2d 182 (Ala. Crim. App. 1982).

Reversal required where the trial court lacked jurisdiction to accept defendant's guilty plea to second-degree robbery under § 13A-8-42, because the information charging him with that offense failed to state one of the essential elements of that offense, that the defendant be "aided by another person actually present" during the course of the robbery. Byrd v. State, 763 So. 2d 987, 2000 Ala. Crim. App. LEXIS 6 (Ala. Crim. App. 2000).

Although ARCrP 26.6 does not set out a specific time that will be considered reasonable under subdivision (b)(3)(ii), where defendant was sentenced within 15 minutes of receiving notice of the State's intent to proceed under the Habitual Felony Offender Act, the reasonableness requirement of subdivision (b)(3)(ii) was not satisfied. Ex parte Crews, 797 So. 2d 1119, 2000 Ala. LEXIS 18 (Ala. 2000).

Because burglary in the first degree (§ 13A-7-5) and robbery in the first degree (this section) are not so similar as to encompass one another, it was not error to punish the defendant under both statutes. Ex parte Dixon, 804 So. 2d 1075, 2000 Ala. LEXIS 379 (Ala. 2000).

**Double jeopardy.**

At common law, the Alabama crimes of robbery and assault with intent to murder were two separate and distinct offenses. Brown v. Alabama, 619 F.2d 376 (5th Cir. 1980).

A previous conviction for theft of the victim's automobile bars a subsequent prosecution for murder of that same victim during the course of robbing that victim of property other than the automobile where the taking of all the property occurred as part of the same criminal and factual transaction; the prosecution of the defendant for the capital offense of murder-robbery after his conviction for theft violated established principles of former jeopardy. Connolly v. State, 539 So. 2d 436 (Ala. Crim. App. 1988).