IN THE SUPREME COURT OF ALABAMA


JOHNNY C. GRACE, JR.,
     PETITIONER,

       vs.

STATE OF ALABAMA,
     RESPONDENT.



PETITION FOR WRIT OF CERTIORARI TO THE
COURT OF CRIMINAL APPEALS

AND

BRIEF OF THE PETITIONER


ON APPEAL FROM HENRY COUNTY CIRCUIT COURT

CASE NOS. CC-2002-205 and CC-2002-206

APPELLATE NO. CR-02-1017



GREGORY A. DaGIAN
ATTORNEY FOR PETITIONER
406 DOTHAN RD., STE. B
ABBEVILLE, ALABAMA  36310
TELEPHONE: (334) 585-1394
FACSIMILE: (334) 585-1395



EXHIBIT
1F

## IN THE ALABAMA SUPREME COURT

JOHNNY C. GRACE, JR.    )
        Petitioner,

                  )

        vs.              Supreme Court Case No: _____

                  )

STATE OF ALABAMA,
        Respondent.    )

## PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS

TO THE SUPREME COURT OF ALABAMA:

Comes your Petitioner, Johnny C. Grace, Jr., and petitions this Court for a writ of certiorari to issue to the Court of Criminal Appeals in the above-styled cause, pursuant to Rule 39, Alabama Rules of Appellate Procedure, and shows the following: Petitioner was convicted of two courts of robbery in the first degree in the Circuit Court of Henry County, Alabama, on October 17, 2002. The Court of Criminal Appeals affirmed the judgment on October 24, 2003. An application for a rehearing was filed on October 29, 2003 and overruled on November 7, 2003. A copy of the opinion of the Court of Criminal Appeals is attached to this petition, which shows the case number of the Court of Criminal Appeals to be No. CR-02-1017.

The Court of Criminal Appeals issued an unpublished memorandum which contained a statement of facts that the petitioner was not satisfied with. Pursuant to Rule 40(e),

the petitioner presented in his application for a rehearing with that court an additional statement of facts.  I verify, pursuant to Rule 39(d)(5)(A), that the following is a verbatim copy of the statement of facts, with reference to the pertinent portions of the clerk's record and/or reporter's transcripts, as presented by the petitioner in his application for rehearing:

## "ADDITIONAL STATEMENT OF THE FACTS

On December 16, 2001 at approximately 9:10 p.m. Mr. and Mrs. Jack Murphy, a well-known and well-liked white, married couple (forty year marriage) in their early to mid 60s, were robbed in their home in rural Henry County by four young black males who had their faces partially or fully covered.  C201-202; R229, 231, 279.  The four robbers did not act like they knew the Murphys.  R216.  Two of the males held in their hands what appeared to be pistols.  R231.  Mr. Murphy initially grabbed one of the pistols and it did not feel real to him. R254.  The pistol grabbed by Mr. Murphy "felt light, very light" to Mr. Murphy.  R255.  Mr. Murphy never touched the other pistol, which was silver in color like the one he had grabbed, and both pistols looked basically the same to him. R255.  Both pistols were chrome.  C201, R 279.  During the robbery Mr. Murphy worried that he and his wife might be shot if the young black males had real guns.  R267.  During the

2

course of the robbery, which lasted approximately forty-five minutes, Mrs. Murphy asked Mr. Murphy if he thought the pistols were real. R211, 245, 267. And during the course of the robbery, Mrs. Murphy noticed that the color of the pistols or something about the pistols did not seem exactly right and it flashed through her mind that at least one of the pistols was not real. R211. Mrs. Murphy cannot say for sure if either or both of the pistols used were toys or were real. R211. Immediately after the robbery Mr. Murphy went to his barn looking for the four robbers. R248.

The four robbers forced themselves into the Murphy residence with Mr. Murphy through the open back door to the house that Mr. Murphy had gone out of to get a box. C202; R231, 233, 279. The robbers began looking throughout the house for money. R180. After approximately twenty minutes of searching throughout the house opening drawers and the like one of the robbers found a floor safe that had been located since 1975 in a closet under the only stair well in the house. R256. One of the robbers got Mrs. Murphy's billfold out of her car and then took Mrs. Murphy back into the house where the other robbers had used packing tape to tape Mr. Murphy's hands and tape him to a straight back chair in the kitchen. R187. Mrs. Murphy was similarly taped to a straight back chair in the kitchen. R187. Mrs. Murphy requested that she

3

not be taped too tightly and that no tape be placed on Mr. Murphy's mouth so that his breathing would not be hindered and the robbers complied with her request. R187-188. No tape was placed over the mouth or on the faces of Mr. or Mrs. Murphy and they both were taped loosely to the straight back chairs in the kitchen. R187-188, 260. Although the robbers threatened the Murphy's with bodily harm, the robbers did not physically harm Mr. Murphy or Mrs. Murphy. R260. Shortly after the robbers left their home the Murphys were able to free themselves from the tape and call E-911. R198. Deputy John Gilmer and Investigator Clyde Hornsby with the Henry County Sheriff's Department responded to the E-911 call at the Murphy residence and completed an Alabama Uniform Incident/Offense Report at 10:30 p.m. that night. C201-202, R279.

Defendant was a former worker for the Murphys and had last worked for them around their house and farm according to Mrs. Murphy "several months" prior to the robbery and according to Mr. Murphy two and one half months prior to the robbery. R213, 253. Defendant has a distinctive real deep, deep voice and Mr. Murphy did not hear that voice during the robbery even though all four robbers jabbered back and forth amongst themselves during the robbery. R235, 264. Mrs. Murphy had known the Defendant for many years prior to the

4

robbery (she had been the school nurse at the school that Defendant attended) and when looking and listening to the four robbers during the course of the robbery over a forty-five minute period Mrs. Murphy did not think of Defendant. R172, 212-213. Prior to December 16, 2001 Mrs. Murphy's opinion of Defendant was that he was a very nice person, that he did good work and that he was very mannerly. R212. Mrs. Murphy testified that no one other than Defendant had worked for the Murphys in the two years prior to the robbery on December 16, 2001. R213. Mr. Murphy testified that a number of "school boys" had worked for him in the year prior to the robbery on December 16, 2001. R254. Mr. Murphy spoke with Deputy John Gilmer and Investigator Clyde Hornsby at his home immediately after this robbery on December 16, 2001 and the Incident/Offense Report completed by Deputy Gilmer and co-signed by Investigator Hornsby states that the robbers were not known to Mr. Murphy and that there was no prior relationship (i.e. former worker, etc.) known to Mr. Murphy concerning the robbers. C2, 201-202; R278-279. The Murphys stayed in their home on December 16, 2001 and thereafter after the robbery. R199-200.

Co-defendant Nicholas McKinnon was the chief witness for Plaintiff at Defendant's trial on October 16, 2002 and he testified that he, Kevin McKinnon, Todd Blackmon and

Christopher Lindsey entered the Murphy's residence on December 16, 2001 and robbed them and that he used a toy gun during the robbery. R143. Nicholas McKinnon is an acknowledged liar. R144. Nicholas McKinnon acknowledged that if Defendant had really taken him and the other three robbers to the Murphys to steal their safe that they would have found the safe before looking throughout the house for twenty minutes. R148-149. Nicholas McKinnon entered pleas of guilty to the robbery of the Murphys on May 17, 2002 and received youthful offender treatment, a split sentence of boot camp followed by probation on a three year base sentence, concurrent sentencing, a fine of $500 and a victims compensation fund assessment of $500 in Henry County Case Nos. CC-2002-199 and CC-2002-200. C203-204; R320. Prior to being granted youthful offender, entering pleas of guilty and being sentenced on May 17, 2002, Nicholas McKinnon received a favorable written recommendation regarding youthful offender treatment and sentencing from Alabama Probation and Parole Officer William Weber. R300, 312. Plaintiff did not notify the Murphys of Nicholas McKinnon's May 17, 2002 sentencing hearing. R92. Defendant advised the Court prior to trial during a pre-trial motion hearing that he had evidence that Henry County Sheriff Lawton Ed Armstrong acknowledged during a tape recorded interrogation of Co-Defendant Kevin McKinnon in March 2002, later transcribed by

6

the Henry County Sheriff's Department, that the Sheriff recommended a split sentence and probation for Nicholas McKinnon. R91-92. The Court advised Defendant that he would be able to present evidence at trial regarding Sheriff Armstrong's March 2002 statement. R92. At trial Defendant was not allowed to use the Sheriff's March 2002 statement acknowledging a split sentence recommendation for Nicholas McKinnon in Defendant's cross examination of Sheriff Armstrong. R288-289.

Prior to Nicholas McKinnon testifying in Defendant's case on October 16, 2002 Plaintiff had him transported to the Houston County Jail in Dothan and "locked down" and Nicholas McKinnon got the message that he had to testify like Plaintiff wanted him to testify. R146-147. Prosecution witness Tyrone Lindsey claimed that five individuals including Defendant showed up at his house on the night of the Murphy robbery and broke into a safe in his yard by beating it with an axe and that he did not know what was going on. R161. Lindsey was initially charged with a felony for his involvement, which was reduced to a misdemeanor with suspended sentence and probation. R166. Lindsey was on probation when he testified for Plaintiff. R162.

During jury selection in Defendant's case Plaintiff used his third, fourth, fifth, sixth, ninth and tenth peremptory

7

strikes to eliminate six of the remaining eight black members on the strike list (Miriam Onadeko who was related to Defendant had been challenged for cause). C66, 71; R25-26. Defendant intimated to the Court that Plaintiff's exercise of his peremptory strikes constituted purposeful racial discrimination and that the reasons given by Plaintiff were a sham or pretextual. R28. The Court denied Defendant's <u>Batson</u> challenge. R29.

Defendant's requested written jury instructions No. 8 and No.9 covering sufficiency of corroboration of accomplice testimony necessary for conviction of felony were refused by the Court over the objection of Defendant. C84.85; R326-327. Requested jury instruction No. 8 was verbatim <u>Ala. Code</u> 1975, Sec. 12-21-222 as follows:

"A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the the commission of the offense or the circumstances thereof, is not sufficient." C84.

Requested jury instruction No. 9 was from the holding of <u>Massey v. State</u>, 497 So.2d 590 (Ala.Crim.App 1986) wherein the Alabama Court of Criminal Appeals cited as authority the Alabama Supreme Court holding of <u>Sorrell v. State</u>, 31 So.2d 82, 83 (1947) as follows:

"The corroboration necessary to support the

testimony of an accomplice must be of a substantive character, must be inconsistent with the innocence of the accused, and must do more than raise a suspicion of guilt." C85.

The jury seated to hear Defendant's case (excluding the two white alternates) was comprised of ten whites and two blacks, the black members being Trumma Neal and Henry Lynn. C65-66, 71. After less than three hours of testimony Ms. Neal and Mr. Lynn were removed from the jury by the Court sua sponte without warning for sleeping over the objection of the Defendant. R220, 226. Consequently, an all white jury found Defendant guilty of two counts of robbery in the first degree. C61-68, 71. Defendant further objected to the jurors' misconduct in a timely filed Motion For New Trial, which was denied. C149. Defendant was sentenced to 198 years incarceration on January 23, 2003 in contravention of Rule 26.8, Ala.R.Crim.P. and the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution. January 23, 2003 R13-14."

GREGORY A. DaGIAN    (DAG 003)

**GROUNDS**

The Petitioner alleges as grounds for the issuance of the writ pursuant to Rule 39(a)(1)(D), Alabama Rules of Appellate Procedure, the following independent and/or cumulative reasons:

9

1. <u>Denial of Batson Motion</u>. That the decision of the Court of Criminal Appeals is in conflict with prior decisions of the Supreme Court of the United States and the Supreme Court of Alabama on the same point of law. In it unpublished memorandum the Court of Criminal Appeals held "(T)his Court will not address the appellant's argument on appeal not presented to the trial court" (referring to racial discrimination by State in striking six out of eight remaining black members on strike list through its third, fourth, fifth, sixth, ninth and tenth peremptory strikes) and "(T)he record indicates that the appellant has failed to establish that the ruling of the trial court in determining that the State's peremptory strikes were not motivated by intentional discrimination was clearly erroneous." In the case of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), the United States Supreme Court held that the prosecution violates equal protection when it peremptorily strikes "potential jurors (from the venire) solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." 476 U.S. at 89. In the case of <u>Ex parte Branch</u>, 526 So.2d 609, 623-24 (Ala. 1987), the Alabama Supreme Court held:

> Once a prima facie case has been established, a presumption is created that the peremptory challenges were used to discriminate against black jurors...

10

> The trial judge cannot merely accept the specific
> reasons given by the prosecutor at face value;
> the judge must consider whether the racially neutral
> explanations are contrived to avoid admitting acts
> of group discrimination.  This evaluation by the
> trial judge is necessary because it is possible that
> an attorney, although not intentionally discriminating,
> may try to find reasons other than race to challenge
> a black juror, when race may be his primary factor
> in deciding to strike the juror.

In the case of Ex parte Bird, 594 So.2d 676 (Ala. 1991),

the Alabama Supreme Court held:

> When the trial court has required a party to state
> reasons for the strikes, that party must articulate
> reasons that are clear, specific and legitimate,
> that relate to the particular case, and that are
> non-discriminatory...One unconstitutional peremptory
> strike requires reversal and a new trial.

2.    Juror Misconduct.  That the decision of the Court of

Criminal Appeals is in conflict with a prior decision of the

Supreme Court of Alabama on the same point of law.  In its

unpublished memorandum the Court of Criminal Appeals held

"(T)herefore, the appellant's juror misconduct claim was not

preserved for appellate review."   Objection to sua sponte

removal of petit jurors for juror misconduct (acts of sleeping

and/or failure to respond to voir dire questioning regarding

inability to stay awake) was raised at trial and/or in timely

filed Motion For New Trial.  In the case of Ex parte Willie C.

Dobyne, 805 So.2d 763, 771 (Ala. 2001) the Alabama Supreme

Court held:

> The proper standard for determining whether juror

11

misconduct warrants a new trial, as set out by this
Court's precedent, is whether the misconduct might
have prejudiced, not whether it actually did
prejudice, the defendant.  (Emphasis added.)

3.  Denial of Cross-Examination.  That the decision of

the Court of Criminal Appeals is in conflict with a prior

decision of the Supreme Court of Alabama on the same point of

law.  In its unpublished memorandum the Court of Criminal

Appeals held:

> "The record indicates, however, that the trial
> court would not allow the appellant to ask about
> out-of-court statements made regarding a
> non-testifying co-defendant. 'The latitude and
> extent of cross-examination are matters within
> the sound discretion of the trial court,
> and in the absence of abuse, that discretion
> is not reversible on appeal.  Ex parte Tyson,
> 784 So.2d 357, 365 (Ala. 2001).'"

The record is clear that Petitioner was not allowed to

cross-examine Sheriff Armstrong at trial about Sheriff

Armstrong's March 2002 statement, that had been duly recorded

and transcribed by Sheriff Armstrong's Henry County Sheriff's

Department, concerning Sheriff Armstrong's lenient sentencing

recommendation for Nicholas McKinnon that key prosecution

witness and Co-Defendant Nicholas McKinnon ultimately received

in May 2002.  In the case of Perry v. Brakefield, 534 So.2d

602, 607-08 (Ala. 1988) the Alabama Supreme Court held:

> "In Alabama, a party is entitled to a thorough and
> sifting cross-examination of the witnesses against
> him.... [T]he trial court is vested with considerable
> control over the scope of cross-examination, and its

12

rulings thereon will not be reversed in the absence of a gross abuse of discretion that causes substantial injury to the objecting party....  The trial court may not, however, limit cross-examination as to a relevant and material matter until the examining party has substantially exercised his right to question the witness thereon."

4.    Denial of Requested Jury Instructions.    That the decision of the Court of Criminal Appeals is in conflict with a prior decision of the Supreme Court of Alabama on the same point of law.    In its unpublished memorandum the Court of Criminal Appeals held:

"Because the State presented sufficient evidence corroborating the testimony of the accomplice, any error in the trial court's failing to instruct the jury on the need for corroboration testimony was harmless.  See Arthur v. State, 711 So.2d 1031 (Ala.Crim.App. 1986)."

In the case of Ex parte Chavers, 361 So.2d 1106, 1107 (Ala. 1978) the Alabama Supreme Court set out circumstances in which a criminal defendant is entitled to jury instructions when it held:

"(O)ur decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of the case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility.  Burns v State, 229 Ala. 68, 155 So.2d 561 (1934)."

5.    Disproportionate Sentence and Cruel and Unusual Punishment.    That the decision of the Court of Criminal Appeals is in conflict with a prior decision of the Supreme

Court of Alabama on the same point of law.  In its unpublished memorandum the Court of Criminal Appeals held "(I)t is well-settled that this Court is without authority to review a sentence so long as the sentence imposed by the trial court is within the limits prescribed by our legislature.  Moreland v. State, 469 So.2d 1305, 1306 (Ala. 1986)" and failed to address the proportionality of the sentence or the cruel and unusual nature of the punishment as imposed under the circumstances. In the case of Ex parte Maddox, 502 So.2d 786, 789-90 (Ala, 1986) the Alabama Supreme Court held:

> However, the appellate courts may review a sentence, which, although within the prescribed limitation, is so disproportionate to the offense charged that it constitutes a violation of a defendant's Eighth Amendment rights.  The United States Supreme Court in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), recognized that reviewing courts should grant substantial deference to the authority of the legislatures in determining the kinds and limits of punishment for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals.  Yet, the sentence should be proportionate to the crime.  (Emphasis added.)

6.    Insufficiency of Evidence.  That the decision of the Court of Criminal Appeals is in conflict with its prior decisions cited as authority on the same point of law.  In its unpublished memorandum the Court of Criminal Appeals held:

> "In considering the evidence in a light most favorable to the State, as this Court is required to do, the State presented ample evidence which, if believed by the jury, would sustain the guilty verdict.

14

> <u>Farrior v. State</u>, 728 So.2d 691 (Ala.Crim.App. 1998);
> <u>Whitt v. State</u>, 733 So.2d 463 (Ala.Crim.App. 1998);
> <u>Woods v. State</u>, 724 So.2d 40, 48 (Ala.Crim.App. 1997)."

Toy gun evidence was totally overlooked, accomplice testimony was not sufficiently corroborated, there was insufficient credible evidence establishing Petitioner's complicity in two court of robbery in the first degree and there was absolutely no physical evidence offered or admitted at trial linking Petitioner to the commission of two courts of robbery in the first degree.

The before-mentioned statements of the law as reflected in Nos. 1-6 are in conflict and the Court of Criminal Appeals erred in failing to follow its decisions or the respective decisions of the United States and Alabama Supreme Courts.

WHEREFORE, PREMISES CONSIDERED, Petitioner respectfully request issuance of the writ of certiorari to the Court of Criminal Appeals.

Respectfully submitted this 17th day of November, 2003.

GREGORY A. DaGIAN  (DAG 003)
Attorney for Petitioner
406 Dothan Rd., Ste. B
Abbeville, Alabama  36310
Telephone:  (334) 585-1394
Facsimile:  (334) 585-1395

15

# Court of Criminal Appeals

State of Alabama

Judicial Building, 300 Dexter Avenue

**P. O. Box 301555**

**Montgomery, AL 36130-1555**



H.W."BUCKY" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

Lane W. Mann
Clerk
Wanda K. Ivey
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

## MEMORANDUM

CR-02-1017                    Henry Circuit Court 02-205; -206

Johnny C. Grace, Jr., v. State

McMILLAN, Presiding Judge.

The appellant appeals from his convictions for robbery in the first degree, violations of § 13A-8-41, Ala. Code 1975, and his sentences of 99 years' imprisonment, on each conviction, with the sentences to be served consecutively.

I.

The appellant argues that the trial court erred in denying his Batson motion, in violation of Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). At trial, the appellant argued that the trial court allowed the State to improperly use its peremptory strikes to remove six of eight black venirepersons from the strike list. He based his objection on the low number of blacks on the venire.  On

1

appeal, however, the appellant further argues that the reasons given were "obviously pretextual" and offered "to conceal racial discrimination."   This Court will not address the appellant's argument on appeal not presented to the trial court.  See <u>Long v. State</u>, 615 So. 2d 114 ((Ala. Crim. App. 1992).

The record indicates that the trial court instructed the State to provide its reasons for the strikes and, therefore, this Court will review those reasons.   The State gave the following explanations for its strikes: 1)Juror Number 38 knew the defendant, members of his family, as well as a co-defendant's family. 2) Juror Number 21 knew the defendant's family and thought that she might possibly be related to them. 3) Juror Number 22 knew the defendant's wife or common-law wife or girlfriend. 4) Juror Number 36 was struck because he said that his brother was a judge in New Jersey.  The State explained that another juror, a white female, was also struck because she knew the probate judge in the circuit; as well as another juror, a white male, who was struck because he was a correctional officer in Easterling Prison. The State reasoned that it did not want anyone who thought they had an  increased knowledge about the legal system. 5) Juror Number 5 was struck because he had a prior conviction for robbery in Barbour County. 6) Juror Number 36 was struck because she said that she was familiar with the defendant, and had known him through school. The State noted that its first strike was a white female, who stated that she knew the defendant and had, in fact, dated him in high school.

The record indicates that the appellant has failed to establish that the ruling of the trial court in determining that the State's peremptory strikes were not motivated by intentional discrimination was clearly erroneous. See <u>Wright v. State</u>, 601 So. 2d 1095 ((Ala. Crim. App. 1991).  The record indicates that the State treated blacks and whites similarly in its strikes.  Where there is no disparate treatment among veniremembers, the trial court's finding of neutrality in the use of peremptory strikes in not clearly erroneous.  See <u>Mitchell v. State</u>, 579 So. 2d 45 (Ala. Crim. App. 1991). "The fact that a prospective juror knows the defendant or his family is a valid race-neutral reason for striking the juror." <u>Temmis v. State</u>, 665 So. 2d 953 (Ala. Crim. App. 1994). Additionally, "[s]triking a person or the relative of a person

who has been convicted of a crime is a race-neutral reason." Ex parte McNair, 653 So. 2d 353 (Ala. 1994). Lastly, the demeanor of a juror can also provide a sufficiently race-neutral explanation for the State's use of a peremptory challenge. See Russell v. State, 739 So. 2d 58 (Ala. Crim. App. 1999). The trial court correctly denied the appellant's Batson motion.

II.

The appellant argues that the trial court erred in removing two sleeping jurors, from the petit jury, and replacing them with alternate jurors. He contends that "the only two black people were taken off the jury." Additionally, he contends on appeal that "juror misconduct and/or the court's sua sponte ruling related to same, acted to deny defendant his constitutional right to trial by impartial jury."

Although the appellant argued that the trial court erred in removing the jurors, he failed to present to the court his claim concerning juror misconduct, i.e., a claim based on the fact that the two jurors failed to advise the appellant during voir dire that they had problems staying awake. Therefore, the appellant's juror misconduct claim was not preserved for appellate review. See Toombs v. State, 739 So. 2d 550 ((Ala. Crim. App. 1999).

The record reveals that following the testimony of three State's witnesses, the trial court informed both parties that it had noticed two of the jurors "sleeping a good bit." It noted that because the jurors were not paying attention to the evidence, it intended to replace them with the previously selected alternates. Additionally, the record reveals that the trial court took the testimony of Deputy Mike Sitzler, who had been present and watching the jury, and had also observed the sleeping jurors. Deputy Sitzler corroborated the remarks and observations of the trial court, stating that the jurors appeared to be asleep for as much as "two to three minutes" at a time. In response to the appellant's objection, that trial court responded that it was not removing the jurors because of their race, but because they were sleeping. There is no indication from the record that the trial court abused its discretion in removing the jurors. See Carden v. State, 621

3

So. 2d 342 (Ala. Crim. App. 1992) (The trial court is vested with discretion in the conduct of a trial, and this Court will not interfere with the exercise of that discretion unless it clearly appears that there has been an abuse of that discretion.)

### III.

The appellant argues that his convictions violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.    Specifically, he contends that he received multiple convictions arising out of a single act.

The record indicates, however, that the appellant was convicted of two counts of first-degree robbery, one for the robbery of Ann Murphy and one for the robbery of Jack Murphy. Evidence was presented that each victim was "threatened with the imminent use of force." § 13A-8-43(a)(2), Ala. Code 1975. Ann Murphy testified that one of the robbers put a gun in her face and stated, "you white bitch, I want all of your money before I blow your _____ brains out."  Jack Murphy testified that a gun was stuck in his face and he was ordered to "get in the house" or be shot and killed. Herewith two counts of robbery were separate crimes, each requiring proof of a different victim, which constitutes "an element not contained in the other." See Baird v. State, [CR-00-2047, November 11, 2002] ___ So. 2d ___ (Ala. Crim. App. 2002).

### IV.

The appellant contends that the trial court erred in its ruling that his wife could be compelled to testify against her will, a violation of § 12-21-227, Ala. Code 1975.

The record indicates that the trial court did, in fact, rule against the appellant's wife and her assertion of the marital privilege.    Any error in the trial court's ruling, however, was harmless because the State did not call the appellant's wife to the stand.  The record indicates that the appellant's wife did not testify at all during the proceedings.  Because the appellant has failed to show any prejudice as a result of the trial court's ruling, his argument is without merit. Rule 45, Ala. R. App. P.

4

V.

The appellant argues that the trial court improperly limited his right to an effective cross-examination of a State's witness, Sheriff Lawton Armstrong, of the Henry County Sheriff's Department. Specifically, he argues that he was not allowed to question Sheriff Armstrong about whether he had any "personal animus towards [him]."

The record does not support the appellant's contention. Defense counsel was allowed to ask the witness whether he held any personal animus towards the appellant. Sheriff Armstrong replied that he did not. Defense counsel then introduced evidence regarding a taped statement that the sheriff had made to the appellant's co-defendant, stating that he "wanted it poured to him." The record is not clear whether the sheriff was referring to the appellant when he made the statement; but the State objected to the admissibility of the evidence on relevancy grounds arguing that the statement was made to the co-defendant and not to the appellant. The State asked that the testimony be excluded from the record. The record indicates, however, that the sheriff's testimony was not, as the appellant argues, excluded from the record over his objection, but was before the jury for its consideration. Moreover, the trial court found that Sheriff Armstrong's testimony was limited to matters that did not directly implicate the appellant. Because the appellant has failed to show any prejudice as a result of any limitations on his right to cross-examine the witness, his argument must fail. Rule 45, Ala. R. App. P.

Additionally, the appellant complains that he was not allowed to question Sheriff Armstrong, on cross-examination, about a "statement regarding a sentencing recommendation for co-defendant Nicholas McKinnon." The record indicates, however, that the trial court would not allow the appellant to ask about out-of-court statements made regarding a non-testifying co-defendant. "The latitude and extent of cross-examination are matters within the sound discretion of the trial court, and in the absence of abuse, that discretion is not reversible on appeal." Ex parte Tyson, 784 So. 2d 357, 365 (Ala. 2000). There was no abuse of the trial court's discretion in this regard.

5

VI.

The appellant argues that the trial court erred in its ruling that the uncorroborated testimony of an accomplice, Nicholas McKinnon, should not be excluded and would be submitted to the jury.

An examination of the record indicates that there was sufficient corroboration of the accomplice testimony to allow the evidence to be presented to the jury for its determination, pursuant to § 12-21-222, Ala. Code 1975. The State presented evidence, excluding the testimony of McKinnon, which connected the appellant to the crimes. Specifically, the State presented the testimony of Tyrone Lindsey, who testified that on the night of the robberies, the appellant came to his house, accompanied by other individuals, including McKinnon. He testified that they arrived in McKinnon's car and proceeded to remove a safe from it. The appellant was present when the safe was broken into and the proceeds divided. Because the witness's testimony connected the appellant with the commission of the offense, it was sufficient to satisfy the requirements of § 12-21-222, Ala. Code 1975. See Ferguson v. State, 814 So. 2d 925, 952 (Ala. Crim. App. 2000); Ware v. State, 409 So. 2d 886, 891 (Ala. Crim. App. 1981) ("Corroborative evidence need not directly connect the accused with the offense, but need only *tend* to do so.")

VII.

The appellant argues that the trial court erred in refusing to given his requested jury instructions, numbers eight and nine, regarding the corroboration testimony necessary to convict.

Because the State presented sufficient evidence corroborating the testimony of the accomplice, any error in the trial court's failing to instruct the jury on the need for corroboration testimony was harmless. See Arthur v. State, 711 So. 2d 1031 (Ala. Crim. App. 1996).

VIII.

The appellant argues that the trial court erred in

6

allowing the prosecutor to make improper comments during closing argument. Specifically, he argues that the prosecutor improperly bolstered the credibility of an accomplice, Nicholas McKinnon, by arguing to the jury that "McKinnon's sentence as a youthful offender was 'confidential' and 'sealed' under law which served to distract the jury from the established documentary and testimony evidence...."

The record indicates that the appellant made the following objection to the prosecutor's comment:

> "The testimony that the Youthful Offender hearing was here in open court, and I heard it. If it's sealed, how do we have the records and all the testimony here?"

Because the prosecutor's closing argument is not contained within the record, the appellant's argument cannot be considered on appellate review. See Rogers v. State, 819 So. 2d 643 (Ala. Crim. App. 2001) (An appellate court cannot predicate error on matters not shown by the record, nor can an appellate court presume error from a silent record. It is the appellant's duty to provide the court with a complete record on appeal.) Ferguson v. State, 814 So. 2d 925 (Ala. Crim. App. 2000) (The Court of Criminal Appeals will not base error on speculation and conjecture.)

IX.

The appellant argues that the trial court erred in giving the State's additional jury instruction, after it had concluded its charge to the jury. He argues that because the additional instruction, wherein the trial court read directly from § 13-8-41(b), Ala. Code 1975, was the last instruction given, "[a] reasonable juror may have interpreted said last substantive instruction ... as being more important, more emphasized, more disposing of disputed evidence concerning a deadly weapon or dangerous instrument and more memorable than earlier unemphasized instructions that favored the defendant."

The record reveals that the appellant's objection made at the trial level was based solely on the grounds that the requested instruction should not have been given because the prosecution failed to request the instruction during the

7

charge conference. <u>Rogers v. State</u>, supra; <u>Perkins v. State</u>, 808 So. 2d 1143 (Ala. Crim. App. 1999) (Specific grounds of objection at trial waive all other grounds raised on appeal.)

### X.

The appellant argues that the trial court abused its discretion in sentencing him to two terms of 99 years' imprisonment, to be served consecutively.

The sentence imposed on the appellant, however, fell within the range of sentencing provided by the statute. Robbery in the first degree is a Class A felony, which carries a sentencing range of "life or not more than 99 years or less than 10 years." See § 13A-5-6(a)(1), Ala. Code 1975. "It is well-settled that this Court is without authority to review a sentence so long as the sentence imposed by the trial court is within the limits prescribed by our Legislature." <u>Moreland v. State</u>, 469 So. 2d 1305, 1306 (Ala. 1986).

### XI.

The appellant argues that the trial court erred in denying his motion for a judgment of acquittal and his motion for a new trial.

The evidence presented by the State tended to show that the appellant had worked for the victims, Ann and Jack Murphy, had been in their home, and knew the location of their safe. Evidence was presented that the appellant was the only one of the perpetrators involved in the robbery who knew the victims. Nicholas McKinnon testified that the appellant drove them to the victims' home for the purpose of committing the robbery. The perpetrators put socks on their hands and covered their faces, and forced their way, by gunpoint, into the victims' home. Evidence was presented that they ransacked the house and repeatedly threatened to kill each victim. When the perpetrators were unable to open the safe in the victims' residence, they loaded it into their vehicle and left. Tyrone Lindsey testified that the appellant, McKinnon, and others came to his residence on the night of the robbery, unloaded a safe, and proceeded to divide its contents.

In considering the evidence in a light most favorable to

the State, as this Court is required to do, the State presented ample evidence which, if believed by the jury, would sustain the guilty verdict. <u>Farrior v. State</u>, 728 So. 2d 691 (Ala. Crim. App. 1998); <u>Whitt v. State</u>, 733 So. 2d 463 (Ala. Crim. App. 1998); <u>Woods v. State</u>, 724 So. 2d 40, 48 ((Ala. Crim. App. 1997).

The judgment of the trial court is affirmed.

AFFIRMED.

Cobb, Baschab, Shaw, and Wise, JJ., concur.

# TABLE OF CONTENTS

TABLE OF CONTENTS...............................................................................................i

TABLE OF AUTHORITIES........................................................................................ii

STATEMENT OF THE CASE.......................................................................................1

STATEMENT OF THE ISSUES.....................................................................................7

STATEMENT OF THE STANDARD OF REVIEW.........................................................8

SUMMARY OF THE ARGUMENT..................................................................................9

ARGUMENT I..........................................................................................................11

ARGUMENT II.........................................................................................................16

ARGUMENT III........................................................................................................20

ARGUMENT IV........................................................................................................24

ARGUMENT V.........................................................................................................26

ARGUMENT VI........................................................................................................29

CONCLUSION...........................................................................................................30

CERTIFICATE OF SERVICE.....................................................................................31

STATEMENT CONCERNING FONT AND TYPE STYLE..............................................32

LIST OF ADVERSE RULINGS..................................................................................33

APPENDIX..............................................................................................................34

## TABLE OF AUTHORITIES

**CASES:**

Anderson v. State,
    455 So.2d 957 (Ala.Crim.App. 1984)..................................26

Batson v. Kentucky,
    476 U.S. 79 (1986)..............................................................11

Burns v. State,
    155 So.2d 561 (1934).........................................................24

Coon v. State,
    494 So.2d 184 (Ala.Crim.App. 1986)..................................24

Cooper v. State,
    526 So.2d 602 (Ala.Crim.App. 1986)..................................20

Ex parte Bird,
    594 So.2d 676 (Ala. 1991)............................................12, 15

Ex parte Branch,
    526 So.2d 609 (Ala. 1987)............................................11, 12

Ex parte Chavers,
    361 So.2d 1106 (Ala. 1978)................................................24

Ex parte Willie C. Dobyne,
    805 So.2d 763 (Ala. 2001)..................................................18

Ex parte Ledbetter,
    404 So.2d 731 (Ala. 1981)..................................................17

Ex parte Maddox,
    502 So.2d 786 (Ala. 1986)..................................................27

Ex parte O'Leary,
    438 So.2d 1372 (Ala. 1983);
    417 So.2d 232 (Ala. 1982)..................................................16

Harmelin v. Michigan,
    501 U.S. 957 (1991).........................................................27

Huntley v. State,
     18 So.2d 285 (1944)...............................................................11

Lench v. State,
     18 So.2d 285 (1944)...............................................................17

Massey v.State,
     497 So.2d 590 (Ala.Crim.App. 1986).......................................25

Moody v. State,
     100 So.2d 733 (1957)..............................................................20

Perry v. Brakefield,
     534 So.2d 602 (Ala. 1988).......................................................21

Solem v.Helm,
     463 U.S. 277 (1983).........................................................26, 27

Sorrell v. State,
     31 So.2d 82 (1947)..................................................................25

State v. Freeman,
     605 So.2d 1258 (Ala.Crim.App. 1992).....................................16

Stout v. State,
     547 So.2d 894 (Ala.Crim.App. 1988).......................................24

Williams v. State,
     548 So.2d 501 (Ala.Crim.App. 1988).......................................11

Wilson v. State,
     [Ms. CR-97-1494, August 31, 2001]
     _____ So.2d ____ (Ala.Crim.App. 2001)...................................27

**CONSTITUTIONAL AMENDMENTS:**

U.S. Const. amend VI...........................................................16, 20

U.S. Const. amend VIII...............................................................26

**RULES:**

Rule 401, Ala.R.Evid. ..............................................................20

Rule 611(b), Ala.R.Evid. ...........................................................20

Rule 611(b), Ala.R.Evid., Advisory Committee's Notes. ...........20

**STATUTES:**

Ala. Code 1975, Sec. 12-21-137.......................................................20

Ala. Code 1975, Sec. 12-21-222...............................................25, 29

Ala. Code 1975, Sec. 13A-8-41(a)(1).........................................29

## STATEMENT OF THE CASE

On December 16, 2001 at approximately 9:00 p.m. Mr. and Mrs. Jack Murphy were robbed in their home in rural Henry County by four young black males who had their faces partially or fully covered. C201-202, R279. The robbers took from the Murphy residence and premises a floor safe, United States currency and a cell phone and left the Murphys physically unharmed but restrained by packing tape in straight back chairs. R260. The Henry County Sheriff's Department responded to the Murphy residence at approximately 10:00 p.m. on December 16, 2001 and investigated this crime with the assistance of the Barbour County Sheriff's Department and the Barbour County District Attorney's Office. R278-279, C201-202, C1, C3.

On January 15 , 2002 Investigator Clyde Hornsby with the Henry County Sheriff's Department signed two complaints in Case Nos. DC-02-053 and 054 in the District Court of Henry County against Defendant alleging two counts of robbery in the first degree. C6, C8. On January 23, 2002 Defendant was arrested and placed in the Henry County Jail. C7, C9. Defendant had his initial appearance on January 25, 2002 and his bond was set at $250,000.00 in each case. C11. Defendant applied for and was granted court appointed counsel on January

1

30, 2002. C14. After hearing on February 1, 2002 Defendant's bond was reduced to $100,000.00 in each case. C20-21. Defendant was still unable to post bond and he remained incarcerated in the Henry County Jail through his trial date.

A discovery order was entered February 6, 2002 and Defendant's cases were set for preliminary hearing on March 5, 2002. C25. In exchange for promised "open file" discovery by Plaintiff, Defendant waived preliminary hearing. C24.

The March Term 2002 Henry County Grand Jury issued two indictments against Defendant alleging two counts of robbery in the first degree. C26-27. Defendant's cases were assigned to Judge Denny Holloway for trial. Prior to arraignment Defendant filed a Motion For Speedy Trial which was granted on May 3, 2002 and Motions To Dismiss Or Preclude Multiple Convictions Or Punishments which was initially denied without opportunity for hearing and then deferred for hearing immediately prior to trial. C30-33, C169. Defendant was arraigned and entered pleas of not guilty on April 26, 2002. C175.

Defendant filed a Motion To Compel "open file" discovery on August 2, 2002 which was granted on August 9, 2002. C34-36, 39. Defendant's cases were set for trial on Septemebr 23, 2002 and Plaintiff sought a continuance of said trial which Defendant opposed. C40-42. On September 13, 2002 Judge

Holloway ordered that Defendant's trial be set first on Judge Lawson Little's trial docket on October 15, 2002.  C170, 176.

On October 9, 2002 Defendant requested written notice in advance of trial of the general nature of any character evidence Plaintiff intended to introduce at trial and for what purposes pursuant to Alabama Rule of Evidence 404(b).  C43. Plaintiff provided written notice to Defendant in response thereto on October 11, 2002.  C55.

On October 9, 2002 Defendant filed Motions To Suppress concerning the numerous recorded statements made by Defendant to agents of Plaintiff.  C44-46.  On October 10, 2002 Defendant filed a Motion In Limine To Suppress Inadmissable And/Or Prejudicial Matters.  C47-50.  On October 11, 220 Defendant filed Motions To Suppress Physical Evidence.  C51-53.  On October 11, 2002 Plaintiff gave Defendant Notice Of State's Intent To Enforce Sec. 13A-5-6 Of The Code Of Alabama concerning the commission of a felony in which a firearm or deadly weapon was used or attempted to be used.  C54.

On October 15, 2002 Defendant's cases were called to trial and a jury was qualified and seated and then excused until October 16, 2002 at 9:00 a.m. while the Court heard pre-trial motions by Defendant.  R5-36.  On October 16, 2002 at 9:00 a.m. the trial of Defendant started and at 3:30 p.m. Plaintiff and Defendant gave closing arguments.  R327.  After

3

closing arguments the jury was excused fo the day and told to report back the next morning at 9:00 a.m. R331. on October 17, 2002 at 9:00 a.m. the jury was charged and began deliberations. R359. After deliberating approximately two hours the jury returned guilty verdicts of robbery in the first degree in both cases. R363. The jury was polled. R363. Defendant filed a Motion For Presentence Report and the Court set a sentencing hearing on November 22, 2002 at 9:00 a.m. C119, 178, R364. Plaintiff sought and received a continuance of the sentencing hearing to January 23, 2003. C173.

After sentencing hearing on January 23, 2003 the Court sentenced Defendant to ninety-nine years, a $5000.00 fine and a $1,500.00 victims compensation fund assessment in each case and specifically provided said periods of incarceration to run consecutively. January 23, 2003 R13-14. A written pre-sentence investigation and report was available for the Court's consideration at the sentencing hearing. C135-143.

Plaintiff had filed a Motin For Restitution on October 24, 2002 which it later amended a number of times. C120, C124-125, C146-147. Defendant filed a Request For Restitution hearing on December 3, 2002 and specifically requested a restitution hearing at the sentencing hearing on January 23, 2003. C130-131; January 23, 2003 R7-8.

On February 19, 2003 Defendant filed a Motion To Reconsider Sentences Imposed, a Motion In Arrest of Judgment, a Motion For Judgment of Acquittal, a Motion For New Trial and A Notice Of Appeal. C148-157. On March 3, 2003 Defendant's trial counsel received notice of appointment as appellate counsel for Defendant and that all pending post-trial motions were set for hearing on March 7, 2003 at 9:00 a.m. C173. On March 4, 2003 Defendant filed Form ARAP-IC and Form ARAP-26 with the trial clerk. C161-165. Defendant's appeal was docketed in the Alabama Court of Criminal Appeals as Criminal Appeal No. CR-02-1017. All of Defendant's post-trial motions were denied by the trial court on March 7, 2003. C174. The Reporter's Transcript of proceedings through jury verdicts on October 17, 2002 was filed with the trial clerk on May 16, 2003. R364-365. The Reporter's Transcript of the January 23, 2003 sentencing hearing and the March 7, 2003 post-trial motion hearing was filed with the trial clerk on May 22, 2003. January 23, 2003 R1-19; March 7, 2-3 R1-12. The trial court clerk completed Form ARAP-14, Certificate of Completion And Transmittal Of Record On Appeal By Trial Clerk on May 22, 2003. C207.

The Alabama Court of Criminal Appeals affirmed the judgment of the trial court on October 24, 2003 in Case No. CR-02-1017. An application for a rehearing was filed on

October 29, 2003 and overruled on November 7, 2003.    A

Petition For Writ of Certiorari To The Court of Criminal

Appeals and Supporting Brief was filed with this Honorable

Court.

## STATEMENT OF THE ISSUES

I.    WHETHER THE COURT ERRED TO REVERSAL IN DENYING
      DEFENDANT'S BATSON CHALLENGE TO PLAINTIFF'S
      PURPOSEFUL RACIAL DISCRIMINATION DURING JURY SELECTION?

II.   WHETHER JUROR MISCONDUCT AND/OR THE COURT'S SUA SPONTE
      RULING RELATED TO SAME ACTED TO DENY DEFENDANT HIS
      CONSTITUTIONAL RIGHT TO TRIAL BY IMPARTIAL JURY?

III.  WHETHER THE COURT ERRED TO REVERSAL IN LIMITING
      DEFENDANT'S CROSS EXAMINATION OF A KEY PROSECUTION
      WITNESS?

IV.   WHETHER THE COURT ERRED TO REVERSAL IN REFUSING TO GIVE
      DEFENDANT'S REQUESTED JURY INSTRUCTIONS REGARDING
      CORROBORATION OF ACCOMPLICE TESTIMONY NECESSARY TO
      CONVICT?

V.    WHETHER THE SENTENCES AS IMPOSED ARE UNCONSTITUTIONAL?

VI.   WHETHER THE COURT ERRED TO REVERSAL IN DENYING
      DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR
      MOTION FOR NEW TRIAL?

7

## STATEMENT OF THE STANDARD OF REVIEW

The standard of review for **Issues I, II, III, IV,** and **VI** is whether the trial court abused its discretion.

The standard of review for **Issue II** is whether the juror misconduct might have prejudiced the Defendant and whether the trial court abused its discretion.

The standard of review for **Issue V** is whether the sentence is grossly disproportionate to the offense.

## SUMMARY OF THE ARGUMENT

Regarding **Issue I**, the Court erred to reversal in denying Defendant's <u>Batson</u> challenge to Plaintiff's purposeful racial discrimination in striking six of the remaining eight blacks on the strike list during jury selection. Plaintiff's explanations for its peremptory strikes of blacks were shams and pretextual.

Regarding **Issue II**, juror misconduct by the only two black members of the jury prejudiced Defendant's right to an impartial jury and the Court sua sponte abused its discretion when it discharged the jurors without warning.

Regarding **Issue III**, the Court erred to reversal in limiting Defendant's cross-examination of a key prosecution witness.

Regarding **Issue IV**, the Court abused its discretion when it refused to give Defendant's requested jury instructions that were correct propositions of law regarding corroboration of accomplice testimony necessary to convict.

Regarding **Issue V**, the 198 year sentence is grossly disproportionate to the offense and constitutes cruel and unusual punishment.

Regarding **Issue VI**, the trial court erred to reversal in denying Defendant's Motion For Judgment of Acquittal and/or Motion For New Trial where accomplice testimony was not

9

sufficiently corroborated, there was insufficient evidence regarding the use of a deadly weapon or dangerous instrument, there was insufficient evidence that Defendant procured, induced or caused the robbers to commit the offense or aided or abetted the robbers to commit the offense and there was absolutely no physical evidence offered or admitted at trial linking Defendant to the commission of the crime.

I

**THE COURT ERRED TO REVERSAL IN DENYING DEFENDANT'S BATSON CHALLENGE TO PLAINTIFF'S PURPOSEFUL RACIAL DISCRIMINATION DURING JURY SELECTION.**

Plaintiff systematically and purposely discriminated against members of the black race during jury selection by using its peremptory strikes to eliminate six out of eight remaining black venirepersons from the strike list in violation of the United States Supreme Court holding in Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d. 69 (1986). Plaintiff used his third, fourth, fifth, sixth, ninth and tenth peremptory strikes to eliminate members of the black race from Defendant's (a member of the black race) jury. C61-68, 71.

> "In a Batson context, it is well settled where, as in the present case, the trial court does not make an express finding that a prima facie case of discrimination has been established but nonetheless requires the challenged party to explain its peremptory strikes, the appellate courts will presume that the trial court found a prima facie case and will evaluate the explanations offered by the challenged party."

Huntley v. State, 627 So.2d 1013, 1016 (Ala. 1992) and Williams v. State, 548 So.2d 501, 504 (Ala.Crim.App. 1988), cert. denied, 489 U.S. 1028 (1989).

"Once a prima facie case has been established, a presumption is created that the peremptory challenges were used to discriminate against black jurors." Ex parte Branch, 526 So.2d 609, 623 (Ala. 1987). "When the trial court has

11

required a party to state reasons for the strikes, that party must articulate reasons that are clear, specific and legitimate, that relate to the particular case, and that are nondiscriminatory." Ex parte Bird, 594 So.2d 676, 679 (Ala. 1991).

> "The trial judge cannot merely accept the specific
> reasons given by the prosecutor at face value; the
> judge must consider whether the racially neutral
> explanations are contrived to avoid admitting acts
> of group discrimination. This evaluation by the trial
> judge is necessary because it is possible that an
> attorney, although not intentionally discriminating,
> may try to find reasons other than race to challenge
> a black juror, when race may be his primary factor
> in deciding to strike the juror."

Ex parte Branch, 526 So.2d 609, 624 (Ala. 1987).

"(O)ne unconstitutional peremptory strike requires reversal and a new trial." Ex parte Bird, 594 So.2d 676, 683 (Ala. 1991). While Defendant contends that Plaintiff failed to state any legitimate race-neutral reasons for any of its peremptory strikes (i.e., that all explanations given by Plaintiff were in reality shams or pretextual to cover its purposeful racial discrimination), Defendant points out that Plaintiff's explanation for striking Juror No.22 Janie Kinsey ("she knows Pam Knight") is obviously pretextual. R27. Pam Knight, Defendant's wife, was a potential witness for Plaintiff who had previously given a written statement and had provided alleged physical evidence to law enforcement and any

12

tendency to believe that witness due to prior acquaintance or relationship between the prospective juror and the witness would only serve to benefit Plaintiff's case, not harm it.

Defendant's explanation for striking Juror No. 35 Rex Jerome Rhodes is an obvious pretext to conceal racial discrimination.    Mr.   Rhodes   responded   to   Defendant's questioning during voir dire that his brother-in-law (not his brother as Plaintiff erroneously stated) was a judge in New Jersey but that fact would not affect his ability to be fair and impartial.   Plaintiff's explanation that "Mr. Rhodes was struck because he said his bother (sic) is a judge in New Jersey" is a sham because its claim that it also struck white venirepersons who had "ties to judges or people or the prison" is not supported by the record or anything that actually transpired at trial that is not reflected in the record.   To support its strike of Mr. Rhodes Plaintiff claimed to have struck Juror No. 14 Christy Harper, a white, because she purportedly "said she knows the probate judge" who is a "white judge" in this Circuit.   R27.   In a rural county like Henry County that has a population of approximately 16,000 one would be hard pressed to find a resident who does not "know" the Judge of Probate is Lamar Turner (who, as Plaintiff pointed out, does happen to be white for whatever difference that makes).   Ms. Harper had approached defense counsel after lunch

13

prior to jury selection and attempted to talk to him and when this was disclosed to Plaintiff on the record Ms. Harper stated "(M)y neighbor is Judge Lamar Turner. I didn't know if I was supposed to mention it. I don't know him personally. I have never met him." R24. Plaintiff failed to follow-up and ask Ms. Harper any questions. R24. Plaintiff did not strike Ms. Harper until his twelfth and last peremptory strike. C71. Similarly, Plaintiff attempted to justify its strike of Mr. Rhodes by contending that it struck Juror No. 8 Jerrod Wyatt Bryant, a white, because he is an Alabama Correctional Officer. R27. While it is true that Mr. Bryant responded to Defendant's voir dire questions concerning his employment in law enforcement, Plaintiff really used its second peremptory strike to remove Mr. Bryant because defense counsel had previously represented him in a divorce proceeding and Mr. Bryant had disclosed that requested fact to Plaintiff during its voir dire questioning. C71. Plaintiff failed to make further inquiry of Mr. Rhodes, Ms. Harper or Mr. Bryant regarding its alleged concern of "any ties to judges or people or the prison" or "how the system works". R27, 29. The Alabama Supreme Court has held that the State's failure to engage in a meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for

discrimination.    *Ex parte Bird*, 594 So.2d 676, 683 (Ala. 1991).

The record contains Batson objections by Defendant as to discrimination in number of strikes of blacks relative to total number of blacks on strike list, discriminatory pattern of strikes of blacks and insufficiency of stated reasons of strikes of blacks inferring pretext or sham.  C61-68, 71.

The Alabama Department of Public Health, Center for Health Statistics and the Center for Demographic and Cultural Research at Auburn University Montgomery concur that the black population of Henry County is 34.2%.    After Juror No. 29 Miriam Onadeko was removed for cause blacks comprised only 19% of the strike list.  C61-71.  And Plaintiff was then allowed to eliminate 75% of those blacks remaining through systematic and purposeful discrimination.    The Court's denial of Defendant's Batson challenge injured the substantial rights of Defendant and the venirepersons illegally removed and constitutes reversible error.

## II

**JUROR MISCONDUCT AND/OR THE COURT'S SUA SPONTE RULING RELATED TO SAME ACTED TO DENY DEFENDANT HIS CONSTITUTIONAL RIGHT TO TRIAL BY IMPARTIAL JURY.**

The Sixth Amendment to the United States Constitution provides in pertinent part:

> "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed..."

The jury sworn to hear and decide Defendant's cases (excluding white alternates No. 14 Kristy Harper and No. 9 Sonia Bush) was comprised of ten whites and two blacks, the black members being Juror No. 28 Trumma Neal and Juror No. 24 Henry Lynn. C65-66, 71. After less than three hours of testimony in the morning of the first (and only) day of trial Ms. Neal and Mr. Lynn were removed by the Court sua sponte for sleeping over the objections of the Defendant. R220, 226. Consequently, an all white jury found Defendant guilty in these cases. C61-68, 71.

> "It is fundamental to our system of impartial justice that 'parties have a right to have questions answered truthfully by prospective jurors to enable them to exercise their discretion wisely in exercising their peremptory strikes.'"

State v. Freeman, 605 So.2d 1258, 1259 (Ala.Crim.App. 1992) [quoting Ex parte O'Leary, 438 So.2d 1372, 1373 (Ala. 1983), quoting in turn Ex parte O'Leary, 417 So.2d 232, 240 (Ala. 1982)].

16

When Defendant asked the venire during voir dire, "Does anyone have any reason whatsoever that would prevent them from rendering a fair and impartial verdict based on the admissible evidence presented at trial in this matter?" only Juror No. 16 Martha Jezewski responded affirmatively and she was successfully challenged for cause by the Defendant. R15-16. Ms. Neal and Mr. Lynn, who listened attentively during voir dire, did not advise Defendant that they had any problems staying awake.

> "'Where the party has examined the jurors concerning their qualifications, and they do not answer truly, it is manifest that he is deprived of his right to challenge for cause, and is deceived into foregoing his right of peremptory challenge.'"

Ex parte Ledbetter, 404 So.2d 731, 733 (Ala. 1981) [quoting Lench v. State, 31 Ala.App. 390, 18 So.2d 285, cert. denied, 245 Ala. 539, 18 So.2d 289 (1944)].

Ms. Neal and Mr. Lynn either failed to answer Defendant's questions truthfully during voir dire or their blatant disregard for the oaths they took to serve as jurors by mutually falling asleep during the beginning of Defendant's trial constituted gross misconduct on their parts which is inexcusable. R220-223. If they did not want or care enough to serve on Defendant's jury they should have responded to Defendant's voir dire questioning accordingly. For obvious reasons, Defendant sought to include members of his own race on his jury and Ms. Neal and Mr. Lynn's gross misconduct acted

to deny Defendant a trial by an impartial jury.    In Ex parte
Willie C. Dobyne, 805 So.2d 763, 771 (Ala. 2001) the Alabama
Supreme Court reemphasized that:

> "The proper standard for determining whether juror
> misconduct warrants a new trial, as set out by this
> Court's precedent, is whether the misconduct might
> have prejudiced, not whether it actually did prejudice,
> the defendant."   (Emphasis added.)

Moreover, the Court's sua sponte removal of Ms. Neal and
Mr. Lynn without first warning them acted to deny Defendant an
impartial jury because the last remaining blacks from an
underrepresented and discriminated group in jury selection
were removed from the jury, and by replacing the only two
black members of the jury with two white alternates Defendant
was generally prejudiced by an all white jury deciding a case
involving a black man accused of robbing a well-respected and
well-liked elderly white couple and more specifically
prejudiced by Juror No. 9 Sonia Bush, who Defendant had struck
on information that she would tend to be pro prosecution,
being designated as a deliberating juror.

Objection to sua sponte removal of petit jurors for juror
misconduct (acts of sleeping and/or failures to respond to
voir dire questioning regarding inability to stay awake) was
raised at trial or in timely filed Motion For New Trial.
R220, 226; C149.

Accordingly, the Court abused its discretion in removing Ms. Neal and Mr. Lynn without first attempting to warn them and further abused its discretion in denying Defendant's Motion For New Trial for juror misconduct.

III

**THE COURT ERRED TO REVERSAL IN LIMITING DEFENDANT'S CROSS EXAMINATION OF A KEY PROSECUTION WITNESS.**

The Sixth Amendment to the United States Constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to...be confronted with the witnesses against him." Alabama Rules of Evidence 611(b) provides in pertinent part: "The right to cross-examine a witness extends to any matter relevant to any issue and to matters affecting the credibility of the witness..."

> "Rule 611(b) continues Alabama's present position as a 'wide open rule' jurisdiction regarding matters that may be inquired about on cross-examination. Questions on cross-examination are appropriate as long as they are relevant either to credibility or to any material issue in the case. Moody v. State, 267 Ala. 204, 100 So.2d 733 (1957); Cooper v. State, 526 So.2d 602 (Ala.Crim.App. 1986)."

Ala. R. Evid. 611(b), Advisory Committee's Notes.

Ala. Code 1975, Sec. 12-21-137 provides in pertinent part: "The right of cross-examination, thorough and sifting, belongs to every party as to the witnesses called against him..." Alabama Rule of Evidence 401 provides: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

"In Alabama, a party is entitled to a thorough and
sifting cross-examination of the witnesses against
him.... [T]he trial court is vested with considerable
control over the scope of cross-examination, and its
rulings thereon will not be reversed in the absence of
a gross abuse of discretion that causes substantial
injury to the objecting party....  The trial court may
not, however, limit cross-examination as to a relevant
and material matter until the examining party has
substantially exercised his right to question the witness
thereon."

Perry v. Brakefield, 534 So.2d 602, 607-08 (Ala. 1988).

Acknowledged    key    prosecution    witness    Co-Defendant

Nicholas McKinnon received a generally unheard of lenient

sentence for his part in the Murphy robbery on May 17, 2002.

C203-204;  R320.    Prior  to  receiving  said  sentences  Co-

Defendant McKinnon received a favorable written recommendation

regarding  youthful  offender  treatment  and  sentencing  from

Alabama  Probation  and  Parole  Officer  William  Weber.    R300,

312.    Plaintiff  denies  that  the  district  attorney's  office

ever  made  a  deal  with  Co-Defendant  McKinnon  in  exchange  for

his  testimony  against  Defendant.  R89-92.   Defendant  advised

the  Court  and  Plaintiff  prior  to  trial  that  he  had  evidence

that  Henry  County  Sheriff  Lawton  Ed  Armstrong  had  acknowledged

during  a  tape  recorded  interrogation  of  Co-Defendant  Kevin

McKinnon  in  March  2002,  later  transcribed  by  the  Henry  County

Sheriff's  Department,  that  the  Sheriff  recommended  a  split

sentence  and  probation  for  Nicholas  McKinnon.    R91-92.

Plaintiff  claimed  that  any  deal  between  Nicholas  McKinnon  and

the Henry County Sheriff's Department is outside his control. R91-92. The Court advised Defendant that he would be able to present evidence at trial regarding Sheriff Armstrong's March 2002 statement. R92.

Defendant made an offer of proof regarding Sheriff Armstrong's March 2002 statement regarding a sentencing recommendation for Co-Defendant Nicholas McKinnon. R286-287. Sheriff Armstrong was asked about his recommendation in his March 2002 statement as follows:

> "...it's like the other day, I had one of the lawyers come up here and tell me---and was trying to work out a deal with one of his clients and sat down in the chair over there. He said, Sheriff, I see where you recommended so and so and so, and you didn't have no objection to him getting a split sentence. I said, I don't. He said, well, how about my client, my client was with him. I said, I do." R288.

The Court sustained Plaintiff's generic objection and at a bench conference where everyone was talking low so the jury could not hear ruled that Defendant could not use the March 2002 prior inconsistent statement by Sheriff Armstrong. R288-289. Sheriff Armstrong who was on the witness stand was standing up and leaning over the Judge's bench to listen to the results of the sidebar conference. When Defendant then asked the Sheriff about any recommendation that he or his department made to Co-Defendant Nicholas McKinnon, without the aid of the Sheriff's prior inconsistent statement from March

2002 as the Court had ordered, Sheriff Armstrong testified, "I don't recall if we did or if we didn't" and "I can't recall that."  R289-290.

The matters excluded by the Court were highly relevant because they touched upon the material issue in the case whether Co-Defendant Nicholas McKinnon's accomplice testimony implicating Defendant was true or a lie bartered for with favorable treatment from Plaintiff or its agents and whether Sheriff Armstrong was credible in his testimony.  The Court abused its discretion in limiting Defendant's cross-examination and the substantial rights of Defendant were injured thereby which requires that his convictions be reversed.

## IV

**THE COURT ERRED TO REVERSAL IN REFUSING TO GIVE DEFENDANT'S REQUESTED JURY INSTRUCTIONS REGARDING CORROBORATION OF ACCOMPLICE TESTIMONY NECESSARY TO CONVICT.**

"A trial court has broad discretion in formulating its jury instructions, provided they are an accurate reflection of the law and facts of the case." Coon v. State, 494 So.2d 184, 186 (Ala.Crim.App. 1986). "The trial court's refusal to give written requested charges does not constitute error when the charges are covered in the trial court's oral charge, are confusing or misleading, are inapplicable or abstract, or are an incorrect statement of the applicable law." Stout v. State, 547 So.2d 894, 898-99 (Ala.Crim.App. 1988).

In Ex parte Chavers, 361 So.2d 1106, 1107 (Ala. 1978) the Alabama Supreme Court set out circumstances in which a criminal defendant is entitled to jury instructions when it stated: "(O)ur decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of the case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility. Burns v. State, 229 Ala. 68, 155 So.2d 561 (1934)."

Defendant's requested written jury instructions Nos. 8 and 9 were inexplicably refused by the Court and not given.

C84-85; R326-327.    Requested jury instructions 8 and 9 are correct statements of the law, are not misleading or confusing, and are not covered elsewhere in the trial court's instructions to the jury.    Requested jury instruction No. 8 is Ala. Code 1975, Sec. 12-21-222 verbatim.    C84.    Requested jury instruction No. 9 is a direct (but not verbatim) quote of the holding from Massey v. State, 497 So.2d 590 (Ala.Crim.App. 1986) wherein this Honorable Court cited as authority the Alabama Supreme Court decision of Sorrell v. State, 31 So.2d 82, 83 (1947).    C85.    The jury should have been instructed as requested by Defendant so that as the trier of fact it could determine if there was credible incriminating evidence to corroborate the accomplice testimony of Nicholas McKinnon sufficient to convict Defendant.

The trial court's refusal to give Defendant's requested jury instructions No. 8 and/or No. 9 injured the substantial rights of Defendant and constitutes reversible error.

## V

**THE 198 YEAR SENTENCE AS IMPOSED IS UNCONSTITUTIONAL.**

The Eighth Amendment to the United States Constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Based on current generally accepted life expectancy statistics, Defendant's 198 year sentence constitutes the equivalent of four life sentences as punishment for two convictions where the victims, by their own admission, suffered absolutely no physical harm.  R260, January 23, 2003 R2-3.  Said sentence as imposed, given the underlying facts of these cases, is grossly disproportionate to the offense committed and constitutes cruel and unusual punishment prohibited by the Eighth Amendment.

"Proportionality of sentence is certainly a vital constitutional guarantee."  Anderson v. State, 455 So.2d 957, 958 (Ala.Crim.App. 1984) (citing Solem v. Helm, 463 U.S. 277 (1983).  The Alabama Supreme Court has stated:

> "However, the appellate courts may review a sentence,
> which, although within the prescribed limitation,
> is so disproportionate to the offense charged that it
> constitutes a violation of a defendant's Eighth
> Amendment rights.  The United States Supreme Court in
> Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77
> L.Ed.2d 637 (1983), recognized that reviewing courts
> should grant substantial deference to the authority
> of the legislatures in determining the kinds and
> limits of punishment for crimes, as well as to the
> discretion that trial courts possess in sentencing

convicted criminals.  <u>Yet, the sentence should be proportionate to the crime</u>." (Emphasis added.)

<u>Ex parte Maddox</u>, 502 So.2d 786, 789-90 (Ala. 1986).

The Alabama Court of Criminal Appeals in <u>Wilson v. State</u>, [Ms. CR-97-1494, August 31, 2001] __ So.2d __ (Ala.Crim.App. 2001) reversed a sentence as imposed and held that current Eighth Amendment jurisprudence requires a "narrow proportionality review" of disproportionate sentences in accordance with <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991) by applying the following <u>Solem</u> factors:

> "(i) the gravity of the offense and the harshness of the penalty;  (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."

"463 U.S. at 292".

Regarding factor one, the victims, by their own admission suffered absolutely no physical harm.  R260, January 23, 2003 R2-3.  The robbers complied with multiple requests from the victims and carefully handled them by loosely restraining them with tape during the robbery.  R187-188, 260.  The facts do not support the victims' claim of being "terrorized".  A sixty-three year old robbery victim in poor health who truly has been "terrorized" does not go looking for his four young robbers as did Mr. Murphy.  R248.  The 198 year sentence as imposed is the equivalent of four life sentences for Defendant

for two convictions and is in fact longer than Alabama has been a self-governing state in the United States of America.

Regarding factor two, Co-Defendant Nicholas McKinnon received, if you accept as true Plaintiff's assertions that no deal was made with him for his testimony against Defendant, youthful offender treatment and a concurrent split sentence and probation based on the facts of this case. C203-204; R320. The great disparity in sentences between Co-Defendant Nicholas McKinnon and Defendant cannot be legitimately justified by Nicholas McKinnon's age alone. Moreover, Defendants in robbery cases in this jurisdiction where there is no physical harm to the victim have not received 198 year sentences.

Similarly, regarding factor three, defendants in robbery cases in other jurisdictions where there is no physical harm to the victim have not received 198 year sentences.

Accordingly, Defendant respectfully requests that his sentences, as imposed, be reversed as unconstitutional cruel and unusual punishment.

VI


**THE COURT ERRED TO REVERSAL IN DENYING DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL AND/OR MOTION FOR
A NEW TRIAL.**

Plaintiff failed to make prima facie cases for two counts
of Robbery in the First Degree.  The testimony of accomplice
Nicholas McKinnon was not sufficiently corroborated and should
have been excluded by the Court pursuant to Ala. Code 1975,
Sec. 12-21-222.  There was insufficient evidence presented at
trial that an actual deadly weapon or dangerous instrument was
used in the commission of the robbery as required by Ala. Code
1975, Sec. 13A-8-41(a)(1).  During the robbery, the victims
individually and collectively questioned whether the two
handguns brandished were real or toys.  C201; R211, 245, 248,
254-255, 267, 269, 279.  There was insufficient evidence
presented at trial that Defendant procured, induced or caused
the robbers to commit the offense or aided or abetted the
robbers in committing two counts of robbery in the first
degree absent the uncorroborated testimony of accomplice
Nicholas McKinnon.  There was absolutely no physical evidence
offered or admitted at trial linking Defendant to the
commission of the robbery.  Accordingly, the Court erred to
reversal in denying Defendant's Motions For Judgment of
Acquittal and/or Motion For New Trial.

29

## CONCLUSION

For the foregoing reasons, individually and cumulatively, Defendant respectfully seeks from this Honorable Court reversal of the judgments of conviction and sentence by the Circuit Court of Henry County in State of Alabama v. Johnny C. Grace, Jr., Case Nos. CC-2002-205 and 206.

Respectfully submitted this _17th_ day of November, 2003

GREGORY A. DaGIAN (DAG 003)
Attorney for Petitioner
406 Dothan Rd., Ste. B
Abbeville, AL  36310
Telephone: (334) 585-1394
Facsimile: (334) 585-1395

## CERTIFICATE OF SERVICE

I certify that I have served copies of this petition and the supporting brief on Michael B. Billingsley, Esq., Office of the Attorney General, 11 S. Union St., Third Floor, Montgomery, Alabama, 36130, and on the Clerk of the Court of Criminal Appeals, Judicial Building, 300 Dexter Avenue, Montgomery, Alabama, 36130-1555, by hand delivery or by placing same in the U.S. Mail, properly addressed, with adequate postage affixed thereto this 17th day of November, 2003.

GREGORY A. DaGIAN (DAG 003)
Attorney for Petitioner
406 Dothan Rd., Ste. B
Abbeville, AL  36310
Telephone: (334) 585-1394
Facsimile: (334) 585-1395

## STATEMENT CONCERNING FONT AND TYPE STYLE

I certify that access to equipment capable of producing print in Courier New 13 font and type is not reasonably available and the font and type style utilized constitutes the closest approximation to Courier New 13 available.

GREGORY A. DaGIAN
Attorney for Petitioner

## LIST OF ADVERSE RULINGS

**TRANSCRIPT PAGE**

Batson challenge denied....................................................29

Sua sponte dismissal of jurors........................................226

Objections limiting cross examination sustained.........283, 289

Motion For Judgment of Acquittal denied......................324

Defendant's requested jury instructions denied..........326

Defendant sentenced to 198 years...January 23, 2003 13-14

All Post-Trial Motions denied................March 7, 2003 10

## APPENDIX

U.S. Const. amend VI.................................................A1

U.S. Const. amend VIII..............................................A2

Rule 26.8, Ala.R.Crim.P. ..........................................A3

Rule 401, Ala.R.Evid. .............................................A5

Rule 611(b), Ala.R.Evid. ..........................................A6

Advisory Committee's Notes to
    Rule 611(b), Ala.R.Evid. ....................................A7

Ala. Code 1975, Sec. 12-21-137.....................................A8

Ala. Rule 1975, Sec. 12-21-222.....................................A9

Ala. Rule 1975, Sec. 13A-8-41......................................A10

Amend. II              AMENDMENTS TO THE CONSTITUTION                    Amend. VI

Carolina, January 19, 1790; New Hampshire, January 25, 1790; Delaware, January 28, 1790; Pennsylvania, March 10, 1790; New York, March 27, 1790; Rhode Island, June 15, 1790; Vermont, November 3, 1791, and Virginia, December 15, 1791. The following of the thirteen original states did not ratify until the year 1839: Massachusetts, March 2; Georgia, March 18; Connecticut, April 19.

## [AMENDMENT II]

### [Right; keeping and bearing arms]

A well-regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed.

## [AMENDMENT III]

### [Soldiers; quartering]

No soldier shall, in time of peace be quartered in any house, without the consent of the owner, nor in time of war, but in a manner to be prescribed by law.

## [AMENDMENT IV]

### [Right; security against unreasonable searches and seizures]

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

## [AMENDMENT V]

### [Rights; persons in criminal proceedings]

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

## [AMENDMENT VI]

### [Rights; speedy and public trial, nature of accusation, assistance of counsel, etc.]

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascer-

17

tained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

### [AMENDMENT VII]

#### [*Jury trial; civil cases*]

In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law.

### [AMENDMENT VIII]

#### [*Excessive bail or fines — Cruel and unusual punishments*]

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

### [AMENDMENT IX]

#### [*Rights of Constitution; no denial of other rights*]

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

### [AMENDMENT X]

#### [*Powers; reservation to states or people*]

The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people.

### [AMENDMENT XI]

#### [*Judicial power; restriction*]

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

Note. — The eleventh amendment of the Constitution of the United States was proposed to the legislatures of the several states by the third congress, on the 4th of March, 1794, and was declared in a message from the president to congress, dated the 8th of January, 1798, to have been ratified by the legislatures of three fourths of the states.

### [AMENDMENT XII]

#### [*President and Vice-President; election*]

The electors shall meet in their respective states, and vote by ballot for president and vice-president, one of whom, at least, shall not be an inhabitant

18

*Rule 26.7. Presence of the defendant.*

The defendant has the right to be present at the sentence hearing and at **sentencing. Failure of the defendant to appear at the hearing or for sentencing** will not delay the pronouncement and entry of judgment and sentence if the defendant's right to be present has been waived, either in writing or by the defendant's nonappearance after notice of the time, date, and place of the sentence hearing or sentencing.

Editor's note. — Former similar law: ARCrP, Temporary Rule 7.

### Committee Comments

Rule 26.7 requires the presence of the defendant at the sentence hearing and at sentencing, regardless of the nature of the sentence to be imposed. Defendant is entitled under Rule 9.1(a) to be present at the sentence hearing and at sentencing. This rule was included to reiterate the provisions of Rule 9.1(a) and also because of the essential warnings and information regarding appeal and required to be given after sentence is pronounced. See Rule 26.9.

Art. 1, § 6, Alabama Constitution of 1901, provides that "in all criminal prosecutions, the accused has a right to be heard by himself and counsel, or either ... and ... to be confronted by the witnesses against him ...." Alabama courts have not interpreted this section to guarantee a defendant the constitutional right to be present at the sentencing.

This rule, when read together with Rule 9.1(b), provides that, if defendant has been notified of the date of the sentence hearing or sentencing, then the defendant is not permitted to extend the time of taking an appeal by non-appearance at the sentence hearing and the subsequent sentencing. This will be true regardless of whether the defendant is represented by counsel at the sentence hearing or sentencing. Thus, the time of filing a notice of appeal is to run from entry of judgment and sentence, whether or not the defendant is present at sentencing. A defendant, when absent at sentencing through no fault of his own, may be entitled to a delayed appeal under Rule 32.

### CASE NOTES

**Harmless error.**

An error in resentencing by written order is rendered harmless by a later resentencing hearing held in appellant's presence. Cline v. State, 571 So. 2d 368 (Ala. Crim. App. 1990).

The circuit court violated this rule by proceeding with the sentencing hearing in the appellant's absence. That violation was harmless, however, because the appellant received the same sentence he bargained for and of which he had been informed at the guilty plea proceeding. Lett v. State, 663 So. 2d 1022 (Ala. Crim. App. 1994).

*Rule 26.8. Principles of sentencing.*

The sentence imposed in each case should call for the least restrictive sanction that is consistent with the protection of the public and the gravity of the crime. In determining the sentence, the court should evaluate the crime and its consequences, as well as the background and record of the defendant and give serious consideration to the goal of sentencing equality and the need to avoid unwarranted disparities.

Judges should be sensitive to the impact their sentences have on all components of the criminal justice system and should consider alternatives to long-term institutional confinement or incarceration in cases involving offenders whom the court deems to pose no serious danger to society.

Editor's note. — Former similar law: ARCrP, Temporary Rule 6(c).

### Committee Comments

Growing attention has been given to sentencing practices and procedures at both the state and federal levels. In addition to perceived sentencing disparity in our criminal justice system, skyrocketing costs associated with institutional confinement have helped to focus attention on the judiciary's role in sentencing.

Prison overcrowding has significantly frustrated the criminal justice system in Alabama as well as most other states. Sentencing judges generally can only speculate as to what their sentences mean. This uncertainty operates to undermine the credibility of the sentencing process.

For appropriate defendants, judges are encouraged to fashion sentences utilizing alternatives other than basic probation and long-term institutional confinement. Although the alternatives presently available will vary to some degree, depending on the sentencing court's location, some alternatives include the following: a split sentence pursuant to Ala. Code 1975, § 15-18-8 (through judicial innovation § 15-18-8 has also been used to impose what is referred to as a "reverse" split sentence, wherein the defendant is sentenced to serve the probationary portion of the sentence first, followed by a period of incarceration; since the judge retains jurisdiction, the period of incarceration can be suspended to reward the defendant for successfully completing probation); fines, court costs, and restitution; drug and alcohol rehabilitation programs; boot camp pursuant to § 15-18-8; community service; work release; responsibility to community restitution centers; house arrest; and electronic monitoring.

Effective utilization of well planned alternatives to incarceration will:

1) Preserve scarce prison bed-space for habitual offenders and others from whom society needs protection.

2) Save the state the cost of incarceration, estimated to be approximately $14,000 per year, and the cost of new prison construction.

3) Frequently permit the offender to remain employed and thereby enable him to earn funds to pay fines, restitution, and court costs, as well as to support his family.

4) Frequently permit the offender who is a drug or alcohol abuser to obtain treatment for such abuse and thereby remove the reason for his criminal behavior.

5) More likely result in the defendant's rehabilitation than incarceration. Prisons serve as training camps for crime, especially for young offenders.

6) Tend to diminish disparity in sentencing. Judges who have alternatives available to them are likely to move to the middle ground provided by the alternatives, whereas judges who must choose between the extremes of incarceration or probation, when they choose differently, create the perception of disparity.

217

A4

**Section (d). Inconsistent presumptions.** There are occasions when two presumptions at work in the same case clash. When such a conflict arises, the presumption prevails which is based upon the weightier policy considerations. Cross v. Rudder, 380 So. 2d 766 (Ala. 1979). Should the policy weight of such presumptions be equal, neither applies. Compare Gulf States Paper Corp. v. Hawkins, 444 So. 2d 381 (Ala. 1983).

## Rule 302.

### Applicability of federal law in civil actions and proceedings.

In civil actions and proceedings, the effect of a presumption respecting a fact which is an element of a claim or defense as to which federal law supplies the rule of decision is determined in accordance with federal law.

#### Advisory Committee's Notes

This rule differs from Fed. R. Evid. 302 only insofar as the term "federal law" has been substituted for the term "State law." That change makes this rule identical to that found in the Uniform Rules of Evidence. Indeed, the commentary to Unif. R. Evid. 302 explains this substitution and its resulting effect as follows:

"Parallel jurisdiction in state and federal courts exists in many instances. The modification of Rule 302 is made in recognition of this situation. The rule prescribes that when a federally created right is litigated in a state court, any prescribed federal presumption shall be applied."

The term "federal law" may include both statutes and case law. Rule 302, however, is not intended to affect preexisting law governing what federal case law is binding upon Alabama courts.

## ARTICLE IV. RELEVANCY AND ITS LIMITS

## Rule 401.

### Definition of "relevant evidence".

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

#### Advisory Committee's Notes

This rule is identical to the corresponding Federal Rule of Evidence and to the relevancy rule adopted by the overwhelming majority of states that have adopted modern evidence rules. The test of logical relevancy set forth in Rule 401 is a liberal one. Evidence is to be admitted if it possesses "any tendency," in logic or experience, to lead to the fact or inference for which it is offered. The standard of probability under the rule is "more probable or less probable than it would be without the evidence."

Rule 401 leaves unchanged the preexisting relevancy test that has applied historically under the common law of Alabama. See, e.g., Aetna Life Ins. Co. v. Lavoie, 470 So. 2d 1060, 1078 (Ala. 1984) ("whether the offered evidence bears any logical relationship to the ultimate inference for which it is offered") (emphasis added), vacated, 475 U.S. 813 (1986); Gafford v. State, 122 Ala. 54, 25 So. 10, 12 (1899) (characterizing the issue as one of whether "the testimony offered to be introduced by defendant [would] have any tendency, even though slight, to shed light on the main inquiry") (emphasis added); Mattison v. State, 55 Ala. 224, 232

856

Crim. App.), cert. denied, 390 So. 2d 1176 (Ala. 1980). See Conrad v. City & County of Denver, 656 P. 2d 662 (Colo. 1983).

## Rule 611.

## Mode and order of interrogation and presentation.

(a) *Control by court.* The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

(b) *Scope of cross-examination.* The right to cross-examine a witness extends to any matter relevant to any issue and to matters affecting the credibility of the witness, except when a party calls an adverse party or an officer, a director, or a managing agent of a public or private corporation or a partnership or association that is an adverse party, or a witness identified with an adverse party. In those excepted situations, cross-examination by the adverse party may be only upon the subject matter of the witness's examination-in-chief or upon the witness's credibility.

(c) *Leading questions.* Leading questions should not be used on the direct examination of a witness, except when justice requires that they be allowed. Leading questions are permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

### Advisory Committee's Notes

Section (a). Control by court. As witnesses testify and evidence is presented, several procedural issues arise. These issues are to be resolved, as under pre-existing common law, through the judge's common sense and fairness. The judge has the primary responsibility for the effective working of the adversary system. Alford v. State Farm Fire & Casualty Co., 496 So. 2d 19 (Ala. 1986) (recognizing that the mode of examining witnesses and the order of introducing evidence are within the discretion of the trial court). See C. Gamble, McElroy's Alabama Evidence § 433.01 (4th ed. 1977); J. Colquitt, Alabama Law of Evidence § 6.11 (1990). Spelling out detailed rules governing those issues is neither desirable nor feasible. See Fed. R. Evid. 611(a) advisory committee's note.

At least three goals should guide the exercise of this judicial discretion. First, the mode and order of interrogating witnesses and presenting evidence should be such as will promote the ascertainment of the truth.

Second, efforts should be made to avoid needless consumption of time. The judge's discretion in this regard is likewise recognized in Ala. R. Evid. 403. The trial judge, for example, has the discretion to limit the number of witnesses who may be called to testify to a particular matter. Allen v. State, 290 Ala. 339, 276 So. 2d 583 (1973). See C. Gamble, McElroy's Alabama Evidence § 10.06 (4th ed. 1991).

Third, witnesses should be protected from harassment or undue embarrassment. Compare Ala. Code 1975, § 12-21-141 (declaring a witness's right to be protected from improper questions and from a harsh or insulting demeanor). The importance of the testimony, the nature of the inquiry, its relevance to credibility, waste of time, and confusion are factors for the judge to consider in this regard. Efforts to protect the witness, of course, should by no means foreclose efforts to discredit the witness. See Alford v. United States, 282 U.S. 687, 694 (1931) (recognizing that the trial's

judge's duty to protect a witness arises only when the questions "go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate"). See Ala. Code 1975, § 12-21-137 (giving every party the right of cross-examination, "thorough and sifting," as to witnesses called against him or her).

**Section (b). Scope of cross-examination.** Rule 611(b) continues Alabama's present position as a "wide open rule" jurisdiction regarding matters that may be inquired about on cross-examination. Questions on cross-examination are appropriate as long as they are relevant either to credibility or to any material issue in the case. Moody v. State, 267 Ala. 204, 100 So. 2d 733 (1957); Cooper v. State, 526 So. 2d 602 (Ala. Crim. App. 1986). See Ala. R. Civ. P. 43(b) (permitting cross-examination "upon all matters material to every issue of the action"); Ala. Code 1975, § 12-21-137 (declaring that parties have the right to a cross-examination that is "thorough and sifting"). See also C. Gamble, McElroy's Alabama Evidence § 438.01 (4th ed. 1991).

The more limited "scope of direct examination" standard is adopted, as now provided under Ala. R. Civ. P. 43(b), when one calls an adverse party or a specified agent of an adverse party and that witness is then cross-examined by counsel for the adverse party. This limit on the scope of cross-examination is extended to apply to the adverse party's cross-examination of a witness identified with the adverse party. See Rule 611(c).

**Section (c). Leading questions.** This section embraces the traditional Alabama position that leading questions are not permitted during direct examination. It is within the trial judge's discretion, however, to permit leading questions "when justice requires that they be allowed." This exception from the "no leading questions" rule retains Alabama's preexisting statutory provision allowing such questions "when, from the conduct of the witness or other reason, justice requires it." Ala. Code 1975, § 12-21-138 (superseded by adoption of Rule 611(c)). Rule 43(b), Ala. R. Civ. P., likewise permits leading questions on direct examination "when justice requires."

Under Rule 611(c), leading questions should always be permitted on cross-examination.

## Rule 612.

### Writing used to refresh memory.

(a) *General rule.* Any writing may be used to refresh the memory of a witness.

(b) *Production of writing used to refresh memory.* If while testifying a witness uses a writing to refresh his or her memory, then an adverse party is entitled, upon request, to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions of it relating to the witness's testimony. If it is claimed, in opposition to such a request, that the writing contains matters not related to the subject matter of the testimony, the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal. If a writing is not delivered pursuant to order under this rule, the court shall make any order justice requires, except that in a criminal case if the prosecution does not comply, the order shall be one striking the testimony of the witness whose memory was refreshed or, if the court in its discretion determines that the

bargaining, he did not have to placed under oath before his guilty plea was accepted by the court. Young v. State, 698 So. 2d 1060 (Ala. Crim. App. 1992).

**Procedure — Trial.**

If the proper oath is administered, there is no rule which forbids the swearing of a number of witnesses at one and the same time. Vaughn v. State, 236 Ala. 230, 181 So. 428 (1938).

**Cited in** Wright v. State, 24 Ala. App. 136 So. 636 (1931); Rodgers v. State, 42 Ala. App. 660, 177 So. 2d 460 (1965).

## § 12-21-137. Cross-examination.

The right of cross-examination, thorough and sifting, belongs to every party as to the witnesses called against him. If several parties to the same case have distinct interests, each may exercise this right.

**Editor's notes.** Rule 43 of the Alabama Rules of Civil Procedure supersedes this section as to civil proceedings; however, this section may be applicable in criminal or probate proceedings.

**Cross references.** — Court rules, scope of examination and cross-examination, A.R.C.P. Rule 43(b).

### CASE NOTES

General comment.
Bias.
Burden of persuasion.
Character.
Construction with other law.
Conversations.
Credibility.
Discretion.
Evidence — Admissible.
Evidence — Inadmissible.
Harmless error.
Knowledge.
Limitation.
Materiality.
No error.
Prior criminal charge.
Procedure — Trial.
Reversible error.
Review.
When applicable.
Illustrative cases.
Cited.

**General comment.**

Right of cross-examination is a valuable right. Mitchell v. Birmingham News Co., 223 Ala. 568, 137 So. 422 (1931).

Every party has the right of cross-examination, thorough and sifting, of the witnesses who testify against him. Sowell v. State, 30 Ala. App. 18, 199 So. 900 (1941); Adams v. State, 30 Ala. App. 188, 2 So. 2d 468 (1941).

Former section 443, Title 7, Code of Alabama 1940 (see now § 12-21-137), guarantees the right of cross examination, thorough and sifting. This section must be reasonably construed. It does not deprive the trial judge of discretion reasonably exercised to limit the range of cross examination in respect to collateral and irrelevant matter. The undue and unnecessary consumption of time in the trial of causes, and the

avoidance of multiplied collateral and irrelevant issues is committed in the first instance to the wise discretion of the trial judge. Powell v. Powell, 285 Ala. 230, 231 So. 2d 103 (1970).

Party exercising right of cross-examination is afforded great latitude, especially when inquiry is directed to interest, bias, prejudice or partiality about matters to which witness is testifying. McMullian v. State, 52 Ala. App. 321, 292 So. 2d 127 (1973).

One purpose of cross-examination is to elicit conflicts of the witness' evidence and thereby show that the witness is confused in his evidentiary assessment of facts. Jackson v. State, 56 Ala. App. 597, 324 So. 2d 311 (1975).

Right to a "thorough and sifting" cross-examination is not limited to criminal cases. Lomax v. Speed, 507 So. 2d 455 (Ala. 1987).

The right to cross-examine a witness is a guaranteed right provided to an accused. This right inures to the benefit of the State in a criminal proceeding. Herring v. State, 563 So. 2d 33 (Ala. Crim. App. 1990).

The right of cross-examination is a fundamental right granted by Article 1, § 6 of the Constitution of Alabama, 1901, and is included in the right of an accused to confront the witnesses against him. Case v. Case, 627 So. 2d 980 (Ala. Civ. App. 1993).

**Bias.**

Proper way to show bias of a witness is to ask him directly the state of his feelings, and, if he denies bias, to resort to facts and circumstances tending to show it. Sullivan v. State, 25 Ala. App. 140, 142 So. 110 (1932).

Questions to illustrate witness' friendship, bias, or prejudice for or against the defendant are competent. Roan v. State, 225 Ala. 428, 143 So. 454 (1932).

### § 12-21-221. Reward contingent upon conviction.

There shall be no exclusion of a witness in a criminal case because, on conviction of the defendant, he may be entitled to a reward or to a restoration of property or to the whole or any part of the fine or penalty inflicted. The witness may be examined touching such circumstances, but the examination goes to his credibility and not to his competency as a witness.

#### CASE NOTES

General comment.
Evidence — Admissible.
Illustrative cases.
Cited.

**General comment.**

It is always permissible to show the pecuniary interest of a witness in the result of a trial as affecting his credibility under this section, but where the interest is fixed by law, it is not necessary to make the proof and, therefore, in such cases, a refusal to permit proof would not be error. Weaver v. State, 17 Ala. App. 506, 86 So. 179 (1920).

**Evidence — Admissible.**

The bias of an adverse witness is always a proper inquiry, and on cross-examination any fact may be elicited which tends to show bias or partiality on the part of such witness and in in this connection the pecuniary interest a witness may have in the outcome of the trial is admissible to be considered by the jury in weighing the testimony of the witness. Beverly v. State, 27 Ala. App. 374, 173 So. 397 (1937).

**Illustrative cases.**

In a prosecution for making or possessing a still for the manufacture of prohibited liquors, where a statute granted a reward for a conviction, it was error not to permit the defendant to cross-examine the sheriff as to whether or not he received a reward for a conviction of the defendant where it was not fixed by law that the sheriff would receive a reward. Weaver v. State, 17 Ala. App. 506, 86 So. 179 (1920).

Cited in Dixon v. State, 40 Ala. App. 465, 115 So. 2d 262 (1957), rev'd on other grounds, 269 Ala. 593, 115 So. 2d 269 (1958), 269 Ala. 548, 115 So. 2d 270 (1959); Pugh v. State, 42 Ala. App. 499, 169 So. 2d 27 (1964).

### § 12-21-222. Corroboration of accomplice testimony.

A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient.

#### CASE NOTES

General comment.
Accomplice.
—Generally.
—Insufficient evidence.
—Sufficient evidence.
Burden of proof.
Conspiracy.
Construction with other law.
Corroborative evidence.
—Insufficient.
—Sufficient.
Effective assistance of counsel.
Elements.
Evidence — Admissible.
Evidence — Generally.
Harmless error.
Instructions.
Legislative intent.

Limitation.
Minors.
No error.
Presumptions.
Procedure — Trial.
Question of law or fact.
Requirements.
Reversible error.
Review.
Revocation of probation.
Standard of proof.
Time limitations.
Waiver.
When applicable.
Illustrative cases.
Cited.

**General comment.**

This section has been liberally construed

course of committing a theft" which includes an attempted theft. Grace v. State, 431 So. 2d 1331 (Ala. Crim. App. 1982).

As robbery in the first degree embraces acts which occur in the "attempt to commit" theft, as well as in the actual commission of theft, it was not necessary that the state prove that property was actually taken by the defendant during any attempted theft, where the state's proof otherwise met the statutory requirements of §§ 13A-8-40, 13A-8-41, and 13A-8-43. Williams v. State, 462 So. 2d 944 (Ala. Crim. App. 1983).

At the very least, one may commit first degree robbery by threat of violence during an attempted theft. Ex parte James, 468 So. 2d 889 (Ala. 1984), aff'd sub nom. James v. State, 468 So. 2d 892 (Ala. Crim. App. 1985).

The violence used or threatened does not have to precede or accompany the theft but it must be for the purpose of accomplishing the theft. Carlisle v. State, 484 So. 2d 540 (Ala. Crim. App. 1985).

Under the present statutory definition of robbery, it is not essential that any property be taken from the victim; consequently, the value and amount of any property taken is immaterial. Maxwell v. State, 488 So. 2d 517 (Ala. Crim. App. 1986).

The present robbery statutes do not require a "taking" of property. Acres v. State, 548 So. 2d 459 (Ala. Crim. App. 1987).

Robbery includes instances where violence is used or threatened in the course of committing a theft or in flight. Harvey v. State, 676 So. 2d 680 (Ala. Crim. App. 1991).

Present robbery statutes do not require a "taking" of property. Gainey v. State, 647 So. 2d 37 (Ala. Crim. App. 1994).

Because the amount taken in a robbery is not an element of the offense under the current robbery statutes, the indictment was sufficient to apprise the appellant of the charges against him. Windsor v. State, 683 So. 2d 1013 (Ala. Crim. App. 1993), rev'd on other grounds, 683 So. 2d 1021 (Ala. 1994).

Robbery is an offense against the person, and therefore, the value of the property taken during a robbery is not an element of the crime. The indictment charging the appellant with murder during the course of a robbery was not deficient. Ex parte Windsor, 683 So. 2d 1042 (Ala. 1996), cert. denied, 520 U.S. 1171, 117 S. Ct. 1438, 137 L. Ed. 2d 545 (1997).

The indictment was not unconstitutionally vague because the robbery statutes do not require a "taking" of property, so that not only is the value of the property immaterial, but also the indictment need not allege an actual theft to constitute the offense. McWhorter v. State, 781 So. 2d 257, 1999 Ala. Crim. App. LEXIS 212 (Ala. Crim. App. 1999), aff'd sub nom. Ex parte McWhorter, 781 So. 2d 330 (Ala. 2000), cert. denied, 532 U.S. 976, 121 S. Ct. 1612, 149 L. Ed. 476 (2001).

**Evidence — Insufficient.**

Where testimony was undisputed that defendant used force to flee the scene, but the original theft (shoplifting) had been completed, and the victim had regained control of the property, and the defendant used force to flee but not with the property, the defendant was guilty of serious offenses, but not robbery. Casher v. State, 469 So. 2d 679 (Ala. Crim. App. 1985).

**Evidence — Sufficient.**

Evidence was sufficient to show defendant's possession of a box cutter immediately following his arrest for robbery, supporting an armed robbery conviction. Laney v. State, 417 So. 2d 624 (Ala. Crim. App. 1982).

Where defendant argued that the force employed by him was not employed to effectuate the taking of the stolen property, court found that the jury was justified in relying on the testimony regarding the stolen articles being recovered from the person of the appellant or from the get away car, in making out the elements of the offense of robbery in the first degree and that even without that evidence, the evidence before them was clear to the effect that the defendant did use force and a deadly weapon to effectuate his immediate escape. White v. State, 462 So. 2d 750 (Ala. Crim. App. 1984), vacated, 479 U.S. 1074, 107 S. Ct. 1266, 94 L. Ed. 2d 127 (1987).

Although witnesses' testimony may have been unbelievable as to both killings, from the evidence the jury could have concluded that defendant had actually shot one of the two victims. Rutledge v. State, 680 So. 2d 997 (Ala. Crim. App. 1996).

Evidence that defendant, after being confronted with possession of stolen merchandise, shoved a shopping mall security guard before fleeing, and later hit a store manager and bystander, was

sufficient to prove that force was used in immediate flight following the theft, and thus to establish the offense of third degree robbery. Fuqua v. State, 706 So. 2d 817 (Ala. Crim. App. 1997).

**Included offenses.**

The crime of robbery includes all the elements of larceny, with the one additional element of force or putting in fear, and a state of facts tending to prove the higher degree also tends to prove larceny, the degree is a question for the jury. Pierce v. State, 25 Ala. App. 302, 145 So. 592 (1933).

Robbery is a common law offense and does not include as a lesser offense the crime of buying, receiving and concealing stolen property, which a statutory offense. Mayes v. State, 350 So. 2d 339 (Ala. Crim. App. 1977).

**Instructions.**

A defendant charged under former robbery statute was entitled to a jury instruction on the charges of larceny or assault and battery if the evidence was sufficient to support a conviction under these charges. Kelly v. State, 235 Ala. 5, 176 So. 807 (1937).

**Intent, knowledge.**

A statement by defendant at his arraignment that he was drunk at the time of the robbery and did not know what he was doing could be properly construed as an assertion that he was so drunk as to make him incapable of possessing the requisite criminal intent to commit first degree robbery. Simmons v. State, 412 So. 2d 1239 (Ala. Crim. App. 1981).

The question of intent is a question for the jury. Carlisle v. State, 484 So. 2d 540 (Ala. Crim. App. 1985).

**Procedure — Pretrial.**

The form of indictment set out by § 15-8-150(86), followed the common law definition of robbery, is no longer applicable to robbery under § 13A-8-40 through 13A-8-44 of the criminal code. Lewis v. State, 469 So. 2d 1291 (Ala. Crim. App. 1984), aff'd sub nom. Ex parte Blake, 469 So. 2d 1301 (Ala. 1985).

Because the amount taken in a robbery is immaterial under Alabama's robbery statutes, §§ 13A-8-40 through 13A-8-44, the court committed no error in allowing the indictment to be amended without the appellant's consent. Odom v. State, 625 So. 2d 1171 (Ala. Crim. App. 1993).

**Miscellaneous.**

The former offense of assault with intent to rob has been merged into the present offense of robbery. Marvin v. State, 407 So. 2d 576 (Ala. Crim. App. 1981).

Cited in Kent v. State, 56 Ala. App. 1, 318 So. 2d 742 (1975); McLester v. State, 423 So. 2d 286 (Ala. Crim. App. 1982); Crowe v. State, 435 So. 2d 1371 (Ala. Crim. App. 1983); Barnett v. State, 447 So. 2d 668 (Ala. Crim. App. 1983); Ex parte Clements, 447 So. 2d 695 (Ala. 1984); Johnson v. State, 473 So. 2d 607 (Ala. Crim. App. 1985); Herndon v. State, 563 So. 2d 1065 (Ala. 1990), Bush v. State, 580 So. 2d 106 (Ala. Crim. App. 1991).

## § 13A-8-41. Robbery; first degree.

(a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he:

(1) Is armed with a deadly weapon or dangerous instrument; or

(2) Causes serious physical injury to another.

(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed.

(c) Robbery in the first degree is a Class A felony.

History. Acts 1977, No. 77-607.